## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

J. ALEX HALDERMAN,

     Plaintiff,

v.

HERRING NETWORKS, INC., D/B/A
ONE AMERICA NEWS NETWORK,
CHARLES HERRING, ROBERT
HERRING, SR., and CHANEL RION,

     Defendants.

Case No. _____

Judge: _____
Mag. Judge: _____

---

## PLAINTIFF'S MOTION TO QUASH OR MODIFY NON-PARTY SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION OR IN THE ALTERNATIVE FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT

---

Pursuant to Federal Rules of Civil Procedure 26 and 45 and Local Rules 7.1 and 7.2, Plaintiff J. Alex Halderman, Ph.D., a resident of Washtenaw County, Michigan and a leading expert in cybersecurity of election systems, through his undersigned counsel, respectfully moves this Court to quash a subpoena. Specifically, Dr. Halderman requests this Court quash the subpoena seeking his deposition as unduly burdensome and as an improper attempt to disclose an

unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party. Dr. Halderman has not been retained as an expert witness in this lawsuit, and declines to be retained. Defendants are seeking free expert testimony without Dr. Halderman's consent. Dr. Halderman also requests an order awarding him the reasonable expenses he incurred in making this motion.

In the alternative, Dr. Halderman respectfully requests that the Court modify the subpoena by or issue a protective order (1) prohibiting Defendant Herring Networks, Inc., d/b/a One America News Network, Charles Herring, Robert Herring, Sr., and Chanel Rion ("OAN"), or any other defendant in matters consolidated or coordinated for discovery with *US Dominion, Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02130 (CJN) (D.D.C.) from asking any questions related to Dr. Halderman's work as a retained expert in other litigation matters that is restricted from disclosure by protective orders entered in those matters; (2) requiring the parties to submit any dispute over whether questions or material falls within a protective or confidentiality order, such as those issued in *Curling v. Raffensperger*, No. 1:17-cv-2989-AT (N.D. Ga.) to the issuing court for resolution; (3) prohibiting Defendant Byrne, his agents, or his retained counsel, including recently disqualified counsel, from attending or obtaining any transcript of or exhibits admitted in such deposition in perpetuity; (4) providing for reasonable compensation, including at his

prevailing expert rate of $950.00 per hour for time Dr. Halderman spends to prepare and testify and a significant portion of the costs of his prior expert work product of apparent interest to OAN; and (5) scheduling any deposition to occur not fewer than 21 days from the entry of the Court's order.

Respectfully Submitted,

DEMOREST LAW FIRM, PLLC

By: /s/ Mark S. Demorest
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
Dated:  September 10, 2024          mark@demolaw.com

Primerus/Alex Halderman (1593)/1 Draft Pleadings/2024 09 09 Halderman Motion to Quash Subpoena.docx

## **LOCAL RULE 7.1 CERTIFICATION**

The undersigned certifies that Dr. Halderman has complied with the requirements of Federal Rule of Civil Procedure 37(a)(1) by seeking in good faith to confer with Defendants to resolve the dispute between the parties concerning the non-party subpoena to testify at a deposition in a civil action.

Specifically, counsel for Dr. Halderman has conferred with counsel for OAN on May 2, May 13, September 3, and September 5 by telephone and/or videoconference about subpoenas OAN has issued in this case, in addition to several written exchanges with OAN counsel, reasonably explaining *inter alia* the basis for this motion in an attempt to reach agreement on the withdrawal of the non-party subpoena rather than to seek court intervention. Dr. Halderman produced many documents in good faith attempts to respond to a prior documents subpoena served on him, seeking to reach a compromise in providing OAN with information it seeks without subjecting Dr. Halderman to the jeopardy of a deposition described herein.

As of the filing of this motion, OAN has not concurred in the relief Plaintiff seeks, requiring the filing of this Motion to protect Dr. Halderman's interests. The undersigned has remained abreast of good faith negotiations since they began.

The undersigned further certifies that the foregoing document meets the typeface and formatting requirements of LR 5.1.

Respectfully Submitted,

DEMOREST LAW FIRM, PLLC

By: /s/ Mark S. Demorest
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
Dated:  September 10, 2024      mark@demolaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| J. ALEX HALDERMAN,<br><br>     Plaintiff,<br><br>v.<br><br>HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, CHARLES HERRING, ROBERT HERRING, SR., and CHANEL RION,<br><br>     Defendants. | Case No. _____<br><br>Judge: _____<br>Mag. Judge: _____ |

**<u>BRIEF IN SUPPORT OF</u>**
**<u>PLAINTIFF'S MOTION TO QUASH OR MODIFY NON-PARTY</u>**
**<u>SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION OR</u>**
**<u>IN THE ALTERNATIVE FOR PROTECTIVE ORDER AND BRIEF IN</u>**
**<u>SUPPORT</u>**

## **TABLE OF CONTENTS**

**Page(s)**

INDEX OF AUTHORITIES ............................................................................ iii

INTRODUCTION ........................................................................................... 1

LEGAL STANDARDS .................................................................................... 9

Undue Burden ................................................................................................ 9

Unretained Expert Opinion ......................................................................... 10

Protective Order ........................................................................................... 12

ARGUMENT AND CITATION TO AUTHORITY ....................................... 13

A.    Dr. Halderman Is A Leading Expert In Cybersecurity
Of Election Systems ............................................................................ 13

B.    OAN Cannot Force Dr. Halderman To Testify On Its Behalf ............. 15

       1.    OAN imposes undue burdens on Dr. Halderman
by seeking sensitive information from him
despite his being constrained by court orders and
subject to sanction for their violation ......................................... 15

       2.    OAN seeks free expert testimony by deposing
Dr. Halderman as a purported fact witness despite
his absence of personal knowledge about facts in dispute .......... 20

            i.    *Dr. Halderman does not have specific factual
knowledge to offer about the matters in dispute* ............. 21

            ii.    *OAN cannot coerce Dr. Halderman to testify
as its expert* ..................................................................... 23

C.    The Court Should Award Dr. Halderman His Expenses Of
Litigation Under Rule 45 ..................................................................... 28

i

D.      If The Court Does Not Quash The Amended Subpoena, The
        Court Should Modify It To Limit Its Scope And Compensate
        Dr. Halderman For All Time Spent On These Matters............................ 29

CONCLUSION ................................................................................................ 33

CERTIFICATE OF SERVICE.......................................................................... 34

Appendix to Certificate of Service.................................................................... 35

ii

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*Alt v. Cline*,
589 N.W.2d 21, 27 (Wis. 1999) ........................................................ 25

*Aslani v. Sparrow Health Sys.*,
No. 1:08-CV-298, 2010 WL 623673,
at *4 (W.D. Mich. Feb. 18, 2010) .................................................. 10

*Bailey v. Antrim County*,
No. 2020-009238-CZ (Antrim Cnty., Mich. Circuit Court) ........................... 5

*Builders Ass'n of Greater Chicago v. City of Chicago*,
2001 WL 664453, *7-8 (N.D. Ill. June 12, 2001) .................................. 22

*Carney-Hayes v. Nw. Wisconsin Home Care, Inc.*,
699 N.W.2d 524, 534 (Wis. 2005) .................................................. 25

*cf. Laborers Pension Tr. Fund-Detroit & Vicinity v.*
*CRS Poured Concrete Walls, Inc.*,
No. 04CV74714 DT, 2006 WL 3804912,
at *5 (E.D. Mich. Dec. 22, 2006) .................................................. 25

*Com. v. Vitello*,
367 Mass. 224, 235, 327 N.E.2d 819 (1975) ...................................... 24

*Convolve, Inc. v. Dell, Inc.*,
No. C 10-80071 WHA, 2011 WL 1766486,
at *2 (N.D. Cal. May 9, 2011) .................................................... 26

*Curling v. Raffensperger*,
493 F. Supp. 3d 1264, 1277, 1279-81 (N.D. Ga. 2020) ........ 3-6, 9, 13-23,26,30

*Doering v. Koppelberger*,
No. 343196, 2019 WL 4732725,
at *2 (Mich. Ct. App. Sept. 26, 2019) ............................................ 24

**Page(s)**

<u>**Cases**</u>

*Fox News Network, LLC v. Halderman,*
  No. 18-000100-ZZ (Washtenaw County Circuit Court, Apr. 4, 2023)...........8

