## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

J. ALEX HALDERMAN,

        Plaintiff,

    v.

HERRING NETWORKS, INC., D/B/A
ONE AMERICA NEWS NETWORK,
CHARLES HERRING, ROBERT
HERRING SR., and CHANEL RION,

        Defendants.

Case No. 2:24-mc-51057-DML-DRG

District Judge: Hon. David M. Lawson

Magistrate Judge: Hon. David R. Grand

---

## DEFENDANTS' RESPONSE IN OPPOSITION TO J. ALEX HALDERMAN'S MOTION TO QUASH OR MODIFY NON-PARTY SUBPOENA TO TESTIFY AT A DEPOSITION

The OAN Defendants[1] ("OAN") in the underlying litigation ("Underlying Action")[2] oppose J. Alex Halderman's ("Halderman") Motion to Quash or Modify Non-Party Subpoena to Testify at a Deposition in a Civil Action or in the Alternative

---

[1] The OAN Defendants are Herring Networks, Inc. d/b/a One America News Network, Charles Herring, Robert Herring, Sr., and Chanel Rion.

[2] The three Plaintiffs ("Plaintiffs" or "Dominion") in the Underlying Action consist of (1) U.S. Dominion, Inc., (2) Dominion Voting Systems, Inc., and (3) Dominion Voting Systems Corporation. The latter two entities are both wholly owned subsidiaries of U.S. Dominion, Inc. *See* ECF No. 1 at ¶¶ 14–16, No. 1:21-cv-02130-CJN, Complaint (Aug. 10, 2021).

for Protective Order (ECF No. 1, "Motion") and request that it be denied in its entirety for the reasons stated in the brief filed contemporaneously herewith.

Dated: October 10, 2024

By: */s/Jennifer A. Dukarski*  _____

**BUTZEL LONG, P.C.**
Jennifer A. Dukarski
Michigan Bar No. P74257
101 N. Main Street, Suite 200
Ann Arbor, MI  48104
Tel: (734) 213-3427
dukarski@butzel.com

**JACKSON WALKER L.L.P.**
Charles L. Babcock (application
forthcoming)
Texas Bar No. 01479500
John K. Edwards
Texas Bar No. 24002040
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
jedwards@jw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

J. ALEX HALDERMAN,

               Plaintiff,

           v.

HERRING NETWORKS, INC., D/B/A
ONE AMERICA NEWS NETWORK,
CHARLES HERRING, ROBERT
HERRING SR., and CHANEL RION,

               Defendants.

Case No. 2:24-mc-51057-DML-DRG

District Judge: Hon. David M. Lawson

Magistrate Judge: Hon. David R. Grand

## BRIEF IN SUPPORT OF THE OAN
## DEFENDANTS' RESPONSE IN OPPOSITION TO J. ALEX
## HALDERMAN'S MOTION TO QUASH OR MODIFY NON-PARTY
## <u>SUBPOENA TO TESTIFY AT A DEPOSITION</u>

# **TABLE OF CONTENTS**

Page

Statement of the Issue Presented.............................................................. vii

Authority for the Relief Sought............................................................... viii

I.     INTRODUCTION ............................................................................1

II.    LEGAL STANDARD.......................................................................7

      A.    Undue Burden.......................................................................9

III.   ARGUMENT................................................................................ 10

      A.    Halderman must comply with the OAN Defendants' subpoena
           seeking deposition testimony relevant to the claims in the
           Underlying Action from a percipient fact witness. ........................... 10

      B.    Halderman's confidentiality obligations do not prevent his
           deposition........................................................................ 19

      C.    Halderman's Rule 45 request for attorney's fees and expenses
           should be denied. ................................................................ 22

      D.    Halderman's proposed modifications of the subpoena are
           meritless............................................................................ 24

IV.   CONCLUSION............................................................................ 25

CERTIFICATE OF SERVICE ............................................................. 26

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ajuba Int'l, LLC v. Saharia*,
No. 1:11-CV-12936, 2014 WL 4793846 (E.D. Mich. Sept. 25,
2014) ................................................................................................................9

*Alberts v. HCA, Inc.*,
405 B.R. 498 (D.D.C. 2009) .......................................................................... 23

*Alexander v. F.B.I.*,
186 F.R.D. 60 (D.D.C. 1998)...........................................................................9

*Alexander v. FBI*,
186 F.R.D. 188 (D.D.C. 1999).................................................................. 23, 24

*Anker v. G.D. Searle & Co.*,
126 F.R.D. 515 (M.D.N.C. 1989) ................................................................... 20

*Buchanan v. Am. Motors Corp.*,
697 F.2d 151 (6th Cir. 1983) ...........................................................................9

*Buetenmiller v. Cogswell*,
No. 20-11031, 2021 WL 1837750 (E.D. Mich. May 7, 2021) ......................... 11

*Curling v. Raffensperger*,
No. 17-cv-2989-AT (N.D. Ga.) ............................................................ 13, 14, 20

*Deitchman v. E.R. Squibb & Sons, Inc.*,
740 F.2d 556 (7th Cir. 1984) ......................................................................... 20

*In re Denture Cream Prods. Liab. Litig.*,
292 F.R.D. 120 (D.D.C. 2013)........................................................................ 10

*Duff v. Duff*,
No. 04-345-KSF, 2005 WL 6011250 (E.D. Ky. Nov. 14, 2005) .........................9

*Goldberg v. Amgen, Inc.*,
123 F. Supp. 3d 9 (D.D.C. 2015) .................................................................... 22

*Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Florida, Inc.*,
No. 11-50655, 2011 WL 2533653 (E.D. Mich. June 27, 2011) ...................... 11

*Hansen Beverage Co. v. Innovation Ventures, LLC*,
No. 09–50630, 2009 WL 1543451 (E.D. Mich. Jun. 2, 2009) ......................... 11

*Heat & Control, Inc. v. Hester Indus., Inc.*,
785 F.2d 1017 (Fed. Cir. 1986)......................................................................... 20

