# EXHIBIT 1-O

CONTRACT BETWEEN
THE DEPARTMENT OF ATTORNEY GENERAL
AND
J. Alex Halderman

    The Michigan Department of Attorney General (Department) and J. Alex Halderman, (Contractor), agree that Contractor will provide the following expert witness services in the matter of *Bailey v Antrim Co & Benson*, Antrim Circuit Court No. 20-009238-CZ, and other related matters as assigned by the Attorney General or his designee under the following terms and conditions:

1. **Issuing Office**

    This Contract is issued by the Department and is the only State office authorized to change the terms and conditions of this Contract.

2. **Description of Services**

    Contractor shall provide expert witness service in the area of computer science750.

3. **Term of Contract**

    This Contract covers services rendered during the period of December 14, 2020 through December 14, 2021. This Contract may be extended only by the written agreement of the parties.

4. **Compensation for Services Provided**

    Payment for services rendered is as follows:

    **$750 per hour**

    Contractor will not be compensated for travel time expended in the performance of the services covered by this Contract.

    Contractor understands that an initial budget ceiling of $15,000 (fifteen thousand dollars) has been established to cover all services and expenses performed or incurred in the performance of this Contract and that the total of all payments shall not exceed the budget ceiling. Due to the nature of the services, the difficulty in estimating actual costs and the demand for services, the initial term budget ceiling may be increased only if

1

prior written approval is given by the Department. An increase of the budget ceiling shall not affect the established hourly rates.

The cost of secretarial and clerical employees utilized by Contractor is part of Contractor's agreed upon fee and such services will not be separately billed to the Department. No other additional charges shall be allowed except by prior written permission from the Department.

5. **Travel Expenses**

The Contractor will be reimbursed for reasonable and necessary meals, lodging, telephone and travel expenses in accordance with the State of Michigan travel and other expense requirements, which can be found at http://www.michigan.gov/dmb/0,1607,7-150-9141_13132---,00.html. The Contractor acknowledges that he has reviewed the State travel rates posted on the website. The Department will not reimburse expenses exceeding State rates.

The Contractor must provide original receipts for all permissible reimbursement requests.

6. **Billings**

Contractor will bill the Department on a services rendered basis itemizing the services and expenses provided or incurred. The billing format must indicate the nature of the work performed, specific dates, time devoted, individual performing the work, and the billing amount. Additional information shall be provided upon request by the Department. Expenses shall be specifically and individually identified at the end of the bill, resulting in a total cumulative statement with attached original receipts. All undisputed invoices shall be paid on a current basis, within 30 days after receipt, unless the parties agree upon another arrangement. These documents and any supporting documents shall be maintained by the Contractor for three (3) years after the close of the Contract for audit purposes.

To receive payment, Contractor must register as a vendor and complete the electronic funds transfer process through the DTMB website at: http://www.michigan.gov/SIGMAVSS.

7. **Notices**

All communications, notices, and invoices concerning this Contract must be addressed to:

2

MichiganSOS.000137

For the Department:
Erik A. Grill, Assistant Attorney General
PO Box 30736
Lansing, Michigan, 48909
517.335.7659
grille@michigan.gov

For the Contractor:
J. Alex Halderman
2260 Hayward Street
Ann Arbor, Michigan, 48109
734.647.1806
jhalderm@eecs.umich.edu

8. **Time of the Essence**

Contractor agrees that appearance dates and court and administrative deadlines that have been or will be set in this case are of the essence. Failure of Contractor to comply with such appearance dates or schedules, unless due to an error or omission of the Department, will constitute a breach of this Contract.

Contractor agrees to make its best effort to schedule the delivery of services to permit the performance of all of the above described services within or below the budgeted amount.

9. **Termination**

Either party may terminate this contract upon 30 days written notice to the other party.

10. **Property and Publication Rights**

All property rights, including publication rights of interim, draft, and final reports, documents and machine-readable media produced by the Contractor in connection with the work under this Contract, shall vest in the State. The Contractor shall not publish any of the results of the work without the written permission of the Department. This Section survives the termination of this Contract.

11. **Disclosure of Information**

Contractor agrees that his reports and conclusions are confidential information of the State and that he will not disclose these conclusions, in

MichiganSOS.000138

whole or in part, to any unauthorized person without the prior written consent of the Department. This Section survives the termination of this Contract.

