# EXHIBIT 1

3/29/2023                                                                    FIRM #8093

STATE OF MICHIGAN
IN THE TRIAL COURT FOR THE COUNTY OF WASHTENAW

FOX NEWS NETWORK, LLC,

       Petitioner,

                                     Case No. 18-000100-ZZ
v.                                          Hon. Carol Kuhnke

J. ALEX HALDERMAN,

       Respondent.
_____/

MOTION HEARING
BEFORE THE HONORABLE CAROL KUHNKE
Wednesday, March 29, 2023 - 2:36 p.m.

APPEARANCES:

For the Petitioner:          JAYE QUADROZZI (P71646)
                                Varnum LLP
                                480 Pierce Street
                                Suite 300
                                Birmingham, Michigan 48009
                                (248) 567-7800
                                jcquadrozzi@varnumlaw.com

For the Respondent:          MARK S. DEMOREST (P35912)
                                Demorest Law Firm PLLC
                                322 West Lincoln Ave
                                Royal Oak, Michigan 48067
                                (248) 723-5500
                                mark@demolaw.com

Transcribed by:              LINDA M. MORELLI, CER-3349
                                Tri-County Court Reporters, Inc. 8093
                                depos@tricountyreporters.com

3/29/2023                                                    FIRM #8093

1                          TABLE OF CONTENTS

2       WITNESSES:                                          PAGE

3         (None.)

4

5       EXHIBITS

6         (None.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3/29/2023                                                        FIRM #8093

```
 1          Ann Arbor, Michigan

 2          Wednesday, March 29, 2023 - 2:36 p.m.

 3                      -    -    -

 4          THE CLERK:  Fox News Network, LLC versus Alex

 5   Halderman, 18-100-ZZ.

 6          THE COURT:  Appearances?

 7          MR. DEMOREST:  Good afternoon, Your Honor.  Mark

 8   Demorest for Dr. Halderman.  I have with me Dr. Halderman,

 9   as well as Halsey Knapp, who's from Krevolin and Horst in

10   Atlanta, and is counsel in the Curling litigation.

11          MS. QUADROZZI:  Good afternoon, Your Honor.

12   Jaye Quadrozzi, on behalf of Fox News.  I have with me

13   Paul Salvaty.  He is with the law firm of Winston and

14   Strawn, and he is representing Fox News in the Delaware

15   action.

16          THE COURT:  All right.  I have, essentially, a

17   renewed motion to quash the out-of-state subpoena.  Go

18   ahead.

19          MR. DEMOREST:  Yes, Your Honor.  I'm going to

20   focus on responding to the arguments raised by Fox News in

21   its response to the motion to quash.

22          The service issue was resolved.  After the last

23   hearing, we agreed to accept service, but the question is

24   whether the deposition should proceed.  We believe that

25   the Court should quash the subpoena because it's really
```

3/29/2023                                                        FIRM #8093

```
 1   trying to compel Dr. Halderman to give involuntary expert
 2   testimony.  Fox News argues that one can be both a fact
 3   and an expert witness, and while that general proposition
 4   is true, it doesn't really apply to the facts of this
 5   case.
 6          The classic example of someone who's both a fact
 7   and potentially an expert witness is a treating physician.
 8   You know, the treating physician could be called as a fact
 9   witness to testify about the patient's condition, the
10   patient's symptoms, what treatment was given, and what the
11   outcome was, but if there's expert testimony, that goes
12   beyond fact witness.
13          In this case, everything that they want to ask
14   Dr. Halderman about is because he's an expert on election
15   security, and let me take an example.  About -- they've
16   said that they're not going to ask about the Curling case,
17   and that certainly resolves one issue, although I suspect
18   that there may be some issues, if there is a deposition,
19   about what questions are permitted or not.  But if we take
20   the Antrim County situation as an example, they claim that
21   Dr. Halderman is a fact witness as to what happened in
22   Antrim County regarding the 2020 election, but he was not
23   present in Antrim County when votes were cast, when
24   ballots were counted.  None of the events of the 2020
25   election was he a witness to.  He only has any information
```