*Hansen Beverage Co. v. Innovation Ventures, LLC,*
  No. 2:09-MC-50356, 2009 WL 1543451,
  at *1 (E.D. Mich. June 2, 2009) ....................................................................10,26

*In re Arkansas Safe Foods Patent Infringement Litig.,*
  2022 WL 18110012, *2–*4 (M.D. Ala. 2022),
  *report and recommendation adopted*, 2023 WL 98370,
  *1 (M.D. Ala. 2023) .........................................................................................23

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
  2012 WL 4856968, at *4 (E.D. Mo. Oct. 12, 2012) .......................................26

*In re Ohio Execution Protocol Litig.,*
  845 F.3d 231, 236 (6th Cir. 2016)..................................................................12

*In re Schaefer,*
  331 F.R.D. 603, 609 (W.D. Pa. 2019)..........................................................21,26

*Kaufman v. Edelstein,*
  539 F2d 811, 822 (2d. Cir 1976)..................................................................11,27

*Klabunde v. Stanley,*
  384 Mich. 276, 282, 181 N.W.2d 918, 921 (1970).........................................11,24

*Lewis v. DexCom, Inc.,*
  2022 WL 114076, *1–*4 (W.D. Pa. 2022) ......................................................24

*Lowe v. Vadlamudi,*
  No. 08-10269, 2012 WL 3887177,
  at *2 (E.D. Mich. Sept. 7, 2012)....................................................................10

*Mason v. Robinson,*
  340 NW2d 236, 242 (Iowa 1983)..................................................................25

**Page(s)**

**Cases**

*Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*,
  No. CV 12-10803, 2015 WL 5132583,
  at \*2 (E.D. Mich. Apr. 24, 2015) ................................................................ 29

*Night Hawk Ltd. v. Briarpatch Ltd., L.P.*,
  2003 WL 23018833, at \*9 (S.D.N.Y. Dec. 23, 2003)................................... 29

*Owens v Silvia*,
  838 A.2d 881, 901–02 (RI 2003) ............................................................... 24

*People ex rel. Kraushaar Bros. & Co. v Thorpe*,
  72 N.E.2d 165, 166 (N.Y. 1947) ............................................................... 24

*Seattle Times v. Rhinehart*,
  467 U.S. 20, 36 (1984) ............................................................................... 12

*Serrano v. Cintas Corp.*,
  699 F.3d 884, 901 (6th Cir. 2012)............................................................. 12

*US Dominion, Inc. v. Byrne*,
  No. 1:21-cv-02131 (D.D.C.) ...................................................................2,9

*US Dominion, Inc. v. Giuliani*,
  No. 1:21-cv-00213 (D.D.C.) ........................................................................ 2

*US Dominion, Inc. v. Herring Networks, Inc.*,
  Civ. Act. No. 1:21-cv-02131 (CJN) (D.D.C.)................................... 1,7,14

*US Dominion, Inc. v. My Pillow, Inc.*,
  No. 1:21-cv-00445 (D.D.C.) ........................................................................ 2

*US Dominion, Inc. v. Powell*,
  No. 1:21-cv-00040 (D.D.C.) ........................................................................ 2

*Wright v. Jeep Corp.*,
  547 F. Supp. 871 (E.D. Mich. 1982)....................................................23,26

**Page(s)**

**Court Rules**

Fed. R. Civ. P. 5(b)......................................................................34

Fed. R. Civ. P. 26(b)(1)...............................................................26

Fed. R. Civ. P. 26(b)(3).........................................................11,23

Fed. R. Civ. P. 26(c)(1)...............................................................12

Fed. R. Civ. P. 26(c)(1)(A)..........................................................12

Fed. R. Civ. P. 45, 1991 Adv. Cmte. Note...................................11

Fed. R. Civ. P. 45(d)(1)...............................................................28

Fed. R. Civ. P. 45(d)(3)(A)(iv)..................................................2,9

Fed. R. Civ. P. 45(d)(3)(B)(i)......................................................25

Fed. R. Civ. P. 45(d)(3)(B)(ii) .......................................2,10,11,26

Fed. R. Civ. P. 45(d)(3)(B)-(C) & 1991 Adv. Cmte. Notes...........23

Fed. R. Civ. P. 45(d)(3)(C)(i)..................................................24,26

Fed. R. Civ. P. 45(d)(3)(C)(ii)......................................................25

Fed. R. Evid. 702........................................................................23


**Miscellaneous**

8A Wright & Miller et al.,
FEDERAL PRACTICE AND PROCEDURE (3d ed.)................................12

9A Charles Alan Wright & Arthur R. Miller et al.,
FEDERAL PRACTICE AND PROCEDURE (3d ed.)................................10

ICS Advisory No. 22-154-01,
"Vulnerabilities Affecting Dominion Voting Systems ImageCast X,"
(June 3, 2022) .............................................................................17,20

J. Alex Halderman, Ph.D.,
"Analysis of the Antrim County, Michigan November 2020
Election Incident," (Mar. 26, 2021) at § 1.1–Summary of Findings ...............17

Marshall Cohen,
"Scarred by 2020 smears, voting companies and election
officials brace for November," CNN.COM (Aug. 27, 2024) ...........31

## **INTRODUCTION**

Defendants Herring Networks, Inc., d/b/a One America News Network, Charles Herring, Robert Herring, Sr., and Chanel Rion ("OAN") seek to force Plaintiff Dr. J. Alex Halderman, a resident of Washtenaw County, Michigan and a leading expert in cybersecurity of election systems, to testify at a deposition in Ann Arbor, Michigan (within the jurisdiction of this Court) on September 25, 2024 in a defamation action bearing the caption *US Dominion, Inc. v. Herring Networks, Inc.,* Civ. Act. No. 1:21-cv-02131 (CJN) (D.D.C.) (the "Defamation Matter"). *See* Notice of Oral Deposition of Alex Halderman and Subpoena to Testify at a Deposition in a Civil Action (dated July 24, 2024) (**Exhibit 1-A** to Declaration of Mark S. Demorest, attached as **Exhibit 1**) (the "Subpoena"); Amended Notice of Oral Deposition of Alex Halderman and Subpoena to Testify at a Deposition in a Civil Action (dated August 14, 2024) (**Exhibit 1-B** to Demorest Decl.) (the "Amended Subpoena").

But: Dr. Halderman is neither a party, nor an expert retained by a party, nor a witness with personal knowledge of specific occurrences in dispute in the Defamation Matter. Declaration of J. Alex Halderman (attached as **Exhibit 2**) ("Halderman Decl."), ¶¶ 3-4, 6-8. OAN seeks Dr. Halderman's expert testimony, to be used in at least four cases consolidated or coordinated for discovery in the District Court for the District of Columbia, by September 30. *See* **Exhibit 1-A** at 1-2; **Exhibit 1-B** at 1-2; **Exhibit 1-C** (Corr. of A. Sparks and J. Edwards regarding

Subpoena and Amended Subpoena) at July 25, 2024 9:13 PM ("Discovery is consolidated in all the captioned cases, and one depo is considered taken in all of them.").[1]

This Motion seeks to quash the Amended Subpoena, *first*, because it subjects Dr. Halderman to undue burdens, *see* Fed. R. Civ. P. 45(d)(3)(A)(iv), and *second*, because it would necessarily compel Dr. Halderman to testify as an expert without his consent, despite not being retained by any party and having no personal knowledge of or connection to the parties or specific occurrences in dispute in the Defamation Matter, *see* Fed. R. Civ. P. 45(d)(3)(B)(ii).[2] Should the Court not quash the Amended Subpoena, the Court should modify it to protect Dr. Halderman's interests in not violating potentially conflicting court order;, to protect adequately the highly sensitive nature of his knowledge and expertise in a contentious election

---

[1] The other cases are *US Dominion, Inc. v. Powell*, No. 1:21-cv-00040 (D.D.C.), *US Dominion, Inc. v. My Pillow, Inc*., No. 1:21-cv-00445 (D.D.C.), *US Dominion, Inc. v. Byrne*, No. 1:21-cv-02131 (D.D.C.), and the now-stayed case *US Dominion, Inc. v. Giuliani,* No. 1:21-cv-00213 (D.D.C.), hereafter collectively referred to as the "Consolidated Defamation Matters."