*Irons v. Karceski*,
74 F.3d 1262 (D.C. Cir. 1995) ............................................................................9

*Kaufman v. Edelstein*,
539 F.2d 811 (2d Cir. 1976)....................................................... 9, 10, 16, 17, 20

*Lyon v. My Pillow, Inc.*,
No. 1:22-cv-1191, 2023 WL 2347489 (W.D. Mich. Mar. 3, 2023) ................. 22

*Muslim Cmty. Assoc. of Ann Arbor v. Pittsfield Twp.*,
No. 12-10803, 2015 WL 5132583 (E.D. Mich. Apr. 24, 2015) ....................... 22

*Proto Gage, Inc. v. Fed. Ins. Co., Inc.*,
No. 21-12286, 2022 WL 1598621 (E.D. Mich. May 19, 2022) ....................... 10

*In re Pub. Offering PLE Antitrust Litig.*,
233 F.R.D. 70 (D. Mass. 2006)............................................................................8

*Raboczkay v. City of Taylor*,
No. 19-10255, 2020 WL 6317114 (E.D. Mich. Oct. 28, 2020)........................ 11

*Rahaman v. State Farm Mut. Ins. Co.*,
No. 22-10635, 2023 WL 36061 (E.D. Mich. Jan. 4, 2023) ................................9

*Rendon Grp., Inc. v. Rigsby*,
10–mc–164, 2010 WL 4627647 (D.D.C. Nov. 8, 2010) .................................. 24

*Schaumleffel v. Muskingum Univ.*,
No. 2:17-CV-463, 2019 WL 3071851 (S.D. Ohio July 15, 2019) ......................9

*Scott v. Burress*,
2008 WL 585072 (E.D. Mich. Mar. 3, 2008) ................................................... 23

*State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab
     Clinic, P.C.*,
     315 F.R.D. 220 (E.D. Mich. 2016) ................................................... 11

*Trammel v. United States*,
     445 U.S. 40 (1979) ................................................................................8

*Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*,
     813 F.2d 1207 (Fed. Cir. 1987) ....................................................... 20

*United States v. IBM Corp.*,
     81 F.R.D. 628 (S.D.N.Y. 1979) ........................................................ 21

*United States v. Nixon*,
     418 U.S. 683 (1973) ..............................................................................8

*Wright v. Jeep Corp.*,
     547 F. Supp. 871 (E.D. Mich. 1982) ....................................................8

**Rules**

Fed. R. Civ. P. 26 ......................................................................................... 11

Fed. R. Civ. P. 26(b)(1) ............................................................................... 11

Fed. R. Civ. P. 26(b)(2)(C)(i) ...................................................................... 10

Fed. R. Civ. P. 30(c)(2) ................................................................................ 21

Fed. R. Civ. P. 45 ................................................................... 10, 11, 21, 22

Fed. R. Civ. P. 45(d)(1) ................................................................................ 22

Fed. R. Civ. P. 45(d)(3)(A)(iii) .............................................................. 21, 24

Fed. R. Civ. P. 45(d)(3)(A)(iv) .....................................................................9

Fed. R. Civ. P. 45(d)(3)(B)(ii) .................................................................. 8, 9

**Miscellaneous**

@jhalderm, X (F/K/A TWITTER) (Nov. 7, 2020 1:48 PM),
     https://x.com/jhalderm/status/1325163291161755649 ......................... 13, 15, 16

*Dominion-izing the Vote*, One America News Network (Nov. 21, 2020), available at
https://www.youtube.com/watch?v=746HTjhFifA ...................................... 2, 12

J. Alex Halderman, *Analysis of the Antrim County, Michigan November 2020 Election Incident* (Mar. 26, 2021), https://www.michigan.gov/-
/media/Project/Websites/sos/30lawens/Antrim.pdf
[https://perma.cc/4MR7-7QR4] .................................................................. 3, 13

J. Alex Halderman, *The Antrim County 2020 Election Incident : An Independent Forensic Investigation*, USENIX (Aug. 10–12, 2022), https://www.usenix.org/system/files/sec22-halderman.pdf
[https://perma.cc/7VT2-CTQ4] .................................................................. 3, 13

J. Alex Halderman, *I Hacked an Election. So Can the Russians.*, N.Y. TIMES (Apr. 5, 2018), https://www.nytimes.com/2018/04/05/opinion/election-voting-machine-hacking-russians.html. ................................... 2, 6, 15, 19, 20

J. Alex Halderman, *Publications*, https://jhalderm.com/papers/
[https://perma.cc/M9GZ-EPG5]. ......................................................... 15, 19, 20

J. Alex Halderman, *Security Analysis of the Dominion ImageCast X*, FREEDOM TO TINKER (June 14, 2023), https://freedom-to-tinker.com/2023/06/14/security-analysis-of-the-dominion-imagecast-x/ [https://perma.cc/CZD9-MPUR].
................................................................................................. 6, 15, 19, 20

9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE (3d ed. 2005) ...........................................................................................................8

KILL CHAIN: THE CYBER WAR ON AMERICA'S ELECTIONS (HBO Documentary Films 2020) ......................................................................... 15, 19

Steve Friess, Is *Your Vote Secure in Michigan? Cybersecurity Expert Alex Halderman is Cautiously Optimistic*, Hour Detroit Mag. (Sept. 4, 2020), https://www.hourdetroit.com/community/is-voting-secure-in-michigan-cybersecurity-expert-alex-halderman-cautiously-optimistic/ [https://perma.cc/CD2P-B4GZ] .............................. 15, 19

Teresa Lawlor, *Relying on Electronic Voting Machines Puts Us at Risk, Security Expert Says*, The World (Aug. 17, 2020), https://theworld.org/stories/2020/08/17/relying-electronic-voting-machines-puts-us-risk-security-expert-says [https://perma.cc/U4SQ-N8US]................................................................... 15, 19

## STATEMENT OF THE ISSUE PRESENTED

Is Halderman required to testify at a deposition pursuant to OAN's validly issued subpoena where, after seeking and obtaining an extension of his deposition date, he agreed to testify but, shortly before his appearance, after changing counsel, filed the Motion, and where he is a percipient witness having allegedly made statements to the press which were a basis for OAN's reporting (claimed by Plaintiffs to be defamatory) about events in Antrim County, Michigan, and where he made multiple public reports, Declarations, statements on websites and in podcasts, and testimony about Dominion's systems inconsistent with the Plaintiffs' positions in this lawsuit, and where ██████████████████████████████████ ████████████████████████████, and where the Plaintiffs are claiming $1,750,000,000 in damages against each defendant?