12. **Compliance with Department of Attorney General Policies**

Contractor agrees to be bound by the Department's Media Contact and Ethics policies (attached), as they exist at the time of the execution of this Contract and as they may be amended in the future. To the extent that the Media Contact or Ethics policies change during the course of the Contract Term, the Department will provide Contractor with copies of the revised policies.

13. **State Data**

a. **Ownership**. The Department's data (which includes client data) (collectively, State Data, which will be treated by Contractor as Confidential Information, described further in **Section 13** below) includes: (a) the Department's data collected, used, processed, stored, generated, shared, or exchanged for purposes of Contractor's services; (b) personally identifiable information (PII) collected, used, processed, stored, generated, shared, or exchanged for purposes of Contractor's services, including, without limitation, any information that identifies an individual, such as an individual's social security number or other government-issued identification number, date of birth, address, telephone number, biometric data, mother's maiden name, email address, credit card information, or an individual's name in combination with any other of the elements here listed; and, (c) personal health information (PHI) collected, used, processed, stored, generated, shared, or exchanged for purposes of Contractor's services, which is defined under the Health Insurance Portability and Accountability Act (HIPAA) and its related rules and regulations. State Data is and will remain the sole and exclusive property of the State of Michigan and all right, title, and interest in the same is reserved by the State. This Section survives the termination of this Contract.

b. **Contractor Use of State Data**. Contractor is provided a limited license to State Data for the sole and exclusive purpose of providing the services, including a license to collect, process, store, generate, and display State Data only to the extent necessary in the provision of the services. Contractor must: (a) keep and maintain State Data in strict confidence, using such degree of care as is appropriate and consistent with its obligations as further described in this Contract and applicable law to avoid unauthorized access, use, disclosure, or loss; (b) use and disclose State Data solely and exclusively for the purpose of providing the services, such use and

4

disclosure being in accordance with this Contract and applicable law; and (c) not use, sell, rent, transfer, distribute, or otherwise disclose or make available State Data for Contractor's own purposes or for the benefit of anyone other than the State without the Department's prior written consent. This Section survives the termination of this Contract.

   c. **Discovery**.  Contractor shall immediately notify the Department upon receipt of any requests which in any way might reasonably require access to State Data.  Contractor shall notify the Department by the fastest means available and also in writing.  In no event shall Contractor provide such notification more than 24 hours after Contractor receives the request.  Contractor shall not respond to document requests, subpoenas, service of process, Freedom of Information Act (FOIA) requests, or other legal requests related to State Data without first notifying the Department and providing the Department sufficient opportunity to review Contractor's proposed responses and file objections or a motion (if deemed appropriate by the Department).  Valid discovery requests or subpoenas by opposing counsel in *Bailey v Antrim Co & Benson*, Antrim County Circuit Court No. 20-009238-CZ that legally require the production of State Data may be exempted from the confidentiality obligations of Section 13 below, but only upon following the notification procedures in this Section.

   d. **Loss of Data**.  In the event of any act, error or omission, negligence, misconduct, or breach that compromises or is suspected to compromise the security, confidentiality, or integrity of State Data or the physical, technical, administrative, or organizational safeguards put in place by Contractor that relate to the protection of the security, confidentiality, or integrity of State Data, Contractor must, as applicable: (a) notify the Department as soon as practicable but no later than 24 hours of becoming aware of such occurrence; (b) cooperate with the Department in investigating the occurrence, including making available all relevant records, logs, files, data reporting, and other materials required to comply with applicable law or as otherwise required by the Department; (c) in the case of PII or PHI, at the Department's sole election, (i) notify the affected individuals who comprise the PII or PHI as soon as practicable but no later than is required to comply with applicable law, or, in the absence of any legally required notification period, within 5 calendar days of the occurrence; or (ii) reimburse the State for any costs in notifying the affected individuals; (d) in the case of PII, provide third-party credit and identity monitoring services to each of the affected individuals who comprise the PII for the period required to comply with applicable law, or, in the absence of any legally required monitoring services, for no less than 24 months following the date of notification to such individuals; (e) perform or take any other actions required to comply with applicable law as a result of the occurrence; (f) indemnify, defend, and hold

5

MichiganSOS.000140

harmless the State for any and all claims, including reasonable attorneys' fees, costs, and expenses incidental thereto, which may be suffered by, accrued against, charged to, or recoverable from the State in connection with the occurrence; (g) be responsible for recreating lost State Data in the manner and on the schedule set by the Department without charge to the Department; and, (h) provide to the Department a detailed plan within 10 calendar days of the occurrence describing the measures Contractor will undertake to prevent a future occurrence.  Notification to affected individuals, as described above, must comply with applicable law, be written in plain language, and contain, at a minimum: name and contact information of Contractor's representative; a description of the nature of the loss; a list of the types of data involved; the known or approximate date of the loss; how such loss may affect the affected individual; what steps Contractor has taken to protect the affected individual; what steps the affected individual can take to protect himself or herself; contact information for major credit card reporting agencies; and, information regarding the credit and identity monitoring services to be provided by Contractor.  This Section survives the termination of this Contract.