3/29/2023                                                    FIRM #8093

```
 1    about the events in Antrim County because he was hired by

 2    the State of Michigan as an expert witness to conduct an

 3    investigation and prepare a report.  So his only knowledge

 4    is as an expert.  It's not accurate to try to label him as

 5    a fact witness and then try to get expert testimony from

 6    him.

 7              In addition to that, Your Honor, we need to

 8    consider the timing of these events.  We've looked at the

 9    Dominion versus Fox News complaint that was attached by

10    Fox News, which alleges defamation.  The last alleged

11    defamatory statement that's discussed in the complaint

12    occurred on January 26, 2021.  Dr. Halderman's expert

13    report concerning Antrim County wasn't issued until March

14    26, 2021, two months later.  So the, you know, the

15    existence and the contents of his reports could not have

16    been known to anyone at Fox News on or before January 26,

17    2021.

18              In addition to that, Your Honor, there's no need

19    to -- and no justification to compel Dr. Halderman to give

20    involuntary expert testimony in this case.  Both Fox News

21    and Dominion Voting Systems have retained and have filed

22    with the Delaware court disclosures of experts on election

23    security.  Fox News has hired Dr. Dan Wallach, a professor

24    of computer science at Rice University.  Dominion has

25    hired Dr. Avi Rubin, a professor of computer science at
```

3/29/2023                                                        FIRM #8093

1    Johns Hopkins University.  So they have similar expertise

2    to Dr. Halderman.  They've each been retained by the

3    respective parties in that case.  There's no reason to

4    impose on Dr. Halderman to give testimony where he's not

5    been retained as an expert by either party.

6           If the Court is considering allowing any

7    deposition, I think there are a number of issues that

8    would need to be discussed about how the deposition would

9    be handled and what would be the procedure if objections

10   are raised.  There's a protective order in place from the

11   Curling case from the Federal Court in Georgia, and

12   contrary to the assertion made by Fox News, there is a

13   protective order regarding the Antrim County case.  I

14   spoke with the attorney general's office.  If there is a

15   deposition, they would want to attend and potentially

16   object to questions that would invade attorney-client

17   privilege or work-product protection regarding the State

18   of Michigan.

19          But I don't want to presume, Your Honor, or

20   suggest that the Court will allow the deposition.  So I

21   would prefer to, you know, first address -- or ask the

22   Court to address the issue about whether there will be a

23   deposition at all, and then we can go to the issue of, if

24   there is a deposition, how it would be conducted.

25          I'm happy to answer any questions, Your Honor.

3/29/2023                                                            FIRM #8093

```
 1              THE COURT:  I have -- I glanced at the report, I
 2    didn't pour through it, and at the time that I reviewed
 3    it, I wasn't thinking of the question that's come to me
 4    now, which is:  In the course of his investigation and
 5    preparing his report, did Dr. Halderman conduct interviews
 6    or otherwise come into possession of information that's no
 7    longer available or a process that can't be replicated by
 8    others?
 9              MR. DEMOREST:  Your Honor, I don't know the
10    answer to that question.  If you'd like Dr. Halderman to
11    address it, he can, but -- but I think we also would have
12    to be sensitive and would have to consult with the
13    attorney general's office about what -- you know, what is,
14    is or not allowed to be disclosed pursuant to a protective
15    order.  But I think Dr. Halderman could address whether
16    there's any information he has that wouldn't be in the
17    possession of others.
18              If you'd like Dr. Halderman --
19              THE COURT:  It was Exhibit --
20              MR. DEMOREST:  -- to address that, Your Honor.
21              THE COURT:  It's the Exhibit 3 that is the
22    report, isn't it?
23              MR. DEMOREST:  Yes.
24              I guess I would also raise the issue, Judge,
25    that if Dr. Halderman is not an expert witness, and he's
```

```
 1    presumably being called as a -- they've said they're only

 2    calling him as a fact witness, the rule that an expert

 3    witness cannot -- can rely on hearsay would not apply.  So

 4    any statements that anyone else made to Dr. Halderman, if

 5    he's a fact witness, you know, would be hearsay.  He

 6    couldn't testify to that at a trial.

 7              THE COURT:  Well, maybe yes, maybe no.  And in

 8    any event, that wouldn't be the end of the inquiry whether

 9    it's admissible through him at trial, but it might send

10    counsel in the direction of what they're looking for.

11              I'm pulling up the report, again, to see whether

12    the answers to my questions, at least with respect to the

13    nature of his investigation of who he talked to, is in the

14    report before I consider asking Dr. Halderman directly.

15              Exhibit 3 starts on Page 177 of the Odyssey

16    version.

17              All right.  If there's no objection, I would ask

18    Dr. Halderman this:  Is it possible for someone else to

19    replicate the work that he did -- or you did.  I'm talking

20    about you in the third person, sir, and I apologize.  Is

21    it possible for somebody else to replicate your work on

22    this?

23              DR. HALDERMAN:  Your Honor, thank you.  I

24    believe it's completely possible for someone to replicate

25    the work, given access to the -- the same data that --
```