[2] Given the course of correspondence between counsel, Dr. Halderman considers the original Subpoena (**Exhibit 1-A**) withdrawn with the service of the Amended Subpoena. To the extent any party or this Court considers the Subpoena directing Dr. Halderman to sit for a deposition on September 26, when he is fulfilling his instructional duties at the University of Michigan, he seeks to quash that Subpoena outright as well for this reason in addition to those contained herein.

environment; and to reasonably compensate him for his time and attention as an expert witness, as well as his work product as an expert retained by others.

Though disclaiming any intention to ask about Dr. Halderman's expert opinion, OAN has repeatedly affirmed in intention to focus on the data, techniques, and conclusions in the very expert reports that place Dr. Halderman at risk of violating court orders should he testify about them. This includes, but is not limited to, expert work performed and opinions formed for the *Curling v. Raffensperger*, No. 1:17-cv-2989-AT (N.D. Ga) matter ("*Curling*"), some of which remains under seal or otherwise required not to be disclosed outside of the litigation to this day.[3] While Judge Totenberg, U.S.D.C. N. Ga., Atlanta Div., authorized the public release of a redacted version of Dr. Halderman' expert report last summer June, material portions of his work and his opinions remain under seal. Halderman Decl., ¶ 9-11. This is important because Dr. Halderman is a world-renowned expert and researcher focusing on computer security and privacy, with an emphasis on election cybersecurity. *Id.*, ¶¶ 1-2. He has been retained as an expert witness in these fields in multiple lawsuits, conducting research and providing helpful information to

---

[3] OAN has affirmed its intent to avoid asking questions requiring the revelation of privileged information, source code in Dominion software or in software developed and secured by Dr. Halderman, or information OAN think may be subject to protective order. In the event of any disagreement over whether particular lines of questions at a deposition strayed beyond such a stipulation, however, any such commitment or even an agreement would not supersede Dr. Halderman's obligations to the orders of other courts applying to his expert work.

various courts under conditions that sometimes require his work to be held under seal. *Id.,* ¶¶ 3-4, 9-11. And given the growth of "election denialism" in certain quarters of political discourse, he has taken care in his publications and expert performance to clarify, repeatedly, that he has no evidence that any vulnerabilities he has observed were actually exploited to affect the outcome of the 2020 presidential election. *Id.,* ¶¶ 7, 10 & Ex. 2-B.

Even if OAN and every other party to the Consolidated Defamation Matters had, or subsequently does, agreed to refrain from questioning Dr. Halderman about matters he and his counsel consider undiscoverable under the *Curling* protective orders (or orders of other litigation for which Dr. Halderman serves as an expert, such as in Michigan in exploring and publishing an explanation of 2020 election result reporting errors in Antrim County, Michigan), the Court should nevertheless quash the Amended Subpoena. Dr. Halderman understandably remains deeply concerned about facing contradictory instructions from different courts about how and whether to respond under oath to questions about his research into certain election systems and components – yet that is a foreseeable outcome were he compelled to testify.

Dr. Halderman and his counsel remain skeptical that all parties in the Consolidated Defamation Matters, all parties in *Curling*, and other necessary

stakeholders[4] could contemporaneously police what can and cannot be discussed on the record in a deposition. Likely proposed remediation measures meant to limit Dr. Halderman's risk are not satisfactory, as they rely entirely on resolution of what does and does not fall under the *Curling* court's orders. And, attempting to police what the *Curling* court has and has not placed under seal during a live deposition without the *Curling* court's involvement unfairly subjects Dr. Halderman to real and tangible risk of violating that court's orders, on the one hand, or of refusing to comply with contradictory orders of this Court or the U.S. District Court presiding over the Consolidated Defamation Matters to testify in response to a particular question or questions posed by OAN, on the other.

OAN has not agreed to submit disputes about *Curling*-related topics and their confidentiality to that or any other issuing court ahead of time. Nor is it feasible, given the number and intricacy of court orders applying to Dr. Halderman's expert opinion and the facts gained entirely from his expert retention in various cases, to navigate disputes over particular questions or lines of questions in the live-fire

---

[4] Such stakeholders include Dr. Halderman's employer and the provider of his laboratories, the University of Michigan; the Michigan Department of the Attorney General, which engaged Dr. Halderman in *Bailey v. Antrim County,* No. 2020-009238-CZ (Antrim Cnty., Mich. Circuit Court) to investigate errors in Antrim County's November 2020 election night results; and parties to pending defamation actions by Dr. Eric Coomer, formerly Director of Product Strategy and Security for Dominion, against Michael Lindell and other parties to the Consolidated Defamation Matters in Colorado federal court. Halderman Decl., ¶¶ 1-4.

environment of a deposition. The burdens placed on Dr. Halderman by this attempt to take his opinion are unreasonable, subjecting them as they do to significant legal peril.

The Amended Notice of Deposition, accompanying Amended Subpoena, and assertions of OAN counsel casts Dr. Halderman merely as a fact witness. But it is apparent that OAN seeks to depose him *specifically because of* his knowledge of and expertise in cybersecurity of election systems, and his retained expert performance concerning Dominion voting systems in particular. This includes work that remains under seal or otherwise confidential at the express direction and desire of the *Curling* court. OAN could pursue, and surely has pursued, similar factual evidence from other sources (or experts to retain) who have *not* performed services as a designated expert that have remained under strict nondisclosure orders for several years now. *See* Halderman Decl. ¶¶ 3-4, 9-12.

Rather, OAN presumably aspires to prove that its reliance on and subjective interpretation of Dr. Halderman's writings render reasonable and non-defamatory its published statements about Dominion's voting system and personnel. Never mind that the vast majority of Dr. Halderman's academic research or expert work and testimony concerning Dominion Voting Systems was made public only *after* the latest of the allegedly defamatory statements appearing in Dominion's complaint

against OAN.[5] How would Dr. Halderman's after-the-fact testimony have *any* bearing on OAN's asserted defense?[6] OAN has not demonstrated, and cannot demonstrate, any substantial need for testimony from *this* particular witness or any significant hardship from not being able to obtain his expertise via involuntary deposition.

This effort strongly resembles the attempt of another defendant to defamation claims filed by Dominion, Fox News Network. There, as here, the defendant sought to compel Dr. Halderman to testify under oath, ostensibly only as a fact witness, even though he was sought out because of his retention and performance as an expert. And there, as here, Fox News sought to depose Dr. Halderman despite his near-total lack of personal knowledge about the allegedly defamatory statements Fox News published or about the state of mind of Fox News broadcasters, editors, executives, and owners when publishing them. After briefing and oral argument, the Circuit Court for the County of Washtenaw denied a motion to compel Dr. Halderman's testimony and granted his motion to quash the deposition subpoena.

---

[5] *See* Complaint, ECF No. 1, *US Dominion, Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02131 (CJN) (Aug. 10, 2021) (**Exhibit 1-D** to Demorest Decl.).

[6] Never mind as well that Dr. Halderman once submitted a declaration as a retained expert for the plaintiff who named OAN as a defendant in a defamation action much like this one.

*Fox News Network, LLC v. Halderman,* No. 18-000100-ZZ (Washtenaw County Circuit Court, Apr. 4, 2023) (**Exhibit 1-E** to Demorest Decl.).[7]

Even so, Dr. Halderman went to significant lengths to locate, review, and produce many documents in good faith attempts to respond to OAN's subpoena duces tecum, seeking to reach a compromise in providing OAN with information it seeks its without subjecting Dr. Halderman to the jeopardy of a deposition described herein. **Exhibit 1-F** to Demorest Decl. (OAN Subpoena Duces Tecum dated Apr. 5, 2024); **Exhibit 1-G** to Demorest Decl. (Corr. from A. Sparks to J. Edwards dated May 15, 2024 conveying Halderman production).[8]

The Court should quash the Amended Subpoena and award Dr. Halderman his expenses incurred for the necessity of filing this Motion. If the Court does not quash the Amended Subpoena, however, Dr. Halderman respectfully submits that the Court should modify it as follows:

1) to require OAN and all other parties to the Consolidated Defamation Matters to refrain from asking any questions related to Dr. Halderman's work as a retained expert in other litigation matters that is restricted from disclosure by protective orders entered in those matters;

---

[7] The undersigned represented Dr. Halderman in *Fox News Network* and will provide copies of filings in that case should the Court wish to review them.