## AUTHORITY FOR THE RELIEF SOUGHT

The most appropriate authority for the relief sought by OAN Defendants is Federal Rules of Civil Procedure 26(c) and 45, and *Kaufman v. Edelstein*, 539 F.2d 811, 821–22 (2d Cir. 1976).

## I.     INTRODUCTION

J. Alex Halderman ("Halderman") was subpoenaed because he allegedly told the media that the miscount of votes in Antrim County, Michigan flipping approximately 6,000 votes from former President Trump ("Trump") to President Biden ("Biden") was caused by a Dominion software "glitch" which formed, in part, the basis of reporting by OAN that is now claimed to be defamatory. In addition, Halderman, far from being a disinterested party, has admittedly been hired as an expert by a former Dominion executive, Eric Coomer, who filed his own still pending defamation lawsuit (in Colorado) where OAN was once but no longer is a defendant. Nevertheless, the same OAN broadcast Coomer claimed to be defamatory is a subject of Dominion's claims. In addition, Halderman ███████████████████ ████████████████████████████████████████████.

Indeed, Halderman was quoted in one of the claimed defamatory broadcasts ("Dominion-izing the Vote") and his picture was shown in that OAN program, captured from a video he created for the *New York Times* in 2018:

> **Halderman:** I'm here to tell you that the electronic voting machines Americans got to solve the problem of voting integrity: They turned out to be an awful idea.
> . . .
> **Halderman:** That's because people like me can hack them all too easily.



*See* Complaint at ¶ 305 n.334 (PageID.255) (citing *Dominion-izing the Vote*, One America News Network (Nov. 21, 2020), available at https://www.youtube.com/watch?v=746HTjhFifA (Ex. 383)).[3]   In the segment, OAN examined reports of "vote flipping" that occurred in Antrim County, where, as Halderman has extensively analyzed, "[o]n the night of the November 3, 2020, general election," the County "published inaccurate unofficial results, attracting national attention" after the County's Dominion voting machines mistabulated

---

[3] OAN aired portions of Halderman's video op-ed he gave to the New York Times in 2018—before Halderman began serving as an expert witness in litigation matters in Georgia, Michigan, or Colorado. *See* J. Alex Halderman, *I Hacked an Election. So Can the Russians.*, N.Y. TIMES (Apr. 5, 2018) (video op-ed starring Halderman explaining vulnerabilities of electronic voting machines), https://www.nytimes.com/2018/04/05/opinion/election-voting-machine-hacking-russians.html.

thousands of ballots cast, shifting the vote total from Trump's favor to Biden's.[4] Dominion vehemently disputes that a defect in its software contributed to the errors in Antrim County,[5] ███████████████████████████████████ ████████████████.[6] And Halderman too has contradicted Dominion's position, including in his public analyses concerning the incident,[7] and in his initial reaction to the Antrim County situation, where he concluded ███████████████████ ████████████████[8]

OAN began efforts to secure documents and testimony from Halderman in May of 2024 and, as the Motion notes, he produced documents in good faith after his then lawyer and OAN's counsel reached agreement on the scope of the document subpoena. *See* ECF No. 1 at 20 (PageID.20). A subpoena *ad testificandum* was

---

[4] **Ex. 1-E**, J. Alex Halderman, *Analysis of the Antrim County, Michigan November 2020 Election Incident* (Mar. 26, 2021) (hereinafter 2021 Antrim County Report), https://www.michigan.gov/-/media/Project/Websites/sos/30lawens/Antrim.pdf [https://perma.cc/4MR7-7QR4].

[5] *E.g.*, Complaint at ¶ 77 (PageID.130).

[6] **Ex. 1-N**, Sheryl Guy Depo. Tr. 229:6–17 (marked confidential).

[7] **Ex. 1-F**, J. Alex Halderman, *The Antrim County 2020 Election Incident: An Independent Forensic Investigation*, USENIX at 589 (Aug. 10–12, 2022) (hereinafter 2022 Antrim County Report), at 589 ("A chain of human errors was compounded by gaps in election procedures and their adherence. The election software also could have done more to help election staff avoid mistakes.") https://www.usenix.org/system/files/sec22-halderman.pdf [https://perma.cc/7VT2-CTQ4]; *see also* **Ex. 1-E**, 2021 Antrim County Report, *supra* note 4.

[8] **Ex. 1-G**, DOM_DC01445555–56 (email of Nov. 6, 2020 7:51 PM) (marked confidential).

issued on July 24, 2024 calling for a deposition in Ann Arbor (where the witness teaches) in early September. **Ex. 1**, Edwards Decl. ¶ 3. His counsel (Adam Sparks) then requested a later date and OAN's lawyer (John Edwards) and Sparks agreed on September 25, 2024 (just five days before the discovery cutoff) in Ann Arbor. *See* Demorest Decl. at Ex. 1-C, ECF No. 1-1 at 27–28 (PageID.76-77) (Halderman's lawyer stated: "[p]lease plan on September 25" and "Ann Arbor should work"). An amended notice was sent by OAN on August 14, 2024, pursuant to these agreements. **Ex. 1**, Edwards Decl. ¶ 4.