**14.     Non-Disclosure of Confidential Information**

The parties acknowledge that each party may be exposed to or acquire communication or data of the other party that is confidential, privileged communication not intended to be disclosed to third parties.  The provisions of this Section survive the termination of this Contract.

a.     **Meaning of Confidential Information**.  For the purposes of this Contract, "Confidential Information" means all information and documentation of a party that: (a) has been marked "confidential" or with words of similar meaning, at the time of disclosure by such party; (b) if disclosed orally or not marked "confidential" or with words of similar meaning, was subsequently summarized in writing by the disclosing party and marked "confidential" or with words of similar meaning; and, (c) should reasonably be recognized as confidential information of the disclosing party.  The term "Confidential Information" does not include any information or documentation that was or is: (a) in the possession of the Department and subject to disclosure under FOIA; (b) already in the possession of the receiving party without an obligation of confidentiality; (c) developed independently by the receiving party, as demonstrated by the receiving party, without violating the disclosing party's proprietary rights; (d) obtained from a source other than the disclosing party without an obligation of confidentiality; or, (e) publicly available when received, or thereafter became publicly available (other than through any unauthorized disclosure by,

6

through, or on behalf of, the receiving party). For purposes of this Contract, State Data is deemed to be Confidential Information.

      b. **Obligation of Confidentiality**. The parties agree to hold all Confidential Information in strict confidence and not to copy, reproduce, sell, transfer, or otherwise dispose of, give or disclose such Confidential Information to third parties other than employees, agents, or subcontractors of a party who have a need to know in connection with this Contract or to use such Confidential Information for any purposes whatsoever other than the performance of this Contract. The parties agree to advise and require their respective employees, agents, and subcontractors of their obligations to keep all Confidential Information confidential. Disclosure to a subcontractor is permissible where: (a) Contractor obtains written permission from the Department in advance of the disclosure; (b) the disclosure is necessary or otherwise naturally occurs in connection with work that is within the subcontractor's responsibilities; and (c) Contractor obligates the subcontractor in a written contract to maintain the Department's Confidential Information in confidence. At the Department's request, any employee of Contractor or any subcontractor may be required to execute a separate agreement to be bound by the provisions of this Section.

      c. **Cooperation to Prevent Disclosure of Confidential Information**. Each party must use its best efforts to assist the other party in identifying and preventing any unauthorized use or disclosure of any Confidential Information. Without limiting the foregoing, each party must advise the other party immediately in the event either party learns or has reason to believe that any person who has had access to Confidential Information has violated or intends to violate the terms of this Contract and each party will cooperate with the other party in seeking injunctive or other equitable relief against any such person.

      d. **Remedies for Breach of Obligation of Confidentiality**. Each party acknowledges that breach of its obligation of confidentiality may give rise to irreparable injury to the other party, which damage may be inadequately compensable in the form of monetary damages. Accordingly, a party may seek and obtain injunctive relief against the breach or threatened breach of the foregoing undertakings, in addition to any other legal remedies which may be available, to include, in the case of the Department, at the sole election of the Department, the immediate termination, without liability to the Department, of this Contract corresponding to the breach or threatened breach.

      e. **Surrender of Confidential Information upon Termination**. Upon termination of this Contract, in whole or in part, each

7

MichiganSOS.000142

party must, within 5 calendar days from the date of termination, return to the other party any and all Confidential Information received from the other party, or created or received by a party on behalf of the other party, which are in such party's possession, custody, or control; provided, however, that Contractor must return State Data to the Department following the timeframe and procedure described further in this Contract.  If Contractor or the Department determine that the return of any Confidential Information is not feasible, such party must destroy the Confidential Information and must certify the same in writing within 5 calendar days from the date of termination to the other party.  However, the Department's legal ability to destroy Contractor data may be restricted by its retention and disposal schedule, in which case Contractor's Confidential Information will be destroyed after the retention period expires.