3/29/2023                                                          FIRM #8093

```
 1    that underlies the report.

 2              THE COURT:  As I'm looking at the report again,

 3    it does appear that it's based on data and not interviews.

 4              DR. HALDERMAN:  That's correct.  That's correct.

 5    I probably had one or two brief conversations with an

 6    administrator in Antrim County to -- but they were really

 7    not the basis of this report.  They were just, perhaps,

 8    clarifying things that were in the data.

 9              THE COURT:  Okay.  Let me hear from the movant.

10              MS. QUADROZZI:  Your Honor, are you looking for

11    the response from Fox?

12              We are opposing the motion for the protective

13    order.

14              THE COURT:  Yes.

15              MS. QUADROZZI:  Your Honor, I want to make -- I

16    want to make two primary points, but I want to start here,

17    and that is that in the underlying defamation suit, Fox is

18    facing allegations that it never should have reported on

19    claims of election fraud because the claims weren't just

20    false, but they were obviously false.

21              What the Plaintiff, Dominion Voting Systems, is

22    saying is that, essentially, everyone knew that hacking an

23    election is factually impossible.  Dr. Halderman, however,

24    has been saying for years that hacking an election isn't a

25    remote possibility, but it poses a real and serious risk.
```

3/29/2023                                                          FIRM #8093

```
 1    And this is something that he has been saying before he
 2    was engaged as an expert in the Curling and before he
 3    conducted the Antrim County analysis that resulted in that
 4    public report.  So the information and his public
 5    commentary on cyber security issues and Dominion is what
 6    Fox is seeking here, nothing more.  And it is highly
 7    relevant to the trial defenses of Fox News.  And the
 8    hardships to Mr. Halderman are minimal considering the
 9    efforts that Fox is taking, as outlined in our moving
10    papers, to narrow the scope of the testimony that is being
11    sought.
12              I want to focus on two points.  The first is
13    that we're seeking permissible testimony from a fact
14    witness.  We are not seeking to depose Mr. Halderman about
15    his expert testimony in the Curling case, which is
16    protected by the protective order, and we are not
17    interested in seeking to go beyond the bounds of that.
18    We're not seeking information about that equipment or
19    those vulnerabilities in Georgia.  What we are seeking is
20    his pre-2019 public commentary, opinions, and reports that
21    talk about cyber security and voting machine
22    vulnerabilities, as well as his publicly published report
23    on Antrim County.  We understand that there may be issues
24    that he has not included in that public report, for
25    instance, reports that go to discussions that he may have
```

3/29/2023                                                    FIRM #8093

```
 1    had with the AG's office on his scope of engagement, and

 2    Fox is not going to attempt to elicit that information.

 3           The topics that Fox News is interested in are

 4    outlined on our papers at Page 8, and those pertain to

 5    public papers, articles, testimonies, and demonstrations,

 6    all of which make up his factual testimony.  The narrative

 7    around this vote flipping, which is the basis for Fox's

 8    defamation case -- excuse me -- for Dominion's defamation

 9    case did arise in part from events in Antrim County.  The

10    Antrim County report is slated as evidence.  It is on the

11    -- it is on the exhibit list and is intended to be

12    introduced in evidence in that Delaware trial, and its

13    contents are going to end up being debated by people who

14    did not write it.  The jury should hear from the testimony

15    from the author.  His -- he has a broad base of factual

16    knowledge, he acknowledges this in his affidavit that

17    pre-date his work in Curling, and Fox has a right to probe

18    that information just as it could with any other witness

19    with relevant knowledge subject to usual limits on

20    discovery.  The Michigan law makes this clear.

21           We cite for Your Honor the Micheli versus

22    Michigan Auto Case which provides that, to the extent an

23    expert witness acquired information as a factual witness

24    or as a result or consequence of his normal business

25    activities and duties, then the expert is treated as if
```

3/29/2023                                                                  FIRM #8093

```
 1    they were any other potential witness and the scope of
 2    discovery is only limited by the provisions of
 3    MCR 2.302(B)(1).  That is exactly the situation here.
 4              Based on his affidavit, there's no doubt that
 5    Dr. Halderman did acquire confidential information through
 6    his work as an expert in Curling.  But on the flip side,
 7    there's also no doubt that he has acquired information as
 8    a fact witness as a result of his normal business
 9    activities and duties as a researcher, an author, and a
10    speaker on issues of election and voting machine security
11    outside of the realm of Curling.  As a fact witness,
12    Dr. Halderman can only avoid the subpoena if it seeks
13    testimony outside the scope of discovery, and 2.302(B)(1)
14    provides that parties can get discovery regarding any
15    non-privileged matter that is relevant to a parties'
16    claims or defenses that's proportional to the needs of the
17    case.  And the Court Rule goes on to say that you weigh
18    relevance and you weigh the complexity and in the
19    importance of the stakes at issue.
20              And here, Fox clearly sees testimony that is
21    relevant to the party's claims or defenses.  The Delaware
22    lawsuit is about voting machine technology and the
23    implausibility of allegations related to voting machine
24    vulnerabilities and malfunctioning.  That is directly
25    within Dr. Halderman's knowledge of -- as a fact witness.
```