[8] In Exhibit 1-F, counsel for Dr. Halderman stated, "I will look out for your next email proposing further narrowing of time parameters and certain search terms, as we briefly discussed on Monday." The next communication Dr. Halderman's counsel received from OAN counsel was over two months later, sending the Subpoena seeking Dr. Halderman's deposition.

2) to require OAN to submit any dispute over whether questions or material falls within a protective or confidentiality order of another federal or state court to the court(s) that issued the related order(s) for resolution;

3) to prohibit Defendant Byrne - whose case is one of the Consolidated Defamation Matters - his agents, or any of his retained counsel (including recently disqualified counsel Stefanie Lambert Juntilla) from attending or obtaining any transcript of or exhibits admitted in such deposition in perpetuity[9];

4) to require OAN to reasonably compensate Dr. Halderman for his time to prepare and testify at his prevailing expert rate of $950.00 per hour, in addition to a significant portion of the total cost of his underlying expert work product including, though not limited to, the expert report he filed in *Curling*[10]; and

5) to schedule any deposition for not fewer than 21 days from the entry of the Court's order.

## LEGAL STANDARDS

### Undue Burden

A court must quash or modify a subpoena that among other forbidden effects, "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "A decision

---

[9] *See US Dominion, Inc. v. Byrne*, No. 1:21-cv-02130 (CJN) (Aug. 13, 2024), Memorandum Opinion, ECF No. 126  at 2-3 (finding "Byrne has violated the Protective Order as set forth below, [though] the full scope of Byrne's actions is not yet known," and finding his counsel of record Stefanie Lambert repeatedly and openly violated the court's orders, "including by disseminating protected discovery material … which all Parties, including Byrne himself, had agreed to keep confidential" and granting motion to disqualify counsel) (**Exhibit 1-H** to Demorest Decl.). These protective order violations have already resulted in attacks against Dr. Halderman. *See* Section III.D *infra*.

[10] Dr. Halderman's prevailing expert rate is $950/hour. Halderman Decl., ¶ 5.

whether to quash a subpoena is made on a case-by-case basis and consists of a balancing of the interests; that is, the Court must weigh the burden of compliance against the potential value of the information sought." *Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 2:09-MC-50356, 2009 WL 1543451, at *1 (E.D. Mich. June 2, 2009). The reasonableness of a subpoena "is assessed by balancing 'the interests served by demanding compliance with the subpoena against the interests served further by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source.'" *Aslani v. Sparrow Health Sys.*, No. 1:08-CV-298, 2010 WL 623673, at *4 (W.D. Mich. Feb. 18, 2010) (quoting 9A Charles Alan Wright & Arthur R. Miller et al., FEDERAL PRACTICE AND PROCEDURE § 2463.1 (3d ed.)). "Non-party status is also relevant in determining whether the burden should be considered undue." *Lowe v. Vadlamudi*, No. 08-10269, 2012 WL 3887177, at *2 (E.D. Mich. Sept. 7, 2012).

### **Unretained Expert Opinion**

A court also may quash a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). This is not a new problem:

> A growing problem has been the use of subpoenas to compel the giving of evidence and information by

> unretained experts. Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services. Arguably the compulsion to testify can be regarded as a 'taking' of intellectual property.

Fed. R. Civ. P. 45(d)(3)(B)(ii), 1991 Adv. Cmte. Note (citations omitted).[11] An oft-cited leading opinion on this subject requires the party seeking unretained expert testimony to demonstrate that "the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony," is expected to "testify[] to a previously formed or expressed opinion," likely "is a unique expert" such that "the calling party is able to show the unlikelihood that any comparable witness will willingly testify," and that the witness is not "oppressed by having continually to testify." *Kaufman v. Edelstein*, 539 F2d 811, 822 (2d. Cir 1976); *see also Klabunde v. Stanley*, 384 Mich. 276, 282, 181 N.W.2d 918, 921 (1970) ("By definition, an expert is one who gives opinion testimony, and not testimony concerning relevant facts. He has a property right in his opinion and

---

[11] According with the use of "may" in this provision, this rule is not absolute. Fed. R. Civ. P. 45, 1991 Adv. Cmte. Note ("The rule [45(d)(3)(B)(ii)] establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided in the final sentence of subparagraph (c)(3)(B); that requirement is the same as that necessary to secure work product under Rule 26(b)(3) and gives assurance of reasonable compensation.") (citations omitted).

11

cannot be made to divulge it in answer to a subpoena.") (quotation and footnote omitted).

## Protective Order

A motion for a protective order is available to "a party or any person from whom discovery is sought." Fed. R. Civ. P. 26(c)(1).  Rule 26(c)(1) permits the court to issue a protective order to protect a party from "annoyance, embarrassment, oppression, or undue burden or expense." To satisfy the requirements of Rule 26(c), the movant "must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). Unreasonable "harassment or oppression" justifies restricting discovery, which "has limits and these limits grow more formidable as the showing of need decreases." *Serrano*, 699 F.3d at 901 (quoting 8A Wright & Miller et al., FEDERAL PRACTICE AND PROCEDURE § 2036 (3d ed.)). Courts have broad discretion to determine whether a protective order is appropriate and what degree of protection is required. *Seattle Times v. Rhinehart*, 467 U.S. 20, 36 (1984).

## ARGUMENT AND CITATION TO AUTHORITY

**A.     Dr. Halderman Is A Leading Expert In Cybersecurity Of Election Systems**

Dr. Halderman is the Bredt Family Professor of Computer Science and Engineering, Director of the Center for Computer Security and Society, and Director of the Software Systems Laboratory at the University of Michigan in Ann Arbor, where he has been a faculty member since 2009. Halderman Decl., ¶ 1. His research focuses on computer security and privacy, including an emphasis on election cybersecurity. *Id.* He has served at the request of election officials of multiple states, including Michigan, to enhance security of electronic voting systems and testified on multiple occasions before Congressional committees on cybersecurity and U.S. elections. *Id.*, ¶¶ 2-3.  He has been retained as an expert witness in multiple lawsuits related to Dominion voting equipment, but not for any party in a lawsuit brought by or against Dominion. *See id.*, ¶¶ 3-4.

Since 2018, Dr. Halderman has served as a designated, retained expert for a subset of plaintiffs in *Curling*, which challenges the constitutionality of Georgia's election system on security grounds. *Id.*, ¶ 3. He was and is subject to strict confidentiality protocols that applied to discovery of and testimony about Dominion voting equipment in *Curling,* even after trial. *Id.*, ¶ 9-12 & Ex. 2-C. His knowledge of election cybersecurity issues is formidable, true, but "hardly unique" – for instance, Dr. Halderman was one of *59* election security specialists who co-signed a

13

letter in November 2020 calling claims that the Presidential election outcome had

been hacked "unsubstantiated" and "technically incoherent." *Id.*, ¶ 7, n.1 & Ex. 2-B.

One may fairly wonder, given Dr. Halderman's lack of personal knowledge

about the disinformation, wild accusations, uncut conspiracy theories, and other

allegedly defamatory statements by OAN, and his prevailing general expertise about

election cybersecurity, why OAN has subpoenaed him as a *fact* witness to assist in

their defamation defense. There is in fact no reference to him at all in Dominion's

complaint and only a glancing reference in its answer and defenses – to his expert

testimony in *Curling*.[12] To be sure, Dr. Halderman had made several public

statements concerning vulnerabilities of election technology generally, his own

concerns about misinformation and disinformation about those vulnerabilities, and

the consensus of leading election cybersecurity and administration experts regarding

policies to implement in the coming years. Those statements, such as his testimony

to the Senate Intelligence Committee in 2017, speak for themselves. And, while Dr.

Halderman has conducted additional research on Dominion voting equipment that is

not subject to a protective order, a brief comparison of the allegedly defamatory

statements to the titles of these papers (all published well after the 2020 general

---

[12] OAN also impugns the decision of a former Dominion employee to hire Dr. Halderman as his expert, claiming it "demonstrates [the employee's] lack of good judgment." Allegations in Support of Affirmative and Other Defenses, ECF No. 59, *US Dominion, Inc. v. Herring Networks, Inc.*, No. 1:21-cv-02131 (CJN) (Aug. 10, 2021) at ¶ 50.

election actually ended) reveals no connection beyond the identity of the party OAN is alleged to have defamed. *Compare* Ex. 1-D, ¶ 305(a)-(y) *with* Halderman Decl., Ex. 2-A.