Three weeks later, Halderman changed counsel and his new lawyer reneged on the agreements and filed the Motion just 14 days before the agreed-upon deposition was to occur, claiming that Halderman should not be required to testify at all. *See id.* at ¶¶ 6–7. In the words of Dominion's counsel in a similar case, "something's wrong here."

It is especially puzzling because Halderman's arguments are so flimsy. His claim that he will suffer "burdens" (plural) boils down to his fear of having to keep track of multiple allegedly applicable protective orders, especially the *Curling* case in Georgia, and will inadvertently violate them. This is a burden made of whole cloth. First, OAN has agreed to limit its questions to his publicly available statements including, but not limited to, those that were relied upon in the allegedly defamatory broadcasts. **Ex. 1**, Edwards Decl. ¶¶ 5–6. Second, if a question calls upon the witness

4

to, in good faith, refuse to answer a question, then that can be dealt with after the fact and not through the wholesale prohibition of his testimony ahead of time.

Halderman argues that many of his public statements (either through "peer reviewed" journals, public testimony, podcasts, and statements to the press) came *after*, he says, the allegedly defamatory broadcasts, and thus are not relevant. Halderman is confusing two different things. The state of mind of the person involved in the defamatory broadcast is measured as of the date of the publication. But the truth or falsity of the statement is measured at the time of trial. Much of Dominion's claimed evidence of falsity is predicated on matters occurring after (sometimes long after) the complained of broadcasts, as is some of the evidence OAN has discovered such as the Antrim software "glitch" occurring in another Michigan County.

And far from a far-removed bystander regarding the matters at issue, Halderman not only is included in the above complained-of broadcast but also has unique, personal knowledge regarding the matters in dispute, having authored public reports contradicting Plaintiffs' position in this lawsuit,[9] placing relevant op-eds in

---

[9] *See* **Ex. 1-E**, 2021 Antrim County Report, *supra* note 4; **Ex. 1-F**, 2022 Antrim County Report, *supra* note 7.

the New York Times,[10] performing extensive testing on Dominion's machines,[11] and



even ████████████████████████████████████████████████████████

████████████████████████████████████[12] Indeed, ██████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████[13] It is thus odd

that Coomer would retain Halderman as an expert in his personal case[14] and

Halderman would ██████████████████████████████████[15]

"Something's wrong here."

Halderman's assertion that "vulnerabilities he discovered in Dominion voting

equipment and software" have "*nothing* to do" with the claims and defenses in the

Underlying Action (ECF No. 1 at 28) (PageID.28) is wholly inaccurate, as they are

---

[10] Halderman, *I Hacked an Election. So Can the Russians*, *supra* note 3.

[11] *See, e.g.*, **Ex. 1-C**, J. Alex Halderman, *Security Analysis of the Dominion ImageCast X*, FREEDOM TO TINKER (June 14, 2023) (blog post discussing Halderman's "extensive[] test[ing]" of Dominion's ballot marking devices and his discovery of "vulnerabilities in nearly every part of the system that is exposed to potential attackers"), https://freedom-to-tinker.com/2023/06/14/security-analysis-of-the-dominion-imagecast-x/ [https://perma.cc/CZD9-MPUR].

[12] **Ex. 1-H**, DOM_DC01851194–95 (marked confidential).

[13] **Ex. 1-G**, DOM_DC01445553 (marked confidential); **Ex. 1-M**, Eric Coomer Depo. Tr. at 73:4–74:20.

[14] **Ex. 1-M**, Eric Coomer Depo. Tr. at 91:5–14.

[15] **Ex. 1-K**, DOM_NMX04920797–98 (marked confidential); **Ex. 1-I**, DOM_DC00370259 (marked confidential); **Ex. 1-J**, DOM_DC01593365 (marked confidential); **Ex. 1-L**, DOM_DC07699971–72 (marked confidential).

clearly relevant to (i) falsity, an essential element of Plaintiffs' defamation claim; (ii) OAN's substantial-truth defense, and (iii) damages, insofar as Dominion lost business as a result of the vulnerabilities Halderman discovered and **NOT** the OAN Defendants' allegedly defamatory statements.

As for the argument that OAN is trying to steal Halderman's intellectual property, we note that to the extent Halderman's intellectual property is at issue he has already given it away with his comments to the press (especially regarding Antrim) or has already received compensation acceptable to him for his public testimony in the cases he references. That said, OAN is willing to pay his *standard and reasonable* hourly rate for the deposition time spent answering OAN's questions provided Dominion does not contend that Halderman is OAN's expert or is attempting to influence his testimony.[16]

The OAN Defendants respectfully request that the Court deny Halderman's Motion and order Halderman to sit for a deposition at a time agreeable to the witness and counsel but in no event later than October 31, 2024.

## II.   LEGAL STANDARD

Halderman must demonstrate good cause to avoid his deposition overcoming the presumption that "[t]he public . . . has a right to every man's evidence, except

---

[16] We note with interest that payment was never demanded when Halderman's prior counsel agreed to the deposition.

for those persons protected by a constitutional, common-law, or statutory privilege." *Wright v. Jeep Corp.*, 547 F. Supp. 871, 873 (E.D. Mich. 1982) (quoting *United States v. Nixon*, 418 U.S. 683, 709 (1973)). "Exceptions to the demand for every man's evidence are not lightly created or expansively construed." *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1979)). Furthermore, "quashing a subpoena ad testificandum is very rare, because until the witness is asked specific questions, usually there is nothing on which to base a motion to quash." *In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 80 (D. Mass. 2006) (quoting 9 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 45.04[3][a] (3d ed. 2005)).

As for Rule 45(d)(3)(B)(ii), cited by Halderman in his Motion (ECF No. 1 at 14) (PageID.14), it applies only if a subpoena requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party"—in which case the court "may, on motion, quash or modify the subpoena," *id.* at 45(d)(3)(B)(ii), or, if the party on whose behalf the subpoena is issued "shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship" and "ensures that the subpoenaed person will be reasonably compensated," the court may "order appearance or production under specified conditions," *id.* at 45(d)(3)(C)(i)–(ii). *See In re Pub. Offering*, 233 F.R.D. at 76

(court "is permitted—but not required—to quash or modify a subpoena" if the elements of Rule 45(d)(3)(B)(ii) are present).