15. **Data Privacy and Information Security**

  a. **Undertaking by Contractor**.  Without limiting Contractor's obligation of confidentiality as further described, Contractor is responsible for establishing and maintaining a data privacy and information security program, including physical, technical, administrative, and organizational safeguards, that is designed to: (a) ensure the security and confidentiality of the State Data; (b) protect against any anticipated threats or hazards to the security or integrity of the State Data; (c) protect against unauthorized disclosure, access to, or use of the State Data; (d) ensure the proper disposal of State Data; and (e) ensure that all employees, agents, and subcontractors of Contractor, if any, comply with all of the foregoing.  In no case will the safeguards of Contractor's data privacy and information security program be less stringent than the safeguards used by the Department, and Contractor must at all times comply with all applicable State IT policies and standards, which are available to Contractor upon request.

  b. **Right of Audit**.  Without limiting any other audit rights of the Department, the Department has the right to review Contractor's data privacy and information security program from time to time during the term of this Contract.  Upon request by the Department, Contractor agrees to complete, within 45 calendar days of receipt, an audit questionnaire provided by the Department regarding Contractor's data privacy and information security program.

  c. **Audit Findings**.  Contractor must implement any required safeguards as identified by the Department or by any audit of Contractor's data privacy and information security program.

MichiganSOS.000143

      d.    **Department's Right to Termination for Deficiencies**. The Department reserves the right, at its sole election, to immediately terminate this Contract without limitation and without liability if the State determines that Contractor fails or has failed to meet its obligations under this Section.

**16.    Disclaimer of Damages and Limitation of Liability.**

The Department hereby disclaims all consequential, incidental, indirect, or special damages, regardless of the nature of the action. Under no circumstances will the Department be liable, either individually or in the aggregate, for any amounts, in whatever form, in excess of the total aggregate value set forth in the Contract.

**17.    <u>Non-Discrimination</u>**

In the performance of this Contract, Contractor will not discriminate against any employee or applicant for employment, with respect to their hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment, because of race, color, religion, national origin, ancestry, age, sex, height, weight, marital status, physical or mental disability unrelated to the individual's ability to perform the duties of the particular job or position. This covenant is required pursuant to the Elliott-Larsen Civil Rights Act, 1976 PA 453, MCL 37.2101, *et seq.*, and the Persons with Disabilities Civil Rights Act, 1976 PA 220, MCL 37.1101, *et seq.*, and any breach thereof may be regarded as a material breach of the Contract. In connection with the performance of services under this Contract, the Contractor agrees to comply with the Federal Civil Rights Act of 1964, 42 USC §2000d.

**18.    <u>Unfair Labor Practices</u>**

The State shall not award a contract or subcontract to any employer or any subcontractor, manufacturer or supplier of the employer, whose name appears in the current register compiled by the Michigan Department of Licensing and Regulatory Affairs. The State may void this Contract, if after the award of the Contract, the name of the Contractor appears in the register. 1980 PA 278, MCL 423.321, *et seq.*

**19.    <u>Independent Contractor</u>**

The relationship of Contractor to the Department in this Contract is that of an independent contractor. No liability or benefits, such as workers compensation rights or liabilities, insurance rights or liabilities, or any other provisions or liabilities, arising out of or related to a contract for hire or

MichiganSOS.000144

employer/employee relationship, shall arise, accrue or be implied to either party or either party's agent, subcontractor or employee as a result of the performance of this Contract. The Contractor will be solely and entirely responsible for his acts and the acts of his agents and employees during the performance of this Contract. Notwithstanding the above, the relationship is subject to the requirements of the attorney-client privilege.

### 20. Strategic Partners

Contractor warrants that Contractor is neither currently engaged in nor will engage in the boycott of a person based in or doing business with a strategic partner as described in 22 USC 8601 to 8606.

### 21. Governing Law and Jurisdiction

This Contract shall be subject to and constructed according to the laws of the State of Michigan, and no action shall be commenced against the Department or the Attorney General, his designee, agents or employees for any matter whatsoever arising out of the Contract, in any courts other than the Michigan Court of Claims.

### 22. Entire Agreement

This Contract, including attachments, represents the entire agreement between the parties and supersedes all proposals or other prior agreements, oral or written, and all other communications between the parties or Department of State relating to the Department retaining the Contractor's services.

### 23. Signature Authority

The Contractor listed in Section 2 above is authorized to sign for the Contractor.

Dated: Dec. 14 2020    _____
                        J. Alex Halderman
                        Contractor

Dated: 12/15/2020      Heather S. Meingast
                        Attorney General, or Designee

10

MichiganSOS.000145