3/29/2023                                                      FIRM #8093

```
 1    His deposition testimony doesn't become any less relevant
 2    because there may be other cyber security professionals
 3    out there.
 4              Dr. Halderman is a unique fact witness here.  He
 5    investigated Antrim County's misreporting and assessed the
 6    causes of that which involved the use of Dominion Voting
 7    Systems.  In his public report, he examines not only the
 8    equipment at issue, but he identifies and writes about
 9    individuals and entities involved, some of whom Dominion
10    now identifies as live trial witnesses and intends to
11    bring them forward as witnesses in Delaware.  This bears
12    directly on Dominion's defamation allegations and Fox
13    News's defenses, and Dr. Halderman is the only one who can
14    explain -- the only witness who can explain the findings
15    of his report.
16              Merely pointing out to the jury his report isn't
17    enough.  Fox News has a right to defend himself -- defend
18    itself against Dominion's allegations that it improperly
19    reported on preposterous charges, and it has a right to do
20    so through competent witness testimony.  Dr. Halderman's
21    fact testimony is not only relevant, it is necessary.
22              The proportionality analysis also factors
23    disclosure.  On the burden's side, Dr. Halderman does
24    express what is a legitimate concern about violating his
25    obligations in the Curling litigation, but Fox News
```

3/29/2023                                                                     FIRM #8093

```
 1    proposed limitations.  That's why we were careful and we
 2    wanted to identify in detail for Your Honor what the
 3    deposition topics would be.  Those limitations should
 4    eliminate that concern of Dr. Halderman's.  There was no
 5    need for Fox to appear before the Curling court and there
 6    will be no need for mid-supervision by that court because
 7    the crafting of the topics, the factual information that
 8    we are intending to ask him is outside of that range.  If
 9    there is a dispute that arises, we can -- the parties can
10    request the supervision of the special master in Delaware.
11    It has one that has been very involved in discovery in
12    that case.  But apart from the confidentiality concerns of
13    Curling and then now is raised by my brother counsel in
14    Antrim County with the AG'S office, Dr. Halderman doesn't
15    have any other burdens or expenses that he identifies that
16    would be faced in connection with his testimony.
17            So that leaves, kind of, his remaining point,
18    which is that Fox News is out of time for this discovery,
19    based on where the case in Delaware is.  That isn't true.
20    Fox News has been trying to secure Dr. Halderman's
21    deposition testimony for months, we have the record on
22    that.  In any event, he is a third-party witness, and he
23    doesn't -- it is not his basis, it is not his standing to
24    complain about the timeliness of discovery.  If the
25    parties -- if Dominion wishes to oppose the proper
```

1    testimony, that is something that should be handled at the

2    Delaware court, as should the issue of the admissibility

3    of any --

4            MR. DEMOREST:  Your Honor --

5            MS. QUADROZZI:  -- as should the admissibility

6    of any of the testimony.  If, in fact, there are issues as

7    to whether the evidence adduced from Dr. Halderman is

8    admissible, that is something that is handled by the

9    Delaware trial court.  It's not a basis under Michigan law

10   to preclude the taking of his deposition.  In its narrowed

11   form, we think that the subpoena is neither unreasonable

12   nor oppressive and ask that the Court deny the motion to

13   quash and the request for fees.  In light of the upcoming

14   trial, we'd ask the Court to compel an appearance date in

15   14 days, but we are prepared to take the deposition during

16   trial if the Court is inclined to go with a 21-day length

17   of time, as requested in the alternative relief proposed

18   by Dr. Halderman.