**B.      OAN Cannot Force Dr. Halderman To Testify On Its Behalf**

Ultimately, what OAN wants from Dr. Halderman are confidential facts, free expert testimony, or both, all at his risk and expense. It may have neither.

> **1.      <u>OAN imposes undue burdens on Dr. Halderman by seeking sensitive information from him despite his being constrained by court orders and subject to sanction for their violation.</u>**

To the extent that Dr. Halderman has specific factual information or expert opinion about the security of voting equipment manufactured, serviced, or distributed by Dominion Voting Systems that is not described in publications and public court filings, it stems from his work related to the *Curling* matter. *Id.*, ¶¶ 3, 9-10. In *Curling*, the court authorized the plaintiffs to conduct security testing of certain Dominion voting equipment used in Georgia, which Dr. Halderman carried out subject to a protective order and other strict confidentiality protocols. *Id.*, ¶ 9, 11 & Ex. 2-C. Dr. Halderman described his discovery of several vulnerabilities at a closed-court hearing in *Curling* in September 2020, with his testimony later relied on by the *Curling* court in a subsequent merits order. *Curling v. Raffensperger,* 493 F. Supp. 3d 1264, 1277, 1279-81 (N.D. Ga. 2020). After additional research conducted under strict confidentiality orders, Dr. Halderman submitted his expert

report on July 1, 2021, thereafter, served and filed in *Curling* with an Attorneys'
Eyes Only designation ("Expert Report"). Halderman Decl., ¶ 9. None of this
analysis was public knowledge at the time the allegedly defamatory statements were
made, the latest of which was made on June 29, 2021. Ex. 1-D, ¶ 305(y).

*Nearly two years later*, a redacted version of the Expert Report was unsealed
by the *Curling* Court and filed publicly in June 2023. Halderman Decl., ¶ 9; *Curling,
Order*, ECF No. 1680.[13] Importantly, the Expert Report was not a forensic analysis
of the 2020 presidential election. Although it describes vulnerabilities that pose
threats to the security of future elections, Dr. Halderman has no evidence and has
repeatedly said that he has no evidence that any of these vulnerabilities was actually
exploited to affect the outcome of the 2020 presidential election. *E.g.,* Halderman
Decl., ¶¶ 7, 10 & Ex. 2-B.

To be clear, Dr. Halderman continues to uphold his professional obligations
by seeking to provide information about several vulnerabilities he discovered in
Dominion voting equipment and software to the appropriate authorities and in

---

[13] The protocols specific to Dr. Halderman's examination of Dominion voting
equipment and subsequent Expert Report were more extensive than the general
protective order entered by the *Curling* court. For the sake of clarity, other of Dr.
Halderman's findings and testimony not directly related to the Expert Report also
remain under seal in that court or continue to bear confidentiality designations under
the general protective order, even after a four-week trial concluded in February 2024.
The Subpoena endangers Dr. Halderman by compelling him to testify about *any*
information or findings preserved under seal by court order, not just about matters
directly related to the now-unsealed redacted Expert Report.

litigation in which he was retained as an expert. This is to avoid the possibility of exploitation by nefarious actors in future elections, while at the same time adhering to court orders regarding disclosure of his data, methods, work, and findings.[14] The presence and plausibility of exploitation of these vulnerabilities has *nothing* to do with the defamatory nature (or not) of statements of fact regarding whether Dominion actually caused or catalyzed that exploitation in a specific election. Indeed, Dr. Halderman has long made it perfectly clear that he has no evidence of any alteration of outcomes in connection with the 2020 presidential election. His work as a retained expert for the Michigan Department of the Attorney General to provide a public-record forensic analysis of the November 2020 configuration error that led to incorrect, pre-certification results in the presidential election in Antrim County, Michigan, has likewise made that perfectly clear.[15]

---

[14] As an example, *see* ICS Advisory No. 22-154-01, "Vulnerabilities Affecting Dominion Voting Systems ImageCast X," (June 3, 2022) (**Exhibit 1-I** to Demorest Decl.). The *Curling* court expressly authorized dissemination of the Expert Report to the federal Cybersecurity and Infrastructure Security Agency so that it could engage in its Coordinated Vulnerability Disclosure process. *See Curling,* Order, ECF No. 1315 (Feb. 11, 2022); *Curling,* Order, ECF No. 1453 (Aug. 11, 2022) at 3-4.

[15] J. Alex Halderman, Ph.D., "Analysis of the Antrim County, Michigan November 2020 Election Incident," (Mar. 26, 2021) at § 1.1–Summary of Findings ("These remaining errors affect too few votes to change the outcome of any contest but the Central Lake Village Marihuana Retailer Initiative …. The incident in Antrim County arose due to the county's mishandling of last-minute ballot design changes, a circumstance that is unlikely to have occurred widely in Michigan during the 2020 election") (footnote omitted). The peer-reviewed version of this report was

Even so, allowing the deposition of Dr. Halderman in the Defamation Matter places him at grave risk of violating the protective orders of the *Curling* court (and others). Dr. Halderman must continue to adhere carefully to orders regarding the seal upon his non-public testimony and confidential information related to his expert work, as he has since he first began this phase of his *Curling* expert duties in September 2020. Halderman Decl., ¶¶ 11-12.

Consider Dr. Halderman's options while under oath should OAN demand information that he knows due to his expert duties in *Curling* – information that one court, citing its own prior orders, compels him not to reveal and another court, citing its own protective order or its jurisdiction here, compels him to reveal. Dr. Halderman would have no safe response, let alone a good one. Compelling Dr. Halderman's deposition under the Amended Subpoena exposes him to contradictory orders from courts in Michigan, Georgia, Colorado, and the District of Columbia. OAN at best has offered assurances it will avoid protected matters and accept, to some unknown extent, the objections of counsel, which do not reasonably alleviate this serious concern.[16]

---

published on or about August 10, 2022 and is available at https://www.usenix.org/system/files/sec22-halderman.pdf.

[16] Respectfully, OAN is well aware of the protective orders placed on Dr. Halderman's expert work in *Curling*. For one, OAN attempted to intervene in the case to obtain the Expert Report while it remained under seal. *Curling*, Motion to Intervene for Limited Purposes, ECF No. 1287 (Jan. 27, 2022). That request was first stayed during the coordinated vulnerability disclosure process, *Curling*, Order,

OAN may respond that the amended protective order entered in the Consolidated Defamation Matters sufficiently protects Dr. Halderman's interests, or that its own disinterest in such material resolves these issues. This fails to appreciate with any seriousness the consequences of Dr. Halderman's compelled testimony in these circumstances, or how he could possibly resolve conflicting court orders during live testimony under oath. And there are other consequences as well: despite the recent disqualification of the counsel of record of a defendant in the Consolidated Defamation Matters, and the record evidence showing that a defendant participated in publishing thousands of confidential documents in violation of that same amended protective order, among other misconduct, the amended protective order permitting all parties and their counsel to have access to deposition transcripts, times, places, and locations remains in place.[17] One need only review the certificate of service to the Amended Notice of Subpoena to find OAN has informed the very same

---

ECF No. 1316 (Feb. 11, 2022), and then denied. *Curling,* Order, ECF No. 1453 (Aug. 11, 2022). For another, OAN has had copies of each protective order applying to Dr. Halderman's expert testimony in *Curling* and elsewhere provided to its counsel. For another, counsel for Dr. Halderman provided to OAN counsel relevant protective orders months ago. Even so, OAN has not sought permission or guidance from the *Curling* court on whether it may or how to take Dr. Halderman's deposition. Nor have they explained to his counsel what personal knowledge Dr. Halderman possesses (that is *not* gleaned from his work as a retained expert) that matters to OAN's defense of the underlying defamation lawsuit.

[17] *See also* Section IID & n.22 *infra.*

defendant *and his counsel who was disqualified just the day before* of when and where to find Dr. Halderman giving testimony under oath. Ex. 1-B at 5-6.[18]

OAN has not seriously tried to relieve Dr. Halderman of the undue burdens imposed by its testimonial subpoenas. The Amended Subpoena must be quashed.