This Court's discretion will not be disturbed absent abuse. *Buchanan v. Am. Motors Corp.*, 697 F.2d 151, 152 (6th Cir. 1983) (citing *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976)); *see also Duff v. Duff*, No. 04-345-KSF, 2005 WL 6011250, at *3 (E.D. Ky. Nov. 14, 2005).

### A.    Undue Burden

A court may also quash or modify a subpoena if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "The party seeking to quash a subpoena bears a heavy burden of proof." *Ajuba Int'l, LLC v. Saharia*, No. 1:11-CV-12936, 2014 WL 4793846, at *2 (E.D. Mich. Sept. 25, 2014)); *see also Rahaman v. State Farm Mut. Ins. Co.*, No. 22-10635, 2023 WL 36061, at *2 (E.D. Mich. Jan. 4, 2023); *accord Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995).

"To meet that heavy burden, the movant must make more than 'conclusory' assertions of an interest or privilege." *Schaumleffel v. Muskingum Univ.*, No. 2:17-CV-463, 2019 WL 3071851, at *2 (S.D. Ohio July 15, 2019); *see also Alexander v. F.B.I.*, 186 F.R.D. 60, 64 (D.D.C. 1998) ("The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one.").

With respect to compelling an unretained expert to testify at a deposition, the court's discretion to quash a subpoena under Rule 45 "should be informed by," among other factors, "'the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony.'" Rule 45 advisory committee's note to 1991 amendment (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976)). Other factors relevant to the undue-burden analysis include

> whether the discovery is unreasonably cumulative or duplicative; whether the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive; and whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

## III.   ARGUMENT

### A.   Halderman must comply with the OAN Defendants' subpoena seeking deposition testimony relevant to the claims in the Underlying Action from a percipient fact witness.

Halderman, a non-party, bears the burden of showing good cause for a protective order, requiring him to make a specific demonstration of facts as opposed to conclusory or speculative statements about the need for a protective order and the harm which would be suffered without one. *See Proto Gage, Inc. v. Fed. Ins. Co.*,

10

*Inc.*, No. 21-12286, 2022 WL 1598621, at *2 (E.D. Mich. May 19, 2022). Halderman's burden is especially heavy because "[i]t is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances." *Buetenmiller v. Cogswell*, No. 20-11031, 2021 WL 1837750, at *2 (E.D. Mich. May 7, 2021) (quotation omitted).

"A subpoena to a third party under Rule 45 is subject to the same discovery limitations as those set out in Rule 26," including the requirement that the information sought be relevant. *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016); *see* Fed. R. Civ. P. 26(b)(1) (authorizing "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case"). The OAN Defendants must provide an intelligible explanation of how the requested information might lead to the discovery of relevant evidence in the Underlying Action. *See Great Lakes Transp. Holding, LLC v. Yellow Cab Serv. Corp. of Florida, Inc.*, No. 11-50655, 2011 WL 2533653, at *1 (E.D. Mich. June 27, 2011) (citing *Hansen Beverage Co. v. Innnovation Ventures, LLC*, No. 09–50630, 2009 WL 1543451, at *1 (E.D. Mich. Jun. 2, 2009)). Relevance "has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Raboczkay v. City of Taylor*, No. 19-10255, 2020 WL 6317114, at *1 (E.D. Mich. Oct. 28, 2020).

In this case, the relevancy of the deposition testimony the OAN Defendants seek from Halderman is clear. For starters, Halderman is quoted in the following broadcast concerning Antrim County and aired by OAN that Dominion alleges is defamatory:

> **Chanel Rion:** In this edition of One American News Investigates, we look at Dominion Voting Systems and its role in the 2020 presidential elections. Glitches, errors, money trails to powerful Democrats. Dominion is just one of three major companies providing voting systems to America. But Dominion captured headlines when it was discovered it had glitched 6,000 votes giving Biden a fraudulent win. This was not an isolated event.
>
> . . .
>
> **Halderman:** I'm here to tell you that the electronic voting machines Americans got to solve the problem of voting integrity. They turned out to be an awful idea.
>
> . . .
>
> **Halderman:** That's because people like me can hack them all too easily.

See Complaint at ¶ 305 n.334 (PageID.255) (*Dominion-izing the Vote*, One America News Network (Nov. 21, 2020), available at https://www.youtube.com/watch?v=746HTjhFifA (Ex. 383)).

Halderman is also a percipient witness with personal knowledge of facts relevant to the claims and the defenses in the Underlying Action and a personal relationship with the subject matter of the litigation. In fact, Halderman has been involved from the very beginning: In private correspondence in the immediate aftermath of Antrim County incident, Halderman initially stated that ▮



[17]

[18] And Halderman later

[19]    Publicly, Halderman pitched a different tune from his initial statements, proclaiming that the vote-flipping was due to human error.[20] These and other emails produced by Dominion[21] demonstrate Halderman's relevancy to the Antrim County incident, as do his very public two analyses on Antrim County (2021 and 2022[22]).

Halderman's personal knowledge of matters beyond Antrim County is also relevant, and it is well known. In the *Curling v. Raffensperger* case in Georgia

---

[17] **Ex. 1-G**, DOM_DC01445555–56 (email of Nov. 6, 2020 7:51 PM) (marked confidential).

[18] **Ex. 1-G**, DOM_DC01445553 (marked confidential).

[19] **Ex. 1-H**, DOM_DC01851194–95 (marked confidential).

[20] **Ex. 1-D**, @jhalderm, X (F/K/A TWITTER) (Nov. 7, 2020 1:48 PM), https://x.com/jhalderm/status/1325163291161755649.