19           MR. DEMOREST:  May I respond, Your Honor?

20           THE COURT:  You may.

21           MR. DEMOREST:  Okay.  So the core issue that

22   Ms. Quadrozzi identified is whether an election can be

23   hacked.  They want to dispose Dr. Halderman because he's

24   an expert on that subject.  They haven't identified any

25   fact of which he would be aware independent of his

3/29/2023                                                               FIRM #8093

```
 1     expertise in election security.  For example, they mention
 2     an opinion piece that he wrote, I believe, for the New
 3     York Times several years ago describing a particular
 4     machine.  It was not a Dominion machine.  It's not a
 5     machine that was in use in the 2020 election.  But the
 6     point is that the only reason they wanted to talk to him
 7     is because he is an expert, and they don't have a right to
 8     depose him as an expert when he's not been engaged.  There
 9     is simply no factual knowledge that Dr. Halderman has
10     independent of his expertise.  They tried to argue, well,
11     an expert may have factual knowledge that he gains in the
12     ordinary course of business, but you can't stand that on
13     its head and say, well, his normal job is to be an expert;
14     therefore, everything that he learns is a fact.  There
15     isn't any basis that they have -- that Fox News has
16     provided that would make him a fact witness to anything
17     other than, you know, the work he has done in analyzing
18     election security, doing investigations, writing about
19     that subject, speaking about that subject.  It's all his
20     work as an expert.  And there's nothing that he has that's
21     a fact, certainly nothing that he has a fact that they
22     can't get from someone else.  So the deposition of him, we
23     believe, is improper for that reason.  It's an involuntary
24     expert deposition, which is not permitted.
25                 THE COURT:  The last time this matter was before
```

3/29/2023                                                    FIRM #8093

```
 1    the Court, I questioned whether it was Michigan or
 2    Delaware that should consider whether Dr. Halderman could
 3    be compelled to testify.  And I'm satisfied now, pursuant
 4    to MCL 600.2201, 2206, 2203 that -- that it's Michigan law
 5    that applies, and it's Michigan that would and must
 6    determine whether Dr. Halderman can be compelled to
 7    testify.
 8              Dr. Halderman is desired by Fox News because,
 9    apparently, he's the very best expert on election security
10    and not because he has any factual information or
11    knowledge that would -- that Fox News can't otherwise get.
12              The reference to the overlap of fact witnesses
13    and expert witnesses is -- I agree with Mr. Demorest, is
14    -- comes up most commonly in the situation of a physician
15    examining a patient who also happens to be a plaintiff in
16    a personal injury suit, and there you have a doctor who
17    has personal knowledge when he testifies that he examined
18    the patient and found X, Y, and Z, and the doctor saw or
19    identified something that -- some symptom or
20    characteristic of the plaintiff and then the doctor does
21    have factual knowledge of the symptom or the
22    characteristic.  Or the doctor can testify that, the
23    patient told me X, Y, and Z, and there the doctor acquires
24    personal knowledge, personal information that is factual
25    and not in the nature of expert opinion.
```

3/29/2023                                                          FIRM #8093

```
 1              The next question is, when you're deposing this
 2    doctor, well, what does that mean to you in your
 3    professional experience, and then the doctor explains what
 4    it means, that the patient said, this is how the incident
 5    happened, or the doctor sees this sort of symptom or
 6    characteristic of the plaintiff and there's a way that
 7    that fits within a theory of the case or the defense.
 8              There's nothing similar about the situation
 9    here.  Dr. Halderman has studied election security, and as
10    I said, may be the best expert in expert security -- in
11    election security.  The fact that he has opinions and that
12    he's good at his job doesn't mean that anyone can call him
13    into court to testify.  He has the right to his own
14    opinions and to share them if he wants to and to not share
15    them if he doesn't want to.  The fact that he's written on
16    it publicly doesn't mean that he can be called -- can be
17    forced to be an expert.  And I haven't heard any other
18    argument that persuades me that Dr. Halderman can or
19    should be forced to sit for a deposition or to assist in
20    any way if he does not wish to do that, which, clearly, he
21    does not.
22              So the motion to quash -- and I apologize, I
23    referenced the movant and the respondent -- the movant is
24    Dr. Halderman in this case moving to quash the
25    out-of-state subpoena, and I will grant that motion.
```

3/29/2023                                                                FIRM #8093

1              MR. DEMOREST:  Thank you, Your Honor.  I'll

2       prepare an order.

3              MS. QUADROZZI:  Thank you, Your Honor.

4              DR. HALDERMAN:  Thank you.

5              (At 3:03 p.m., hearing concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Tri-County Court Reporters
248-608-9250

3/29/2023                                                    FIRM #8093

```
 1        STATE OF MICHIGAN    )

 2                             )SS

 3        COUNTY OF WAYNE      )

 4

 5                I certify that this transcript, consisting of

 6   twenty (20) pages, is a true, complete, and correct record of

 7   the proceedings held in this matter on  March 29, 2023.

 8

 9   Date:   December 16, 2024

10

11                        Linda M. Morelli, CER-3349

12                        County of Wayne, State of Michigan

13                        My Commission expires:  June 26, 2027

14

15

16

17

18

19

20

21

22

23

24

25
```