> **2.    OAN seeks free expert testimony by deposing Dr. Halderman as a purported fact witness despite his absence of personal knowledge about facts in dispute.**

The Amended Subpoena should be quashed for another reason. OAN has not proposed or sought to engage Dr. Halderman as an expert, either before or while seeking this deposition. And Dr. Halderman has no personal, factual knowledge that would be relevant to any issues in the Defamation Matter, such as the probable falsity of any of OAN's alleged statements defaming Dominion. *Compare* Halderman Decl., ¶¶ 6-11 *with* Ex. 1-D, ¶ 305(a)-(y). OAN has not represented that Dr. Halderman ever communicated with OAN, or publicly commented about the allegedly defamatory statements Dominion claims OAN published prior to commencement of the Defamation Matter. It is difficult to understand how his

---

[18] This is paramount regarding his expert work in *Curling* because the Georgia Secretary of State elected not to implement *until after the 2024 general election* certain EAC-certified technological updates developed by Dominion, purportedly in response to vulnerabilities described in Dr. Halderman's expert report and the 2022 ICS Advisory (Exhibit 1-I) published by the federal Cybersecurity and Infrastructure Security Agency. This poses material security concerns difficult to anticipate and mitigate ahead of time were Dr. Halderman's testimony made public or disseminated in a form susceptible to disinformation or even to good-faith misinterpretation.

testimony is relevant to this litigation, let alone proportional to the needs of the case under Rule 26.

> i.   *Dr. Halderman does not have specific factual knowledge to offer about the matters in dispute.*

Presumably, OAN is looking for anything to show that whether software algorithms or malicious actors manipulated 2020 presidential election vote counts is unknowable, and therefore that it has not necessarily published false information with actual malice. But, Dr. Halderman's initial findings from examining Dominion voting equipment and his subsequent testimony at the September 2020 *Curling* hearing were taken under seal and in closed court, respectively. It follows that both his expert performance *and* his personal knowledge could say nothing about OAN's knowledge, probable knowledge, or state of mind at the time any allegedly defamatory statements challenged by Dominion in the Defamation Matter were made. All such statements were allegedly made before the service of the Expert Report on an Attorneys' Eyes Only basis on July 1, 2021, its filing under seal shortly thereafter, and the unsealing of a redacted version nearly two years later.

"The relevant inquiry is whether the testimony sought concerns information that was obtained directly through the observations of the witness rather than information that the witness came to learn from his or her own study." *In re Schaefer*, 331 F.R.D. 603, 609 (W.D. Pa. 2019). Dr. Halderman is unaware of any personal knowledge he has of whether OAN purposefully or recklessly published false

statements of fact with actual malice, without privilege, and with damage to the plaintiffs in the Defamation Matter. As a legal matter, Dr. Halderman's testimony would bear no relevance to OAN's defenses to Dominion's defamation claim. *Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 664453, *7-8 (N.D. Ill. June 12, 2001) ("courts have held that non-parties may raise relevancy objections to subpoenas").

If OAN really is content to ask Dr. Halderman about his personal knowledge relevant to the Defamation Matter that does *not* relate to his expert performance and knowledge gained thereby, let alone to his sealed expert testimony in *Curling,* then there is nothing to ask him about that they could not obtain from other authors of research publications or from leading experts who are not bound by multiple overlapping protective orders. Dozens of those experts signed the November 2020 letter explaining that while there are security weaknesses in U.S. voting systems, there was no evidence supporting a claim that anyone actually exploited those weaknesses to manipulate the results of the 2020 presidential election. Halderman Decl., ¶ 7 n.1 & Ex. 2-B.

And plenty is available in the public record for interpretation by any election security expert they can retain. For example, Dr. Halderman's expert analysis concerning the Antrim County incident is public record, secured at the expense of the State of Michigan. *See* footnote 15 *supra.* Dr. Halderman has provided to OAN,

at his own time and expense, an extensive record of his public studies and testimony which OAN claims matters to its defense against Dominion's defamation action, including a demonstrative prepared for and presented at the *Curling* trial and a new study published just weeks ago. And he is hardly the only researcher in this field.

Put simply, there is no compelling need for Dr. Halderman specifically to provide a deposition for OAN's purpose in the Defamation Matter.

> ii.    *OAN cannot coerce Dr. Halderman to testify as its expert.*

If, on the other hand, OAN is interested in knowledge relating to Dr. Halderman's performance as a retained expert in other litigation such as *Curling,* or in his academic expertise, then OAN just wants a free lunch. Expert testimony is opinion testimony based on a qualified expert's knowledge, skill, experience, training, or education applied to facts or data. Fed. R. Evid. 702. This is what Dr. Halderman has provided and what OAN seeks for its own devices. And OAN cannot simply force him to testify as an expert, let alone *their* expert. *See* Fed. R. Civ. P. 45(d)(3)(B)-(C) & 1991 Adv. Cmte. Notes ("The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required, … [which] is the same as that necessary to secure work product under Rule 26(b)(3) and gives assurance of reasonable compensation.") (citing *Wright v. Jeep Corp.*, 547 F. Supp. 871 (E.D. Mich. 1982)); *In re Arkansas Safe Foods Patent Infringement Litig.*, 2022 WL 18110012, *2–*4 (M.D. Ala. 2022)

(finding subpoena of unretained expert witness to testify to meaning of prior declarations in public record must be quashed for imposing undue burden and should be quashed as seeking compelled testimony of unretained expert), *report and recommendation adopted*, 2023 WL 98370, *1 (M.D. Ala. 2023).[19]

Even courts that have permitted compelled expert testimony require a stringent showing of substantial need, undue hardship, or unique factual knowledge possessed by the desired unretained expert in advance. *See* Fed. R. Civ. P. 45(d)(3)(C)(i) (requiring showing by subpoenaing party of substantial need that cannot otherwise be met without undue hardship; *Lewis v. DexCom, Inc.*, 2022 WL 114076, *1–*4 (W.D. Pa. 2022) (quashing third-party deposition subpoena served

---

[19] This accords with the conclusion of courts nationwide. *See, e.g., Klabunde v. Stanley*, 384 Mich. 276, 282, 181 N.W.2d 918, 921 (1970) ("By definition, an expert is one who gives opinion testimony, and not testimony concerning relevant facts. He has a property right in his opinion and cannot be made to divulge it in answer to a subpoena.") (quotation and footnote omitted); *Doering v. Koppelberger*, No. 343196, 2019 WL 4732725, at *2 (Mich. Ct. App. Sept. 26, 2019) (distinguishing between witnesses "called solely as experts" and witnesses who "have first-hand knowledge of facts relevant to the litigation"; "It is a longstanding principle that expert witnesses have a property interest in their opinions and cannot be compelled to testify."); *Owens v Silvia*, 838 A.2d 881, 901–02 (RI 2003) ("Absent extraordinary circumstances ... a non-party expert cannot be compelled to give opinion testimony against his or her will."); *Com. v. Vitello*, 367 Mass. 224, 235, 327 N.E.2d 819 (1975) ("we have ruled that a party may not by summons compel the involuntary testimony of an expert witness solely for the expertise he may bring to the trial, and in the absence of any personal knowledge on his part related to the issues before the judge and the jury"); *People ex rel. Kraushaar Bros. & Co. v Thorpe*, 72 N.E.2d 165, 166 (N.Y. 1947) (real estate expert could be compelled to give testimony as to what he had seen on the premises in question but could not be compelled to testify as to his expert opinion).

on witness who served as expert on issue in other litigation, but was not retained or identified as expert in instant litigation, and no showing of "exceptional need for his deposition" specifically made); *cf. Laborers Pension Tr. Fund-Detroit & Vicinity v. CRS Poured Concrete Walls, Inc.*, No. 04CV74714 DT, 2006 WL 3804912, at *5 (E.D. Mich. Dec. 22, 2006) (denying motion to compel even where movant was willing to classify information demanded as attorneys' eyes only because harm that would result to respondent by testifying was not outweighed by attempt to show substantial need) (Fed. R. Civ. P. 45(d)(3)(B)(i)).[20]

And Fed. R. Civ. P. 45(d)(3)(C)(ii) further requires in such circumstances "that the subpoenaed person will be reasonably compensated." As the 1991 amendment notes to Rule 45 made clear, this rule "was intended to provide appropriate protection for the intellectual property of [a] non-party witness." Where a subpoena "effectively requires a non-party to act as an unpaid expert witness in support of defendants' defense," then, "this is an abuse of the subpoena power."