[21] **Ex. 1-J**, DOM_DC01593365–66 (marked confidential); **Ex. 1-K**, DOM_NMX04920797–99 (marked confidential); **Ex. 1-L**, DOM_DC07699971–72 (marked confidential).

[22] **Ex. 1-F**, 2022 Antrim County Report, *supra* note 7; **Ex. 1-E**, 2021 Antrim County Report, *supra* note 4.

federal district court, Halderman signed a declaration concluding, as a result of his examination of Dominion's systems, that the Dominion system in use in Georgia "contains multiple severe security flaws" that attackers could exploit "to install malicious software, either with temporary physical access (such as that of voters in the polling place) or remotely from election management systems"; and that "such malware, once installed could alter voters' votes while subverting all the procedural protections practiced by the State." Decl. of J. Alex Halderman ¶ 4, *Curling v. Raffensperger*, No. 17-cv-2989-AT, ECF 1304-3 (N.D. Ga. Feb. 3, 2022). Halderman reached these conclusions based upon personally engaging in "twelve weeks of intensive testing of the Dominion equipment provided" to him for his examination. *Id.*

Indeed, Halderman does not dispute the percipient nature of his knowledge: "I have expert opinion *and related factual knowledge* about the security of Dominion voting equipment that stems directly and exclusively from my expert work in the *Curling* matter." ECF No. 1-2, at ¶ 9 (PageID.403) (emphasis added). It is not only this <u>factual</u> knowledge which the OAN Defendants seek to elicit from Halderman's testimony, but also his knowledge underlying the public information he put out on

his own accord—through interviews,[23] tweets,[24] blogs,[25] and other public statements.[26] Halderman's attempts to shield himself from discovery due to his status as a unretained expert is belied by the fact that Halderman grabbed the microphone and made these and other public statements to steer the conversation surrounding the 2020 Election. For example, his tweets on November 7, 2020 concerning the miscount in Antrim County, Michigan—where Dominion machines were

---

[23] *See, e.g.*, **Ex. 1-A**, Steve Friess, *Is Your Vote Secure in Michigan? Cybersecurity Expert Alex Halderman is Cautiously Optimistic*, HOUR DETROIT MAG. (Sept. 4, 2020) (article featuring interview with Halderman regarding Michigan's election-security preparedness for 2020 election in light of voting machines' demonstrated vulnerabilities), https://www.hourdetroit.com/community/is-voting-secure-in-michigan-cybersecurity-expert-alex-halderman-cautiously-optimistic/ [https://perma.cc/CD2P-B4GZ]; **Ex. 1-B**, Teresa Lawlor, *Relying on Electronic Voting Machines Puts Us at Risk, Security Expert Says*, THE WORLD (Aug. 17, 2020) (article featuring interview with Halderman regarding potential exploitation of states' election management systems by malicious hackers), https://theworld.org/stories/2020/08/17/relying-electronic-voting-machines-puts-us-risk-security-expert-says [https://perma.cc/U4SQ-N8US].

[24] **Ex. 1-D**, @jhalderm, *supra* note 20.

[25] *See, e.g.*, **Ex. 1-C**, Halderman, *Security Analysis of the Dominion ImageCast X*, *supra* note 11 (blog post discussing Halderman's "extensive[] test[ing]" of Dominion's ballot marking devices and his discovery of "vulnerabilities in nearly every part of the system that is exposed to potential attackers").

[26] *See, e.g.*, Halderman, *I Hacked an Election. So Can the Russians*, *supra* note 3; J. Alex Halderman, *Publications* (Halderman's personal website identifying his published works, including those regarding vulnerabilities in Dominion's ballot scanners), PageID.409-419, also available at https://jhalderm.com/papers/ [https://perma.cc/M9GZ-EPG5]; KILL CHAIN: THE CYBER WAR ON AMERICA'S ELECTIONS (HBO Documentary Films 2020) (pre-2020-election television documentary film, starring Halderman, examining how hackers can influence and disrupt the U.S. election system).

deployed—were made over a month before he was retained by the Michigan Department of the Attorney General[27]—there was no pending litigation and he was not acting as an expert.[28] In short, Halderman has been involved in and has unique knowledge of several matters directly relevant to the Underlying Action.

In *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir. 1976), the Second Circuit held that the trial court did not abuse its discretion in allowing the government in its antitrust action against IBM to compel testimony from two individuals with considerable expertise in the computer industry. Specifically, the government wanted these witnesses "to explain the nature of their duties as computer systems consultants and especially to recount advice they gave to various users and potential users of computer systems." *Id.* at 813. Significantly, the government was not asking for an expert evaluation of their evidence in the IBM case but instead stated that the witness's testimony would be confined to events which occurred between 1960–72. *Id.* As Judge Gurfein noted in his concurrence, these experts differed from the ordinary expert who has no personal relationship with the subject matter of the litigation. Indeed, they were intimately involved as observers of and participants in the growth and development of the electronic data processing market. *Id.* at 823.

---

[27] **Ex. 1-O**, MichiganSOS.000136–45 (contract executed by Halderman on December 14, 2020 for expert-witness services rendered to the Michigan Department of Attorney General).

[28] **Ex. 1-D**, @jhalderm, X, *supra* note 20.

Finally, even the author of the majority opinion indicated that a substantial part of the testimony sought by the government could only be given by these particular experts, and that these particular experts possessed unique factual information unavailable from any other source. *Id.* at 821.

Here, as in the *Kaufman* case, the OAN Defendants are not seeking work product or otherwise privileged material, nor are they seeking to elicit new expert opinions not already disclosed in reports, public filings, or testimony.  Rather, OAN Defendants are seeking deposition testimony regarding Halderman's knowledge of <u>facts</u> underlying his conclusions about Dominion's voting systems—knowledge Halderman has gained from personal experience. "We can find no justification for a federal rule that would wholly exempt experts from placing before a tribunal factual knowledge relating to the case in hand, opinions already formulated, or, even, in the rare case where a party may seek this and the witness feels able to answer, a freshly formed opinion, simply because they have become expert in a particular calling." *Kaufman*, 539 F.2d at 821. Thus, Halderman's knowledge is unique and highly relevant to the OAN Defendants' defense of the claims brought by Dominion involving the potential vulnerabilities in Dominion's voting system technology used in the 2020 Election.