---

[20] *See also Carney-Hayes v. Nw. Wisconsin Home Care, Inc.*, 699 N.W.2d 524, 534 (Wis. 2005) ("[A]bsent a showing of compelling circumstances by the party seeking the testimony, a witness cannot be compelled to testify as an expert. … To compel an expert to testify involuntarily, a party must not only show a compelling need for the testimony but also present a plan of reasonable compensation."); *Imposition of Sanctions in Alt v. Cline*, 589 N.W.2d 21, 27 (Wis. 1999) ("A person who has expended resources to attain specialized knowledge should not be forced to part with that knowledge upon demand … [as] there can be a number of people within a field with similar specialized knowledge capable of rendering an expert opinion on the question or questions asked. In such instance, the opinion of one particular expert is not irreplaceable.")); *Mason v. Robinson*, 340 NW2d 236, 242 (Iowa 1983).

*Convolve, Inc. v. Dell, Inc.*, No. C 10-80071 WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011) (cleaned up).[21]

There is no substantial need to force Dr. Halderman to testify, nor any undue hardship that would result to OAN should it not be permitted to depose Dr. Halderman *specifically*, but rather to retain its own expert in the ordinary course as so many litigants do. Fed. R. Civ. P. 45(d)(3)(C)(i); *Hansen Beverage*, 2009 WL 1543451, at *1-2 (granting motion to quash where information sought not "reasonably calculated to lead to the discovery of admissible evidence to a degree that would justify the burden imposed upon" respondent, as "the parties themselves may employ experts on the subject") (citing Fed. R. Civ. P. 26(b)(1)); *In re Schaefer*, 331 F.R.D. at 610 (granting motion to quash testimonial subpoena where subpoenaing party sought "testimony as to how" expert "employed her specialized knowledge, skill, experience, training, or education to arrive at, what was in her opinion, an accurate analysis of the data in the study" underlying her expert report,

---

[21] Importantly, reasonable compensation for an unretained expert compelled to testify may include "not only a professional fee and the cost of supplying the documents and remuneration for the inconvenience, but also could include in the appropriate case *a charge for a portion of the expenses of the original research.*" *Wright v. Jeep Corp.,* 547 F. Supp. 871, 877 (E.D. Mich. 1982) (emphasis added); *accord In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4856968, at *4 (E.D. Mo. Oct. 12, 2012); Fed. R. Civ. P. 45(d)(3)(B)(ii), (d)(3)(C)(ii). Here, that would include Dr. Halderman's *Curling* Expert Report, the product of many hours of previously compensated expert work often performed under compressed time constraints, and largely during a pandemic, no less.

which was used to support policy decisions which were the facts "central to the underlying cases, and there is no showing that Dr. Schaefer has personal knowledge of those facts, and therefore could testify about them").

OAN cannot abscond with Dr. Halderman's expertise simply by handing him or his counsel a non-party deposition subpoena under the guise of Rule 45 after his cooperation in good faith with prior documents subpoenas. As noted above, it is a longstanding proposition that the party seeking unretained expert testimony must demonstrate that "the expert is being called because of his knowledge of *facts relevant to the case* rather than in order to give opinion testimony," is expected to "testify[] to a previously formed or expressed opinion," likely "is a unique expert" such that "the calling party is able to show the unlikelihood that any comparable witness will willingly testify," and that the witness is not "oppressed by having continually to testify." *Kaufman*, 539 F.2d at 822. This OAN has not done and cannot do. Even if it could, it is inequitable and contrary to law to compel a nonparty and retained expert in a foreign case to sit for testimony ostensibly about his personal factual knowledge, but where the only material situations about which the nonparty might have factual knowledge was gained in the course of his expert performance. This state of affairs is only worsened given that the disclosure of that expert-produced factual knowledge would potentially cause the nonparty to violate one or more court orders on pain of contempt.

So. OAN is trying to use a Rule 45 subpoena to secure one or both of two things: 1) the factual knowledge he gained from his performance as an expert, regardless of its confidentiality or its cost to Dr. Halderman or the litigants who actually retained him, and regardless of the availability of similar factual knowledge from other researchers or from agents of its opposing party in the Defamation Matter; or 2) Dr. Halderman's expert opinion – to which it is not entitled, having not even tried to retain him – in their favor for free in the guise of a fact deposition. Whichever OAN is chasing, they have shown no proper or substantial need for Dr. Halderman's testimony and no nexus of his scholarship or expert performance with matters at issue in the underlying defamation matter here. The Court should quash the Amended Subpoena.

## C.    The Court Should Award Dr. Halderman His Expenses Of Litigation Under Rule 45

Fed. R. Civ. P. 45(d)(1) requires

> [a] party or attorney responsible for issuing and serving a subpoena [to] take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Causing a non-party to incur litigation expense by filing a motion to quash, after the non-party explained the reasonable basis for withdrawing the subpoena before the

28

approaching compliance date compelled the filing of the motion, falls well within this provision. Dr. Halderman has engaged in good faith for months with OAN's subpoenas (and not just in the Defamation Matter), requiring substantial investments of his attention and time and assistance of counsel. At this point, given OAN's refusal to abandon the unlawful Amended Subpoena, Dr. Halderman is entitled to his reasonable attorney's fees and other expenses of litigation in connection with filing this Motion. *E.g., Muslim Cmty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. CV 12-10803, 2015 WL 5132583, at *2 (E.D. Mich. Apr. 24, 2015) (concluding "that a reasonable person would have recognized … serving the subpoenas and then opposing [non-party respondent's] motion to quash and for protective order … were not substantially justified" and permitting submission of fee petition) (cleaned up) (citing *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *9 (S.D.N.Y. Dec. 23, 2003) ("Sanctions are properly imposed and attorney's fees are awarded where, as here, the party improperly issuing the subpoena refused to withdraw it, requiring the non-party to issue a motion to quash.")).

**D.     If The Court Does Not Quash The Amended Subpoena, The Court Should Modify It To Limit Its Scope And Compensate Dr. Halderman For All Time Spent On These Matters**

If (and only if) the Court does not quash the Amended Subpoena, Dr. Halderman respectfully requests that the Court modify the Amended Subpoena in at least five significant ways (or issue a protective order requiring equivalent relief).

*First*, the Court should order all parties involved in the deposition to refrain from asking any questions to Dr. Halderman, or introducing any exhibits, concerning his work related to the *Curling* litigation. As discussed *supra*, enforcing a line regarding what information, methods, data, and other material under seal is too complex to police in the confines of a live deposition, and exposes Dr. Halderman to unacceptable risk of sanction.

*Second*, the Court should order OAN to resolve any disputes or objections about Dr. Halderman's responsiveness related to his concerns about violating any of the protective or confidentiality orders before the court(s) that issued the applicable order(s). For example, disputes or objections related to one or more of the *Curling* orders should be ordered submitted to the *Curling* court for resolution. That federal district court for the Northern District of Georgia – where OAN has already appeared – is the proper arbiter of the meaning and scope of its orders. Should OAN wish to approach the *Curling* court, the Michigan court, or the Colorado courts ahead of time so that the parties and counsel to that litigation may comment and the court may resolve those issues ahead of any ordered deposition the Court finds appropriate, Dr. Halderman would have far better opportunity to obey the orders of these courts in this regard as he must and as he desires to do.

*Third*, the Court should bar Patrick Byrne, his agents, or any of his retained counsel, and in particular Stefanie Lambert Juntilla, from attending Dr. Halderman's

deposition or obtaining any transcript or exhibits resulting from the deposition. The District of Columbia court presiding over the Consolidated Defamation Matters has already found Byrne and Lambert's misconduct to present "the rare case in which disqualification is warranted" for repeated disobedience of court protective orders despite verbal and written assurances to that court of their compliance.[22] That has already led to the abuse of a deponent in the Consolidated Defamation Matters.[23] And, indeed, Dr. Halderman himself faced attacks from members of the disinformation community immediately following Lambert and Byrne's misconduct

---

[22] For the avoidance of doubt, the 62-page Memorandum Opinion describes in detail the amended protective order in the Consolidated Defamation Matters; recounts in detail and with primary sources the repeated dissemination, publication, public characterization, and implausible denial of wrongdoing of both defendant Byrne and his now-disqualified counsel; and analyzed at length the deleterious impact of their misconduct on the litigation, the parties, and the discovery and judicial processes. Among the examples of primary sources was Lambert's July "attempt[] to disclose deposition testimony … in response to a request from a Michigan State Representative" by "an email from an individual legislator" *after* "the Court expressly warned at the May hearing" that a request just like this one still falls within the orders of the court concerning protection of confidential information. Mem. Op., Ex. 1-G at 22. Other of defendant Byrne's counsel are also involved in violations of court orders to publish or obtain protected information. *Id.* at 23-24.