Moreover, if Halderman were not included in a broadcast that Dominion alleges is defamatory, his testimony as a fact witness is still relevant to OAN's

substantial truth defense[29] in addition to bearing on the alleged falsity of the complained-of statements and broadcasts—an essential element of Dominion's claim. Dominion's complaint cites Halderman in a letter he co-signed with other election security experts that, Dominion claims, serves to "debunk[]" OAN's alleged statements and broadcasts. Complaint at ¶ 319 (PageID.300). And Halderman acknowledges signing the letter in his declaration. *See* ECF No. 1-2, at ¶ 7 (PageID.402-403). In addition, Halderman's testimony is also relevant to damages—with Dominion claiming $1,750,000,000 in damages against each defendant in part on the theory that their alleged statements caused state and local governments to terminate or non-renew contracts with Dominion or its vendors[30]—insofar as Dominion lost business as a result of the vulnerabilities Halderman discovered instead of OAN's reporting.

---

[29] Indeed, Halderman is referenced several times in the OAN Defendants' allegations in support of their affirmative and other defenses to Dominion's complaint. As their allegations state, on June 3, 2022, the U.S. Cybersecurity & Infrastructure Security Agency issued an advisory about vulnerabilities affecting the Dominion-associated ImageCast X system that was based on Halderman's work. Defendants' Answer to the Complaint at ¶ 35, No. 1:21-cv-02130-CJN (Jan. 20, 2023), ECF No. 59. Further, on October 14, 2022, Halderman and others published a report on a privacy flaw that affects the Dominion-associated ImageCast Precinct and ImageCast Evolution ballot scanner used in parts of 21 states. *Id*. at ¶ 36. Finally, on October 19, 2022, Halderman participated in a webinar at Elon University in which he acknowledged that it was reasonable for conservatives to question the election results immediately following the election. *Id*. at ¶ 37.

[30] *Id.* at ¶ 288.

**B.      Halderman's confidentiality obligations do not prevent his deposition.**

Halderman asserts that his compliance with protective orders entered by other courts excuses his obligation to provide deposition testimony in the Underlying Action. Significantly, Halderman's Motion cites no case law in support of his assertion. *See* ECF No. 1, at 27–32 (PageID.27-32). Moreover, Halderman makes no effort to grapple with the facts that he routinely injects himself voluntarily into public discourse concerning relevant issues, including sharing "facts" about his work publicly despite the allegedly broad scope of his confidentiality obligations.[31] Indeed, Halderman alleged confidentiality obligations in *Curling* and other cases have not stopped him from entering the public fray at every turn to speak to the vulnerabilities in electronic voting software (including Dominion's) through public

---

[31] *See, e.g.*, Halderman, *Publications*, *supra* note 26; **Ex. 1-C**, Halderman, *Security Analysis of the Dominion ImageCast X*, *supra* note 11; **Ex. 1-A**, Friess, *supra* note 23; KILL CHAIN, *supra* note 26; **Ex. 1-B**, Lawlor, *supra* note 23; Halderman, *I Hacked an Election. So Can the Russians*, *supra* note 3.

testimony,[32] interviews,[33] tweets,[34] blogs,[35] and other public statements,[36] as well as a documentary film.[37]

In any event, Halderman's objection fails for three reasons. <u>First</u>, "[t]he weight of federal authority and the better decided cases hold that a non-party, involuntary expert or non-fact witness does not have a right to decline to give testimony or produce documents *even though the witness will be compelled to divulge matters which are normally considered confidential, sensitive, proprietary or which pertain to his expertise or special skill*." *Anker v. G.D. Searle & Co.*, 126 F.R.D. 515, 520 (M.D.N.C. 1989) (emphasis added) (citing *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.*, 813 F.2d 1207 (Fed. Cir. 1987); *Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017 (Fed. Cir. 1986); *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984); *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir. 1976)).

---

[32] Decl. of J. Alex Halderman, *Curling v. Raffensperger*, No. 17-cv-2989-AT, ECF 1304-3 (N.D. Ga. Feb. 3, 2022).

[33] *See, e.g.*, **Ex. 1-A**, Friess, *supra* note 23; **Ex. 1-B**, Lawlor, *supra* note 23.

[34] *See, e.g.*, **Ex. 1-D**, @jhalderm, *supra* note 20.

[35] *See, e.g.*, **Ex. 1-C**, Halderman, *Security Analysis of the Dominion ImageCast X*, *supra* note 11.

[36] *See, e.g.*, Halderman, *I Hacked an Election. So Can the Russians*, *supra* note 3; Halderman, *Publications*, *supra* note 26.

[37] KILL CHAIN, *supra* note 26.

In a case in which a corporate defendant and its vice-president opposed the enforcement of a government subpoena on the ground that the documents sought were of a confidential and sensitive nature, the Southern District of New York determined that because defendants' claims of confidentiality were of a blanket and generalized nature, the defendants had failed to establish sufficient grounds to quash the subpoena. *United States v. IBM Corp.*, 81 F.R.D. 628, 630 (S.D.N.Y. 1979).

Second, Halderman's motion is premature. The Court cannot assess the propriety of this objection without a particular line of deposition questions before it. Halderman thus misapprehends the proper procedure—Halderman's deposition should proceed, and Halderman's counsel can note objections on the record; or, if and when appropriate, counsel may instruct Halderman not to answer a given question on the basis of a court-ordered limitation that would prevent him from so doing. Fed. R. Civ. P. 30(c)(2). Moreover, Halderman's suggestion that the OAN Defendants "approach the *Curling* court, the Michigan court, or the Colorado courts ahead of time" of the deposition is infeasible and inconsistent with the federal rules. Under Rule 45, a respondent's request for relief from a subpoena that "requires disclosure of privileged or other protected matter" is directed to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A)(iii).