[23] Marshall Cohen, "Scarred by 2020 smears, voting companies and election officials brace for November," CNN.COM (Aug. 27, 2024) ("In June, one of Byrne's self-proclaimed 'operatives' unexpectedly showed up at the building where Poulos, the Dominion CEO, was being deposed, according to court filings. The operative filmed their encounter, which Byrne quickly posted online, leading to more vitriol from his fans."), available at https://www.cnn.com/2024/08/27/politics/voting-companies-election-officials-brace-for-november/index.html) (last visited Sept. 8, 2024).

in leaking protected documents in March.[24] There is every reason to think Dr. Halderman further places himself at risk should Byrne or his representatives have any connection to his deposition in this matter, as the amended protective order permits him to be.

*Fourth,* the Court should order OAN to compensate Dr. Halderman for 1) time and expenses reasonably spent responding to OAN's subpoenas, including this Motion and prior attempts to confer; 2) time spent preparing and sitting for a deposition at his prevailing expert rate, $950/hour (Halderman Decl., ¶ 5); and 3) a portion of the expense of producing expert reports in other litigation about which Defendants which to depose Dr. Halderman. Dr. Halderman and his counsel will submit such materials for the Court's review and incorporation into an order if so desired.

*Finally*, Dr. Halderman requests at least 21 days from the entry of any order compelling his testimony before testifying so that he may adequately prepare with his counsel, and so other interested parties or stakeholders, *see* footnote 4 *supra*, may

---

[24] *See, e.g.,* Affidavit of Sheriff Dar Leaf, Mar. 8, 2024 (referring to documents provided by Stefanie Lambert as supporting his "ongoing investigation" into Dr. Halderman based on his "incorrect" assertions as "expert witness" for the Michigan Department of State regarding Antrim County), available at https://tinyurl.com/ynhrzjpd (last visited Sept. 8, 2024); @KevinMoncla, X.com (Mar. 9, 2024, 10:11 AM) (citing leaked documents to attack Dr. Halderman's professional reputation), https://x.com/KevinMoncla/status/1766481820923928817 (last visited Sept. 8, 2024).

discuss their participation or observation of the deposition with the Defamation Matter parties, with those counsel and parties in actions consolidated with it for discovery purposes, and with Dr. Halderman and his counsel.

## **CONCLUSION**

For the foregoing reasons, Dr. Halderman respectfully requests that the Court quash OAN's Amended Subpoena, or in the alternative only, modify it as specified herein or issue a protective order providing the relief requested herein.

Respectfully Submitted,

DEMOREST LAW FIRM, PLLC

By: */s/ Mark S. Demorest*
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
Dated: September 10, 2024     mark@demolaw.com

33

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date caused to be electronically filed a copy of the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to counsel of record, and further that, pursuant to Fed. R. Civ. P. 5(b), I have on this date caused to be served a copy of the foregoing document by U.S. first-class mail to counsel of record for Defendants, John K. Edwards, Esq., Jackson Walker L.L.P., 1401 McKinney Suite 1900, Houston, TX 77010. I further certify that I have on this date caused to be served a copy of the foregoing document by email (unless otherwise specified) to the following:

**See Appendix**

DEMOREST LAW FIRM, PLLC

By: */s/ Mark S. Demorest*
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500

Dated:  September 10, 2024          mark@demolaw.com

Primerus/Alex Halderman (1593)/1 Draft Pleadings/2024 09 09 Brief in Support (Halderman Motion to Quash Subpoena).docx

34

## Appendix to Certificate of Service

**Carl C. Butzer**
**Jonathan D. Neerman**
**Minoo Sobhani Blaesche**
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
cbutzer@jw.com
jneerman@jw.com
mblaesche@jw.com

**Joshua A. Romero**
**Sean F Gallagher**
JACKSON WALKER LLP
100 Congress Avenue, Ste 1100
Austin, TX 78701
jromero@jw.com
sgallagher@jw.com

**Eve Levin**
**Stephen Shackelford , Jr.**
**Christina Dieckmann**
**Mark Hatch-Miller**
**Zachary Savage**
SUSMAN GODFREY L.L.P.
One Manhattan West
395 9th Avenue, Ste 50th Floor
New York, NY 10001
elevin@susmangodfrey.com
sshackelford@susmangodfrey.com
cdieckmann@susmangodfrey.com
mhatch-miller@susmangodfrey.com
ZSavage@susmangodfrey.com

**Charles L. Babcock**
**Bethany Pickett Shah**
**Christina Marie Vitale**
**Gabriela Barake**
**Joel Glover**
**John K. Edwards**
**Nancy W. Hamilton**
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010
cbabcock@jw.com
bpickett@jw.com
cvitale@jw.com
gbarake@jw.com
jglover@jw.com
jedwards@jw.com
nhamilton@jw.com

**R. Trent McCotter**
BOYDEN GRAY PLLC
801 17th Street, N.W., Suite 350
Washington, DC 20006
tmccotter@boydengray.com

**M. Theodore Takougang**
**Marcellus Antonio McRae**
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
ttakougang@gibsondunn.com
mmcrae@gibsondunn.com

**Jonathan J. Ross**
**Elizabeth B. Hadaway**
**Laranda Walker**
**Mary Kathryn Sammons**
**Florence Chen**
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
jross@susmangodfrey.com
ehadaway@susmangodfrey.com
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
fchen@susmangodfrey.com

**Davida Brook**
**Brittany Fowler**
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
dbrook@susmangodfrey.com
bfowler@omm.com

**Edgar Sargent**
SUSMAN GODFREY, L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
esargent@susmangodfrey.com

**Barry Coburn**
COBURN & GREENBAUM, PLLC
1710 Rhode Island Avenue, NW
2nd Floor
Washington, DC 20036
barry@coburngreenbaum.com

**David C. Tobin**
TOBIN, O'CONNOR & EWING
5335 Wisconsin Ave, N.W., #400
Washington, DC 20015
dctobin@tobinoconnor.com

**Ashley E. Johnson**
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
ajohnson@gibsondunn.com

**William C. Haggerty**
**Katherine Harwood**
FORD, WALKER, HAGGERTY &
BEHAR
One World Trade Center, 27th Floor
Long Beach, CA 90831
bill@fwhb.com
kharwood@fwhb.com

**Joshua A. Mooney**
KENNEDYS CMK LLP
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Joshua.Mooney@kennedyslaw.com

**Marc Casarino**
KENNEDYS CMK LLP
919 North Market Street, Ste 1550
Wilmington, DE 19801
marc.casarino@kennedyslaw.com

**Michael J. Tricarico**
KENNEDYS CMK LLP
570 Lexington Avenue, Suite 8th Floor
New York, NY 10022
Michael.Tricarico@Kennedyslaw.com

**Teresa Marie Cinnamond**
KENNEDYS CMK LLP
120 Mountain View Blvd.
P.O. Box 650
Basking Ridge, NJ 07920
teresa.cinnamond@kennedyscmk.com

**Douglas A. Daniels**
**Heath Novosad**
DANIELS & TREDENNICK PLLC
6363 Woodway Drive, Suite 700
Houston, TX 77057
doug.daniels@dtlawyers.com
heath.novosad@dtlawyers.com

**Patrick Byrne**
9810 East Martha Rd.
Alta, UT 84092
*(by U.S. first-class mail)*

**Lawrence J. Joseph**
LAW OFFICE OF LAWRENCE J.
JOSEPH
1250 Connecticut Avenue, NW
Suite 700-1A
Washington, DC 20036
ljoseph@larryjoseph.com

**Joel Erik Connolly**
**Nicole Wrigley**
**Emily Newhouse Dillingham**
**Martin Vincent Sinclair , Jr.**
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
edillingham@beneschlaw.com
mvs@sperling-law.com