Third, and perhaps most importantly, the court in the Underlying Action has entered a fulsome protective order sufficient to preserve Halderman's interest in

21

confidentiality. Halderman's deposition testimony may be designated confidential under the terms of the issuing court's protective order. *See* Amended Protective Order Governing the Production and Exchange of Confidential Information at ¶ 5(b), No. 1:21-cv-02130-CJN (Mar. 21, 2024), ECF No. 163. And nothing in Halderman's motion explains how the issuing court's valid and subsisting protective order might be deficient.

### C.    Halderman's Rule 45 request for attorney's fees and expenses should be denied.

Under Federal Rule of Civil Procedure 45(d)(1), an attorney or party invoking the Court's subpoena power has a duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and courts are required to enforce that duty through the imposition of "an appropriate sanction," including attorney's fees. However, Rule 45(d)(1) does not mandate attorney's fees; an award of fees is within the court's discretion and must be "narrowly-tailored to situations involving the misuse of a court's subpoena power." *Muslim Cmty. Assoc. of Ann Arbor v. Pittsfield Twp.*, No. 12-10803, 2015 WL 5132583, at *2–3 (E.D. Mich. Apr. 24, 2015); *see also Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 22 (D.D.C. 2015). It is a highly case specific inquiry and entails an exercise of judicial discretion. *Lyon v. My Pillow, Inc.*, No. 1:22-cv-1191, 2023 WL 2347489, at *3 (W.D. Mich. Mar. 3, 2023). As previously substantiated, Halderman possesses

critical and unique factual knowledge relevant to several matters involving Dominion. Thus, the OAN Defendants' subpoena is not unreasonable.

On the contrary, Halderman's actions in responding to the subpoena are unreasonable and improper. Halderman's counsel strung the OAN Defendants along for weeks, without indication or suggestion that Halderman would ultimately seek to quash the subpoena in its entirety (**Ex. 1**, Edwards Decl. at ¶¶ 3–6) even conferring with the OAN Defendants' counsel on the date and location of the subpoena. *See* ECF No. 1-1, at 76–77 (PageID.76-77). Ultimately, however, Halderman abruptly filed the instant motion to quash less than 3 weeks before the fact-discovery cutoff.

In any case, Herring should not be subject to mandatory sanctions. "The mere fact . . . that a disputed subpoena is ultimately deemed unwarranted does not, standing alone, demand the imposition of sanctions." *Alberts v. HCA, Inc.*, 405 B.R. 498, 502–03 (D.D.C. 2009) (citing *Scott v. Burress*, 2008 WL 585072, at *6–7 (E.D. Mich. Mar. 3, 2008) (holding that there was no indication that the subpoena had been issued in bad faith")); *Alexander v. FBI,* 186 F.R.D. 188, 196–97 (D.D.C. 1999) (holding sanctions unwarranted where "plaintiffs' subpoenaing of this subject matter was not overbroad or improper" and motion to compel was not "in bad faith").

The attached declarations from the OAN Defendants' counsel confirm that they took reasonable steps to avoid imposing an undue burden or expense on

Halderman. **Ex. 1**, Edwards Decl. ¶¶ 4–6. *See Rendon Grp., Inc. v. Rigsby,* 10–mc–164, 2010 WL 4627647, at *1 (D.D.C. Nov. 8, 2010); *Alexander*, 186 F.R.D. at 196.

Because Halderman has failed to produce evidence that the OAN Defendants acted in bad faith or that the subpoena was not overbroad or improper, the Court should decline Halderman's request for attorney's fees and expenses. *See Alexander*, 186 F.R.D. at 196.

### D.     Halderman's proposed modifications of the subpoena are meritless.

Halderman's motion requests, in the alternative to quashing the subpoena, that the Court modify the subpoena in five ways (or issue equivalent relief via protective order). ECF No. 1, at 41–45 (PageID.41-45). Halderman's first proposed restriction—barring any questions "concerning his work related to the *Curling* litigation"—is inappropriate for the reasons OAN Defendants identified above: they seek to elicit testimony concerning Halderman's publicly available statements. Second, as also explained above, Halderman's insistence that the OAN Defendants approach the *Curling*, Michigan court, or Colorado courts ahead of time ignores the existence of the Underlying Action's fulsome protective order and misapprehends the compliance court's role in resolving issues concerning "disclosure of privileged or other protected matter." Fed. R. Civ. P. 45(d)(3)(A)(iii). Halderman's third proposed restriction fails because it cites no authority in support of barring a party from attending a deposition subject to the terms of a confidentiality and protective

order. Fourth, OAN Defendants have already offered to pay Halderman's standard and reasonable rate for his time spent testifying. Regarding Halderman's fifth and final proposed restriction, the OAN Defendants submit that the timing of the deposition is best left to the Court's discretion, but they respectfully request that it order Halderman's deposition within 14 days of the Court's order.

## IV. CONCLUSION

For the reasons stated above, the Court should overrule Halderman's objections, deny the Motion, and order Halderman's compliance with the OAN Defendants' Rule 45 deposition subpoena.

By: */s/ Jennifer A. Dukarski*

**BUTZEL LONG, P.C.**
Jennifer A. Dukarski
Michigan Bar No. P74257
101 N. Main Street, Suite 200
Ann Arbor, MI 48104
Tel: (734) 213-3427
dukarski@butzel.com

**JACKSON WALKER L.L.P.**
Charles L. Babcock (application forthcoming)
Texas Bar No. 01479500
John K. Edwards
Texas Bar No. 24002040
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
jedwards@jw.com

*Counsel for OAN Defendants*

25

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of October 2024, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system, which I

understand to have served counsel for the parties.

 */s/ Jennifer A. Dukarski*
Jennifer A. Dukarski

101489901