IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| J. ALEX HALDERMAN,<br><br>     Plaintiff,<br><br>v.<br><br>HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, CHARLES HERRING, ROBERT HERRING, SR., and CHANEL RION,<br><br>     Defendants. | Case No. 2:24-mc-51057-DML-DRG<br><br>Judge: David M. Lawson<br>Mag. Judge: David R. Grand |

## RESPONSE OPPOSING POST-JUDGMENT RULE 62.1 MOTION FOR INDICATIVE RULING BY DEFENDANTS

Plaintiff, J. Alex Halderman, by and through his attorneys, Demorest Law Firm, PLLC, relies on the attached Brief in Support as his Response Opposing Post-Judgment Rule 62.1 Motion for Indicative Ruling by Defendants.

Respectfully Submitted,

DEMOREST LAW FIRM, PLLC

By: _/s/ Mark S. Demorest_
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
mark@demolaw.com

Dated: February 26, 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J. ALEX HALDERMAN,

     Plaintiff,

v.

HERRING NETWORKS, INC., D/B/A
ONE AMERICA NEWS NETWORK,
CHARLES HERRING, ROBERT
HERRING, SR., and CHANEL RION,

     Defendants.

Case No. 2:24-mc-51057-DML-DRG

Judge: David M. Lawson
Mag. Judge: David R. Grand

**BRIEF IN SUPPORT OF**
**RESPONSE OPPOSING POST-JUDGMENT RULE 62.1**
**MOTION FOR INDICATIVE RULING BY DEFENDANTS**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................. 1

STANDARDS OF REVIEW ............................................................... 2

A.    OAN Defendants Have Not Timely Filed A Motion
      For Post-Judgment Relief, So There Is Nothing For
      The Court To Consider .......................................................... 5

B.    There is No New Material Evidence, Let Alone
      Contradictory Evidence.......................................................... 8

C.    There Is No Other Basis To Grant An Indicative Ruling
      Or Find A Substantial Question Exists ................................. 12

D.    OAN Defendants' Arguments For Reconsideration Fail, Again............ 14

CONCLUSION .................................................................................. 19

CERTIFICATE OF SERVICE........................................................... 20

Appendix to Certificate of Service.................................................... 21

# INDEX OF AUTHORITIES

**Page(s)**

## Cases

*Am. Civil Liberties Union of Ky. v. McCreary Cnty.*,
 607 F.3d 439, 444 (6th Cir. 2010)....................................................................5

*CME Racing Prods., Inc. v. BMF Wheels, Inc.*,
 No. 11-13744, 2014 WL 12659599, at *1 (E.D. Mich. Sept. 25, 2014).........6

*Dominguez v. Gulf Coast Mar. & Assocs.*,
 706 F.3d 1066, 1074 (5th Cir. 2010).............................................................3,5

*Gen. Motors, LLC v. FCA US, LLC*,
 44 F.4th 548, 563 (6th Cir. 2022)................................................................4,13

*Griggs v. Provident Consumer Discount Co.*,
 459 U.S. 56, 59 (1982) .................................................................................31

*Kaufman v. Edelstein*,
 539 F.2d 811 (2d Cir. 1976)...........................................................................15

*Miller v. William Beaumont Hosp.*,
 1212 F.4th 556, 557 (6th Cir. 2024)...............................................................15

*Perry v. Schwarzenegger*, 790 F.Supp.2d 1119 (N.D.Cal.2011),
*aff'd sub nom Perry v. Brown*, 671 F.3d 1052 (9th Cir.2012),
*cert. granted sub nom Hollingsworth v. Perry*, 133 S. Ct. 786 (2012).............7

*Pompy v. Moore*,
 No, 19-10334, 2024 WL 4997448, at *2-3 (E.D. Mich. Nov. 21, 2024)........6

*United States v. Ocampo*,
 No. 06-20172-01, 2013 WL 686922, at *1 (E.D. Mich. Feb. 26, 2013) ........6,7

*U.S. ex rel. Oakes v. Cinnaire*,
 No. 18-13540, 2020 WL 13505073, at *1 (E.D. Mich. Aug. 21, 2020).........5.6

**Rules**                                                                                        **Page(s)**

Fed.R.Civ.P. 58(d) ........................................................................... 6
Fed.R.Civ.P. 59 ............................................................................ 2,5,15
Fed.R.Civ.P. 59(e) .....................................................................1,4,6-8,15
Fed.R.Civ.P. 60 ............................................................................... 2,5
Fed.R.Civ.P. 60(b) ............................................................................. 6
Fed.R.Civ.P. 60(b)(2) ......................................................................... 6
Fed.R.Civ.P. 60(b)(6) ......................................................................... 6
Fed.R.Civ.P. 62.1 ....................................................................1-3,5-7,15
Fed.R.Civ.P. 62.1, Adv. Cmte. Note (2009) ................................... 3,4
Fed.R.Civ.P. 62.1(a) ......................................................................... 3,5
Fed.R.Civ.P. 62.1(a)(1) ...................................................................... 3
Fed.R.Civ.P. 62.1(a)(2) ............................................................... 2,3,19
Fed.R.Civ.P. 62.1(a)(3) ................................................................. 2,3,4
Fed.R.Civ.P. 62.1(b) ........................................................................... 4
Fed.R.Civ.P. 62.1(c) ........................................................................... 4


**Miscellaneous**

8 Wigmore, Evidence § 2192), 21 ..................................................... 15

Duke Okes, *Root Cause Analysis: The Core of Problem
Solving and Corrective Action* (2nd ed. 2019) at 18 ......................... 9

## **INTRODUCTION**

The Rule 62.1 Motion for Indicative Ruling by Defendants, ECF No. 32, PageID.1881 ("Motion") is nothing more than OAN Defendants' untimely motion for reconsideration of this Court's Order and Judgment quashing their testimonial subpoena to Dr. J. Alex Halderman. Claiming newly discovered evidence justifies their Motion, seeking in substance a Rule 59(e) order altering or amending this Court's judgment, OAN Defendants rely principally on a draft of Dr. Halderman's *Bailey v. Antrim County*, 510 Mich. 1100; 982 N.W.2d 175 (2022) expert report. They imply he was coerced into materially altering his written expert opinion over three days by the State of Michigan, effectively carrying water for Dominion Voting Systems.

Putting aside the question of whether the Motion is procedurally proper (it is not), Dr. Halderman did not alter his opinion at all, let alone for reasons Defendants already speculated about to this Court months ago. There is no new material evidence for this Court to consider, much less to justify the exceptional relief OAN now requests: advising the Sixth Circuit Court of Appeals, which now possesses sole jurisdiction of this action, that this Court has substantial reason to revisit its thinking about quashing the subpoena. But without material, outcome-changing new evidence, and nothing new to argue in the law, they raise no substantial question

under Rule 62.1(a)(3), let alone grounds for granting the equivalent of a Rule 59 or Rule 60 motion upon remand.

The remainder of the Motion is a retread of Defendants' prior arguments about why they should be able to dragoon Dr. Halderman into serving as their expert, at their option, at a price they name, and over his longstanding, justified resistance. They puff up their repeated arguments with shots and rejoinders at this Court's rejection of their flawed arguments and its holding that OAN Defendants are not entitled to force Dr. Halderman to serve as their involuntary expert.

Defendants have had their bite at the apple. The only justifications they offer to demand another bite are unsubstantiated. This Court should summarily deny the Motion pursuant to Rule 62.1(a)(2).

## STANDARDS OF REVIEW

Federal Rule of Civil Procedure 62.1 provides:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
> (1) defer considering the motion;
> (2) deny the motion; or
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.
> (b) Notice to the Court of Appeals. The movant must promptly notify the circuit clerk under Federal Rule of Appellate Procedure 12.1 if the district court states that it would grant the motion or that the motion raises a substantial issue.

> (c) Remand. The district court may decide the motion if the court of appeals remands for that purpose.

Fed. R. Civ. P. 62.1(a). The "timely motion made for relief" in paragraph (a) generally refers to post-judgment motions to alter, amend, or vacate judgments or to otherwise grant post-judgment relief. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 59 (1982) ("filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); *Dominguez v. Gulf Coast Mar. & Assocs.,* 706 F.3d 1066, 1074 (5th Cir. 2010) ("Although an effective notice of appeal strips district courts of jurisdiction to grant a [Rule] 60(b) motion, it does not prevent litigants from filing them in the district court while an appeal is pending.").

Rather, Rule 62.1 is a procedural rule that district courts apply when the rules that govern the relationship between district and appellate courts deprive the district court of authority to grant relief without appellate permission. Fed. R. Civ. P. 62.1, Adv. Cmte. Note (2009). The district "court may," in response to a "timely motion … made for relief" falling within the Rule, defer the motion's consideration, deny the motion, state that the district court would grant the motion upon remand for that purpose, or state that "the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(1)-(3). If the district court exercises its discretion to state that the motion in question raises a substantial issue, the court is not bound to grant the motion, because

further proceedings on remand (should the court of appeals agree resolution of the substantial question before ruling on the appeal is desirable) may show that the motion ultimately should not be granted. Fed. R. Civ. P. 62.1, Adv. Cmte. Note (2009).

Paragraph (b) requires the movant promptly to notify the appellate court if the district court rules on that timely motion in accordance with Rule 62.1(a)(3) to ensure coordination of proceedings, and to permit the district court to decide the motion (however it may have previously indicated it would rule if given the opportunity) upon remand for that purpose. Fed. R. Civ. P. 62.1(b), (c).

Meanwhile, a Rule 59(e) motion to alter or amend a judgment based on newly discovered evidence must demonstrate that the evidence is of such a nature that it would probably change the outcome of the case; either newly discovered or unknown until after entry of judgment; material; and not merely cumulative or impeaching. *Gen. Motors, LLC v. FCA US, LLC*, 44 F.4th 548, 563 (6th Cir. 2022); *see also* Motion at 15, PageID.1895 (acknowledging that "[w]hen a Rule 59(e) motion is grounded on newly discovered evidence, the evidence must have been previously unavailable and would probably produce a different result") (citing *Miller v. William Beaumont Hosp.*, 121 F.4th 556, 557 (6th Cir. 2024)).

**A.    OAN Defendants Have Not Timely Filed A Motion For Post-Judgment Relief, So There Is Nothing For The Court To Consider**

Given OAN Defendants' pending appeal of this Court's January 24, 2025 Order and Judgment granting Dr. Halderman's motion to quash (ECF No. 28, PageID.1859), there is no meaningful dispute that this Court lacks jurisdiction to consider a motion for relief, alteration, amendment, or vacation of that Order and Judgment. *Am. Civil Liberties Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 444 (6th Cir. 2010). Rule 62.1 permits a district court to issue an indicative ruling on a "timely motion [that] is made for relief that the [C]ourt lacks authority to grant because of an appeal that has been docketed and is pending." Fed. R. Civ. P. 62.1(a).

But a motion for post-judgment relief and a motion requesting an indicative ruling on that motion, because this Court otherwise would have no jurisdiction due to a pending appeal, are two separate forms of relief. There must be a present motion for relief upon which to rule, and that motion must be timely. That is not the posture of this Motion.

The proper procedure is to file that motion for post-judgment relief in the district court, which is what permits this Court to rule on the motion for relief in accordance with Rule 62.1. *Dominguez*, 706 F.3d at 1074-75. Rule 62.1 refers to how courts proceed when faced with motions under Rule 59 or Rule 60 filed while a docketed appeal is pending – not to how a movant should file under that rule. *U.S. ex rel. Oakes v. Cinnaire*, No. 18-13540, 2020 WL 13505073, at *1 (E.D. Mich.

Aug. 21, 2020) (considering motion filed under Rule 62.1 for indicative ruling on pending post-judgment motions under Rule 58(d) and Rule 60(b)(2)); *CME Racing Prods., Inc. v. BMF Wheels, Inc.*, No. 11-13744, 2014 WL 12659599, at *1 (E.D. Mich. Sept. 25, 2014) (considering whether motion for relief from judgment filed under Rule 60(b)(6) was timely for purposes of Rule 62.1); *but see Pompy v. Moore*, No, 19-10334, 2024 WL 4997448, at *2-3 (E.D. Mich. Nov. 21, 2024) (appearing to permit Defendant to file motion under Rule 62.1 five months after entry of judgment seeking indicative ruling on hypothetical motion for partial relief from judgment under Rule 60(b)).

Here, OAN Defendants have filed only their "Rule 62.1 Motion for Indicative Ruling By Defendants" and Brief in support (ECF. No. 32, PageID.1881). They expressly disclaim that their Motion is made under Rule 59(e), despite the Local Rule requiring them to file under either that Rule or Rule 60(b). *Id.* at 1-2, PageID.1881-1882. OAN Defendants further concede that a Rule 59(e) motion "must be filed no later than 28 days after the entry of the judgment," or by February 21, 2025. *Id.*

*United States v. Ocampo,* No. 06-20172-01, 2013 WL 686922, at *1 (E.D. Mich. Feb. 26, 2013) well-explains how Rule 62.1 is used. There, the Court issued an Opinion granting in part and denying in part defendant-petitioner's § 2255 motion in late January. A few weeks later, the petitioner filed a notice of appeal. The next

day, the petitioner filed a motion titled "motion for injunction pending an appeal pursuant to Fed. R. Civ. P. Rule 62.1(a)(1)," explaining that she was asking the Court to "hold in abeyance his forthcoming motion under Rule[s] 52(b) and 59(e)" during the pendency of the appeal. *Id.* The Court observed that the petitioner had "not yet filed a motion pursuant to either Rule 52 or 59," and so "the Court cannot defer considering a motion that does not exist." *Id.* After examining Rule 62.1 and an example of Rule 62.1's proper operation in a recent high-profile case,[1] the *Ocampo* Court distinguished that case from the one before it and denied the Rule 62.1 motion: "In this case, unlike in *Perry,* there is no pending motion. Rather, Petitioner has simply filed a Rule 62(a)(1) motion. As noted, this Court cannot defer considering a motion that has not been filed." *Id.* at *2.

So too here, OAN Defendants ask this Court to construe their Motion filed (solely) under Rule 62.1 as a motion under Rule 59(e). But they have not timely filed a Rule 59(e) motion, despite their stated understanding of the clear instruction to do so by the Federal Rules of Civil Procedure and the Local Rules of this Court.

It follows, then, that this Court can and should deny the Motion because OAN Defendants have not filed any timely post-judgment motion for relief on which to consider issuing an indicative ruling. Dr. Halderman respectfully submits that any

---

[1] *Perry v. Schwarzenegger*, 790 F.Supp.2d 1119 (N.D.Cal.2011), *aff'd sub nom Perry v. Brown*, 671 F.3d 1052 (9th Cir.2012), *cert. granted sub nom Hollingsworth v. Perry*, 133 S. Ct. 786 (2012).

such denial should be with prejudice, as the Motion relies upon this Court's presumed authority under Rule 59(e) and the period within which to timely file a Rule 59(e) motion challenging this Court's Judgment has expired.

**B.     There is No New Material Evidence, Let Alone Contradictory Evidence**

Should this Court construe OAN Defendants' Motion as timely filed under Rule 59(e) and choose to consider OAN Defendants' request for relief under Rule 62.1, it should still deny the Motion for lack of merit.

OAN Defendants claim to rely on a March 23, 2021 draft of Dr. Halderman's Antrim County Report, produced by the Michigan Department of State ("MDOS") days after this Court issued its Order and Judgment quashing the testimonial subpoena at issue in his action, and OAN's redline comparison of the draft against the March 26, 2021 report Dr. Halderman published three days later (Motion at 2-4, PageID.1882-1884; *see also id.* at 18-24, PageID.1898-1904, ECF Nos. 32-2, 32-4). OAN Defendants assert that comparing the draft (March 23) report against the published (March 26) report reveals that Dr. Halderman "fundamentally changed" his findings (Motion at 2-3, PageID.1882-1883 & ECF Nos. 32-2 & 32-4). They further claim that these changes and two Outlook calendar entries sent to Dr. Halderman, MDOS officials, and Michigan Assistant Attorneys General

representing those MDOS officials raises an inference that OAN should be able to explore[2] (Motion at 3-4, PageID.1883-1884 & ECF No. 32-3).

But the changes are not fundamental. The changes are not even material. The revisions Dr. Halderman made between the March 23 draft report and the March 26 published report clarified his findings to prevent them from being misunderstood. For instance, "contributing factor" -- a phrase to which OAN Defendants repeatedly return as a perceived smoking gun (Motion at 2-6, PageID.1882-1889) -- is a term of art with a specific meaning for this kind of root cause analysis. *See* Duke Okes, *Root Cause Analysis: The Core of Problem Solving and Corrective Action* (2nd ed. 2019) at 18 ("While causal factors are those that lead directly to a failure, contributing factors are those factors that, when they are present, increase the probability of occurrence.") (*available at* https://asq.org/quality-press/display-item?item=E1557) (last visited Feb. 24, 2025).  Rather than risk being misinterpreted by using the term "contributing factor," the final report spelled out the way in which software design increased the likelihood of the incorrect reporting of unofficial results resulting from the errors Dr. Halderman used his expertise to identify and analyze.

---

[2] OAN Defendants fleetingly cite to an incomplete transcript of a League of Women Voters event at which Dr. Halderman spoke. *See* Motion at 5, PageID.1885, and 25, PageID.1905 (citing ECF 32-6). The incomplete transcript, like the draft report addressed herein, does not contradict Dr. Halderman's published findings or for that matter other statements about which OAN renews its concern in its Motion.

If the report's revisions over those three days actually did remove references to Dominion's potential culpability, then the March 26 published report and the peer-reviewed report that followed it 17 months[3] later would not squarely assert in Dr. Halderman's Conclusion that while Dominion may not have caused the errors, it missed opportunities to prevent them through better design:

> Some of these human errors would have been harmless individually, but their combined effects undermined **safeguards that should have ensured accuracy**. Their number speaks to the extreme pressures that election workers faced last year, in the midst of a global pandemic and a bitterly contested presidential contest.
>
> There is no credible evidence that the Dominion system was deliberately designed to induce errors, **but there were missed opportunities for the software to do more to [help] election staff avoid making mistakes**:
>
> — When modifying the ballot designs, the software stated that old ballots and election definitions would be "unusable". However, **it failed to clearly warn** that using them anyway could result in erroneous results.
>
> — The [Dominion Election Management System] and scanners **could have prevented or detected** the use of incompatible ballots and election definitions. **They did not and gave no indication** when incompatible ballots or election definitions were used.
>
> Several of the election procedures that broke down due to human error are important security protections. Furthermore, **the [Dominion Election Management System] lacks important security updates, has weak authentication and access control mechanisms, and is vulnerable to compromise if an attacker has physical**

---

[3] As this Court will recall, Dr. Halderman also published a peer-reviewed version of his report in August 2022, which remains publicly available. *See* ECF No.1 at 17 n.15, PageID.29-30. OAN Defendants have not put the peer-reviewed version at issue in their Motion.

> **access to the computer. These are serious vulnerabilities** that should be mitigated on a priority basis, but there is no evidence that any of these problems was ever exploited in Antrim County. My analysis has precisely accounted for all known anomalies in Antrim's November 2020 election results, and none was the product of a security breach.

ECF No. 21-7 at 48-49, PageID.1661-1662 (March 26, 2021 expert report in *Bailey v. Antrim County*, 510 Mich. 1100; 982 N.W.2d 175 (2022) (emphasis added).

Comparing the March 23 draft's conclusion to the March 26 report's conclusion reveals that both some of the references to human error and some of the references to software deficiencies were revised (or removed) as Dr. Halderman finalized his report. *See, e.g.,* ECF No. 32-4 at 119-120, PageID.2088-2089 (deleting both "[a]lthough human error was the root cause of the Antrim County incident" and "[d]efensive software engineering, with a greater emphasis on preventing operator error, could help ensure that problems like those in Antrim do not occur again"). This is frosting on a cake, not a thumb on a scale.

There's a reason OAN Defendants repeatedly claim Dr. Halderman revised his conclusion to attribute the Antrim County incident "solely to human error," but ensures the word "solely" when used in this way never appears within quotation marks. *See* Motion at 4, 5, 18, PageID.1884, 1885, 1898. This is because "sole" and "solely" never appear in Dr. Halderman's draft report, published report, peer-reviewed report, or the MDOS press release on which they rely. And this is because

Dr. Halderman did not at any point assert such a simplistic conclusion in the course of performing services as an expert retained by counsel for the State of Michigan.

This is an unsupported invention by OAN Defendants, aimed at persuading this Court that Dr. Halderman was pressed to, and did, bury some evidence of a deliberate software defect or a purposeful error causing official presidential election results to be wrongly tabulated. Once again, OAN's reporting does not match the facts. There is no material contradiction between the draft and the published *Bailey v. Antrim County* reports for purposes of their defenses in the underlying defamation lawsuit, or for purposes of this action.

**C.     There Is No Other Basis To Grant An Indicative Ruling Or Find A Substantial Question Exists**

OAN Defendants next look to circumstantial evidence to support their Motion, though unlike with the draft report they do not claim it was only made available to them after this Court's entry of judgment.

For example, they highlight and include as an exhibit the wording of an MDOS press release issued contemporaneously with Dr. Halderman's published report. *See* Motion at 3-4, PageID.1883-1884, & 14, PageID.1894; *see also* ECF No. 32-4 (Mar. 26, 2021 MDOS press release). Nowhere do OAN Defendants allege Dr. Halderman influenced the language used in MDOS's press release; nor could they. To state what should be obvious, Dr. Halderman's scope of work did not include public relations for MDOS, which in any event would not have been

12

assigned to him by the Michigan Attorney General. *But see* Motion at 14 & n.13, PageID.1894 (claiming otherwise).

Even if it had, though, this press release expressly acknowledges that Dr. Halderman's published report "concluded software improvements should be made to help users more easily identify when such human error occurs" and "identified areas for improvement including voting system design, training and security" (ECF No. 32-4 at 1-2, PageID.2106-2107). It was widely known, and expressly stated in Dr. Halderman's expert report at every stage, that the provider of the software at issue was Dominion. Claiming that the MDOS press release, or any other MDOS narrative, was "at odds with" the expert report Dr. Halderman was retained by MDOS to produce is simply wrong.

OAN Defendants also point to calendar invitations showing scheduled conferences using Microsoft Teams. On their face, they don't include anyone from Dominion (ECF No. 32-3, Page.ID 1968-1969). Because the draft and published reports are not materially contradictory, see *supra,* there is nothing material to explore here, even putting questions of privilege and work product protection to one side.[4] *See Gen. Motors*, 44 F.4th at 564 (6th Cir. 2022) ("The purported new evidence does not move the needle. It confirms what we already knew").

---

[4] Dr. Halderman takes no position at this time on whether and in what respect attorney-client privilege, work product protections, or deliberative privileges apply to these conversations.

OAN Defendants rely on Wisconsin case law to argue that Dr. Halderman's expected testimony about facts concerning voting machines, logs, and software used in Antrim County in the 2020 general election is "unique" and "irreplaceable" because of the expert duties he performed there and because he "may have been asked to change his observations and conclusions to fit a public narrative being asserted by Dominion and the MDOS" (Motion at 18, PageID.1898; *see also* Motion at 21, PageID.1901) (arguing a undue hardship exists because "OAN Defendants will not be able to obtain this factual information [about changes in March 23 report and content of discussions March 24 and March 26] through other means besides deposing Halderman.").

OAN Defendants' argument contradicts itself: if their new argument is that Dr. Halderman was pressured over three days to change his findings – a change that, as discussed above, did not occur – then those applying the purported pressure from MDOS and the Attorney General's Office would likewise have personal knowledge of that pressure being applied. Dr. Halderman is not "unique" or "irreplaceable," while he is uniquely subject to other pressures and concerns that applied severe burdens to the testimony OAN continues to demand.

**D.    OAN Defendants' Arguments For Reconsideration Fail, Again**

The rest of the Motion regurgitates arguments OAN Defendants previously raised and lost before this Court. *Compare* Motion at 6 (arguing this Court's analysis

14

of Dr. Halderman's expertise and consequent access to Dominion voting equipment and software was wrong), 15-17 (quoting at length from *Kaufman v. Edelstein*, 539 F.2d 811 (2d Cir. 1976) and 8 Wigmore, Evidence § 2192), 21 (arguing Court is "incorrect" to hold that Dr. Halderman is not a percipient witness) *with* Response to Motion to Quash or Modify, ECF No. 21 at 18-29, Page.ID 1556-1564 (same). These arguments carry no more water now than they did four months ago. If OAN Defendants wished for this Court to reconsider its analysis, they should have filed a motion for reconsideration before rushing to notice their appeal to the Sixth Circuit, rather than cloaking their true aims in a Rule 62.1 Motion resting on a prior consistent draft report and two calendar invitations.

OAN Defendants cite *Miller v. William Beaumont Hospital*, 1212 F. 4th 556 (6th Cir. 2024) to encourage this Court to correct a mistake of fact (Motion at 6, PageID.1886, & 15, PageID.1895). Beyond expressing a tautology regarding the content of Rule 59, *Miller* offers no support to OAN. The *Miller* court dismissed an appeal of the trial court's summary judgment because the appellant, against whom judgment was rendered, failed to file a Rule 59(e) motion in the lower court at all, thus failing to alter the deadline to file a notice of appeal and depriving the appellate court of jurisdiction. *Miller,* 1212 F.4th at 557-58.

OAN Defendants also look to pages of a deposition from a Dominion witness to underscore Dr. Halderman's unchallenged access to Dominion equipment and

software used in Antrim County (Motion at 18, PageID.1898, & 27, PageID.1907; see also ECF No. 32-9). This only serves to show that Dr. Halderman had access to Antrim County equipment and software because of his expertise and his retention as an expert. This Court has examined this issue already; no purportedly material newly-discovered evidence supports a re-examination of this issue.

Dr. Halderman addressed in his reply brief supporting his motion to quash the "invent[ed] … contradiction" that he provided a private opinion about the Antrim County incident that departed from his published opinion (ECF No. 19 at 6 & n.4, PageID.1517) ("The lack of disagreement about the consequences of the compounding of human error, software design, and gaps in election procedure – and the absence of any evidence of nefarious conduct or 'Italygate' and similar conspiracy theories– is amply explained in the exhibits OAN attaches with its Opposition [citing record].").

Of course, this Court already addressed at length why OAN Defendants cannot require Dr. Halderman to give uncompensated expert testimony (ECF No. 28 at 10-17, PageID.1868-1875). Of particular importance here, this Court concluded that the Defendants "have offered no reason why they couldn't hire their own expert to evaluate the data available in either of these fora. In fact, the defendants have not even attempted to demonstrate 'a substantial need' for Halderman's testimony 'that cannot be otherwise met without undue hardship.' Fed. R. Civ. P. 45(d)(3)(C)(i)."

*Id.* at 16, PageID.1874.[5]

OAN Defendants repeat their insistence that Dr. Halderman's expected testimony would have been obtained through his observations and actions, rather than information he came to learn from his own study and expertise, so they should be permitted to depose him about facts he learned in the course of his investigation (Motion at 19-26, PageID.1899-1906). This Court has already addressed these arguments and found them wanting. OAN Defendants present nothing to alter this Court's well-reasoned analysis under the Federal Rules of Civil Procedure and applicable case law – nor would it be appropriate to do so, absent an intervening change in law to which they do not cite and of which Dr. Halderman has found none.

Tellingly, OAN Defendants move back and forth between claiming (1) the newly-produced March 23 draft is a smoking gun and they care deeply about whether Dr. Halderman was pressured to alter his findings between March 23 and March 26,[6] and (2) claiming what really matters is Dr. Halderman's personal knowledge of "the

---

[5] Indeed, Dr. Halderman is not the only person to have examined the Antrim County data and Dominion software. The plaintiff in *Bailey v. Antrim County* had his own experts who accessed the same data Dr. Halderman did and produced numerous reports, which are compiled here: https://www.depernolaw.com/bailey-documents---may-2021.html (accessed February 24, 2025). A video on that same web page appears to show one of those experts demonstrating his findings to an OAN reporter.

[6] Motion at 19, PageID.1889; *id.* at 22-23, PageID.1902-1903 (hypothetical deposition questions about conversations between Dr. Halderman, MDOS, and the Michigan Attorney General's office). *See* footnote 4 *supra.*

nature and extent of the software's effects on the vote tabulation and errors experienced in the November 2020 election" (Motion at 20, PageID.1900).[7] This schism sheds further light on OAN Defendants' effort to leverage a substantively similar draft report produced after this Court entered its Judgment into slapping a label reading "motion for indicative ruling" on what is in substance and form a motion for reconsideration. This is improper.[8]

The remainder of the Motion simply takes additional potshots at this Court's analysis while making passing references to the newly acquired calendar invitations and the draft report as alleged grounds for a new ruling (Motion at 26-28, PageID.1906-1908). There is nothing new there, either.

---

[7] Motion at 20, PageID.1900; *id.* at 23-26, PageID.1903-1906 (hypothetical deposition questions about Dr. Halderman's expert investigation, methods, techniques, and findings – that is, his expert opinion – and a timeline of events couched as legal argument to support an attack on that opinion).

[8] OAN Defendants contemporaneously filed a motion to hold their appeal in abeyance at the Sixth Circuit Court of Appeals, citing this motion for indicative ruling as grounds (**EX A**). This would have the effect of delaying consideration of their appeal of this Court's Order and Judgment while they continue to litigate expert discovery under seal and perhaps to negotiate their case in the District Court for the District of Columbia (excerpts from docket; **EX B**). Dr. Halderman will refrain from speculating here on the reasons motivating OAN Defendants' motion practice here in Michigan.

## **CONCLUSION**

For the foregoing reasons, Dr. Halderman respectfully requests that this Court

deny with prejudice OAN Defendants' motion for an indicative ruling pursuant to

Federal Rule of Civil Procedure 62.1(a)(2).

Respectfully Submitted,

DEMOREST LAW FIRM, PLLC

By:  /s/  Mark S. Demorest
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
Dated:  February 26, 2025          mark@demolaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this date caused to be electronically filed a copy

of the foregoing document with the Clerk of Court using the CM/ECF system, which

will automatically send e-mail notification of such filing to counsel of record, and

further that that I have on this date caused to be served a copy of the foregoing

document by email (unless otherwise specified) to the following:

**See Appendix**

DEMOREST LAW FIRM, PLLC

By: _/s/ Mark S. Demorest_
Mark S. Demorest (P35912)
Attorneys for Respondent
322 W. Lincoln Ave.
Royal Oak MI 48067
(248) 723-5500
mark@demolaw.com

Dated:  February 26, 2025

## Appendix to Certificate of Service

**Carl C. Butzer**
**Jonathan D. Neerman**
**Minoo Sobhani Blaesche**
JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201
cbutzer@jw.com
jneerman@jw.com
mblaesche@jw.com

**Joshua A. Romero**
**Sean F Gallagher**
JACKSON WALKER LLP
100 Congress Avenue, Ste 1100
Austin, TX 78701
jromero@jw.com
sgallagher@jw.com

**Eve Levin**
**Stephen Shackelford , Jr.**
**Christina Dieckmann**
**Mark Hatch-Miller**
**Zachary Savage**
SUSMAN GODFREY L.L.P.
One Manhattan West
395 9th Avenue, Ste 50th Floor
New York, NY 10001
elevin@susmangodfrey.com
sshackelford@susmangodfrey.com
cdieckmann@susmangodfrey.com
mhatch-miller@susmangodfrey.com
ZSavage@susmangodfrey.com

**Charles L. Babcock**
**Bethany Pickett Shah**
**Christina Marie Vitale**
**Gabriela Barake**
**Joel Glover**
**John K. Edwards**
**Nancy W. Hamilton**
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010
cbabcock@jw.com
bpickett@jw.com
cvitale@jw.com
gbarake@jw.com
jglover@jw.com
jedwards@jw.com
nhamilton@jw.com

**R. Trent McCotter**
BOYDEN GRAY PLLC
801 17th Street, N.W., Suite 350
Washington, DC 20006
tmccotter@boydengray.com

**M. Theodore Takougang**
**Marcellus Antonio McRae**
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
ttakougang@gibsondunn.com
mmcrae@gibsondunn.com

**Jonathan J. Ross**
**Elizabeth B. Hadaway**
**Laranda Walker**
**Mary Kathryn Sammons**
**Florence Chen**
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, TX 77002
jross@susmangodfrey.com
ehadaway@susmangodfrey.com
lwalker@susmangodfrey.com
ksammons@susmangodfrey.com
fchen@susmangodfrey.com

**Davida Brook**
**Brittany Fowler**
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067-6029
dbrook@susmangodfrey.com
bfowler@omm.com

**Edgar Sargent**
SUSMAN GODFREY, L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101-3000
esargent@susmangodfrey.com

**Barry Coburn**
COBURN & GREENBAUM, PLLC
1710 Rhode Island Avenue, NW
2nd Floor
Washington, DC 20036
barry@coburngreenbaum.com

**David C. Tobin**
TOBIN, O'CONNOR & EWING
5335 Wisconsin Avenue, N.W.
Suite 400
Washington, DC 20015

**Ashley E. Johnson**
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
ajohnson@gibsondunn.com

**William C. Haggerty**
**Katherine Harwood**
FORD, WALKER, HAGGERTY &
BEHAR
One World Trade Center, 27th Floor
Long Beach, CA 90831
bill@fwhb.com
kharwood@fwhb.com

**Joshua A. Mooney**
KENNEDYS CMK LLP
1600 Market Street, Suite 1410
Philadelphia, PA 19103
Joshua.Mooney@kennedyslaw.com

**Marc Casarino**
KENNEDYS CMK LLP
919 North Market Street, Ste 1550
Wilmington, DE 19801
marc.casarino@kennedyslaw.com

**Michael J. Tricarico**
KENNEDYS CMK LLP
570 Lexington Avenue, Suite 8th Floor
New York, NY 10022
Michael.Tricarico@Kennedyslaw.com

**Teresa Marie Cinnamond**
KENNEDYS CMK LLP
120 Mountain View Blvd.
P.O. Box 650
Basking Ridge, NJ 07920
teresa.cinnamond@kennedyscmk.com

dctobin@tobinoconnor.com

| | |
|---|---|
| **Douglas A. Daniels** | **Lawrence J. Joseph** |
| **Heath Novosad** | LAW OFFICE OF LAWRENCE J. |
| DANIELS & TREDENNICK PLLC | JOSEPH |
| 6363 Woodway Drive, Suite 700 | 1250 Connecticut Avenue, NW |
| Houston, TX 77057 | Suite 700-1A |
| doug.daniels@dtlawyers.com | Washington, DC 20036 |
| heath.novosad@dtlawyers.com | ljoseph@larryjoseph.com |

**Patrick Byrne**
9810 East Martha Rd.
Alta, UT 84092
*(by U.S. first-class mail)*

**Joel Erik Connolly**
**Nicole Wrigley**
**Emily Newhouse Dillingham**
**Martin Vincent Sinclair , Jr.**
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 S. Wacker Drive, Suite 1600
Chicago, IL 60606
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
edillingham@beneschlaw.com
mvs@sperling-law.com

Primerus/Alex Halderman (1593)/1 Draft Pleadings/2025 02 25 Opp to Defendants Motion for Indicative Ruling.docx

# EXHIBIT A

No. 25–1110

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———————————

J. ALEX HALDERMAN,

*Plaintiff–Appellee,*

v.

HERRING NETWORKS, INC.,
dba One America News Network;
CHARLES HERRING;
ROBERT HERRING, SR.; and
CHANEL RION,

*Defendants–Appellants.*

———————————

**MOTION TO HOLD APPEAL IN ABEYANCE**

Defendants–Appellants Herring Networks, Inc., Charles Herring, Robert Herring, Sr., and Chanel Rion respectfully move to hold this appeal in abeyance pending the district court's disposition of their motion for an indicative ruling under Federal Rule of Civil Procedure 62.1.  In support of this motion, they state:

1.    This case arises out of the 2020 Presidential Election.  U.S. Dominion, Inc., has sued the defendants in the U.S. District Court for the District of Columbia for defamation over allegedly untrue statements made in broadcast reports on *One America News*, a national cable news channel, regarding a controversy of miscounted votes in elections held in Antrim County.  *U.S. Dominion* v. *Herring Networks, Inc.*, No. 1:21-cv-2130 (D.D.C.).  The defendants have raised, among other defenses, the defense of substantial truth, which precludes a finding of

liability if the substance, gist, or sting of a challenged statement is true. *Newman*

v. *Howard Univ. Sch. of Law*, 715 F. Supp. 3d 86, 112 (D.D.C. 2024).

      2.     J. Alex Halderman is the Bredt Family Professor of Computer Science

and Engineering at the University of Michigan, the Director of the University of

Michigan's Center for Computer Security and Society, and the Director of the

Systems Laboratory at the University of Michigan's College of Computer Science

and Engineering.  The Michigan Department of State and the Michigan Department

of Attorney General retained Prof. Halderman to forensically investigate the

miscounting controversy in Antrim County elections.  Contract, R.21-17,

PageID.1742–1751; Report, R.21-7, PageID. 1617, at §1.  On March 26, 2021,

Prof. Halderman issued a report on the facts of his investigation and the conclusions

that he drew from those facts.  Report, R.21-7, PageID.1615–1668.

      3.     The facts learned and reported by Prof. Halderman are directly relevant

to the defendants' substantial truth defense.  For this reason, the defendants

subpoenaed him for a deposition.  Subpoena, R.1-1, PageID.60.  Prof. Halderman

moved to quash the subpoena claiming an undue burden and contending that the

deposition was an improper attempt to disclose an unretained expert's opinion.

Motion, R.1, PageID.1–2.  The district court quashed the subpoena over the

defendants' objection.  Order, R.28, PageID.1859–1875.  The defendants promptly

noticed this appeal.  Notice, R.29, PageID.1876.

      4.     Within days after noticing this appeal, the defendants received a

production of records from the Michigan Department of State.  Among those records

was a draft report by Prof. Halderman dated March 23, 2021—three days before the

issuance of his final report—and two calendar invitations for two teleconferences between agents of the Michigan Department of State, agents of the Michigan Department of Attorney General, and Prof. Halderman, which were scheduled to occur on March 24 and March 26, 2021.  Draft Report, R.32-2, PageID.1911–1967; Calendar Invitations, R.32-3, PageID.1968–1969.  After those teleconferences, Prof. Halderman issued his final report.  The draft report contains information helpful to the defendants' substantial truth defense; that information is largely omitted from his final report.  See Redline, R.32-4, PageID.1970–2105.

     5.     The newly discovered evidence of the changes in the short time between the draft and final reports, coupled with evidence of two teleconferences with agents of the State, supports a motion to alter or amend the order quashing the subpoena under Federal Rule of Civil Procedure 59(e).  *Heil Co.* v. *Evanston Ins. Co.*, 690 F.3d 722, 728 (CA6 2012).  Indeed, at argument on the motion to quash the subpoena, the district court suggested that evidence of Prof. Halderman being pressured to alter his findings and conclusions might affect its analysis.  See Motion Tr. 35:15–36:3, R.24, PageID.1803–1804.

     6.     The district court presently lacks jurisdiction to grant Rule 59(e) relief because the defendants' notice of appeal transferred jurisdiction to this Court. *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 635 (CA6 2020) ("the normal rule is that, once a party files a notice of appeal, a district court loses jurisdiction over any aspect of the case at issue in the appeal.").  Federal Rule of Civil Procedure 62.1, however, provides that "if a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the

court may[, *inter alia*,] state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. Rule Civ. Proc. 62.1(a).  The defendants have filed a Rule 62.1 motion to afford the district court an opportunity to revisit its decision in light of the very type of evidence that it signaled could affect its ruling.  Motion, R.32, PageID.1881.

7.      The defendants' motion is timely under Rule 62.1 because (*a*) it is a procedural vehicle for considering a Rule 59(e) motion; (*b*) Rule 59(e) motions may be filed within 28 days after entry of the judgment, Fed. Rule Civ. Proc. 59(e); (*c*) the district court quashed the subpoena on January 24, 2025, Order, R.28, PageID.1875; (*d* the twenty-eighth day after that date will be February 21, 2025; and (*e*) the defendants filed the Rule 62.1 motion on February 12, 2025, nine days before the deadline, Motion, R.32, PageID.1881.

8.      Prof. Halderman's response to the defendants' Rule 62.1 motion will not be due until February 26, 2025.  Civil Rule 7.1(e)(1)(a) (ED Mich. 2024).  The defendants' reply will not be due until March 5, 2025.  Civil Rule 7.1(e)(1)(B) (ED Mich. 2024).  The defendants' principal brief on appeal is presently due March 17, 2025.  The district court has not yet signaled whether it intends to hold oral argument on the motion.  Regardless, there is a real prospect that a decision on the motion will be issued after the defendants' principal brief on appeal is due.  And, if the district court gives an indicative ruling favorable to the defendants, then a remand for entry of relief in their favor would moot this appeal, rendering the time and expense of preparing a brief on appeal wasteful.

9.      WHEREFORE, the defendants respectfully request that the Court hold this appeal in abeyance until such time as the district court resolves the Rule 62.1 motion.  The Court has the power to grant such relief.  *United States* v. *Outen*, 286 F.3d 622, 631 (CA2 2002) (explaining that holding an appeal in abeyance is the functional equivalent of granting an extension of the time within which to file a brief on appeal) (citing Fed. Rule App. Proc. 26(b)).  See also *Jock* v. *Sterling Jewelers, Inc.*, 646 F.3d 113, 118 (CA2 2011) (noting that the defendant's appeal had been "held in abeyance pending the outcome of the district court's decision" on the defendant's Rule 62.1 motion).

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  February 18, 2025            /s/  *Joseph E. Richotte*

Joseph E. Richotte
Michigan Bar No. P70902

Jennifer A. Dukarski
Michigan Bar No. P74257

101 N. Main St. #200
Ann Arbor, MI  48104
(734) 995-3110
richotte@butzel.com
dukarski@butzel.com
*Counsel for Defendants*

200155037.1

– 5 –

JACKSON WALKER, LLP

Dated:  February 18, 2025          /s/  *Charles L. Babcock*
_____

Charles L. Babcock
Texas Bar No. 01479500
Christina M. Vitale
Texas Bar No. 24077610
1401 McKinney St. #1900
(713) 752-4200
cbabcock@jw.com
cvitale@jw.com
*Counsel for Defendants*

# EXHIBIT B

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 19 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| STATE OF WASHINGTON; et al., | No. 25-807 |
| Plaintiffs - Appellees, | D.C. No. 2:25-cv-00127-JCC Western District of Washington, Seattle |
| v. | |
| DONALD J. TRUMP; et al., | ORDER |
| Defendants - Appellants, | |
| ---------------------------------------- | |
| JAMES DANIEL JORDAN; et al., | |
| Amici Curiae. | |

Before: CANBY, M. SMITH, and FORREST, Circuit Judges.
Order by Judges CANBY and M. SMITH; Concurrence by Judge FORREST.

Appellants have not made a "strong showing that [they are] likely to succeed on the merits" of this appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The emergency motion (Docket Entry No. 21) for a partial stay of the district court's February 6, 2025 preliminary injunction is denied.

The existing briefing schedule remains in effect. The clerk will place this case on the calendar for June 2025. *See* 9th Cir. Gen Ord. 3.3(f).

1    Washington et. al. v. Trump, et al., No. 25-807

2    Forrest, C.J., concurring.

3          The Government has presented its motion for a stay pending appeal on an

4    *emergency* basis, asserting that it needs the relief it seeks by February 20. Thus, the

5    first question that we must ask in resolving this motion is whether there is an

6    emergency that requires an immediate answer.

7          Granting relief on an emergency basis is the exception, not the rule. *Cf. Nken*

8    *v. Holder*, 556 U.S. 418, 427 (2009) (noting that a non-emergency stay "is an

9    'intrusion into the ordinary processes of administration and judicial review,' and

10   accordingly 'is not a matter of right, even if irreparable injury might otherwise result

11   to the appellant.'" (citations omitted)); *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921,

12   934–35 (2024) (mem.) (Jackson, J., dissenting from grant of stay) ("Even when an

13   applicant establishes [the] highly unusual line-jumping justification [for a non-

14   emergency stay], we still must weigh the serious dangers of making consequential

15   decisions 'on a short fuse without benefit of full briefing and oral argument.'"

16   (citations omitted)). Neither the Federal Rules of Civil Procedure nor the Federal

17   Rules of Appellate Procedure address what a party must show to warrant immediate

18   equitable relief. *Cf.* Fed. R. Civ. P. 62(g)(1); Fed. R. App. P. 8(a)(2)(D); Fed. R.

19   App. P. 27(c). Nor do the "traditional" stay factors that we analyze when considering

20   whether to grant a stay pending appeal. *See Nken*, 556 U.S. at 425–26. But this

Case: 25-807, 02/19/2025, DktEntry: 37.1, Page 3 of 7

1 court's rules provide some guidance. Ninth Circuit Rule 27-3, which governs

2 emergency motions, provides that "[i]f a movant needs relief within 21 days to avoid

3 irreparable harm, the movant must," among other things, "state the facts showing

4 the existence and nature of the claimed emergency." If the movant fails to

5 demonstrate that irreparable harm will occur immediately, emergency relief is not

6 warranted, and there is no reason to address the merits of the movant's request.

7   Here, the Government has not shown that it is entitled to immediate relief. Its

8 sole basis for seeking emergency action from this court is that "[t]he district court

9 has . . . stymied the implementation of an Executive Branch policy . . . nationwide

10 for almost three weeks." That alone is insufficient. It is routine for both executive

11 and legislative policies to be challenged in court, particularly where a new policy is

12 a significant shift from prior understanding and practice. *E.g.*, *West Virginia v. EPA*,

13 597 U.S. 697 (2022); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591

14 U.S. 1 (2020); *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012). And just

15 because a district court grants preliminary relief halting a policy advanced by one of

16 the political branches does not in and of itself an emergency make. A controversy,

17 yes. Even an important controversy, yes. An emergency, not necessarily.

18   To constitute an emergency under our Rules, the Government must show that

19 its inability to implement the specific policy at issue creates a serious risk of

20 irreparable harm within 21 days. The Government has not made that showing here.

1    Nor do the circumstances themselves demonstrate an obvious emergency where it

2    appears that the exception to birthright citizenship urged by the Government has

3    never been recognized by the judiciary, *see United States v. Wong Kim Ark*, 169 U.S.

4    649, 693 (1898), and where executive-branch interpretations before the challenged

5    executive order was issued were contrary, *see, e.g.,* Walter Dellinger, Assistant

6    Attorney General, Office of Legal Counsel, *Legislation Denying Citizenship at Birth*

7    *to Certain Children Born in the United States*, 19 O.L.C. 340, 340–47 (1995).

8         To be clear, I am saying nothing about the merits of the executive order or

9    how to properly interpret the Fourteenth Amendment. I merely conclude that,

10   whatever the merits of the parties' respective positions on the issues presented, the

11   Government has not shown it is entitled to immediate relief from a motions panel

12   before assignment of the case to a merits panel. That said, the nature of this case and

13   the issues it raises does warrant expedited scheduling for oral argument and

14   assignment to a merits panel. And our general orders expressly permit this option:

15   "In resolving an emergency motion to grant or stay an injunction pending appeal,

16   the motions panel may set an accelerated briefing schedule for the merits of the

17   appeal, order the case on to the next available argument calendar . . . , or order the

18   case on to a specified argument calendar." 9th Cir. General Order 6.4(b).

19        Aside from the legal standard governing emergency relief, three prudential

20   reasons support not addressing the merits of the Government's motion for a stay at

3

1   this point. First, under our precedent, the decision of a motions panel, even if

2   published, is not binding on the future merits panel. In *East Bay Sanctuary Covenant*

3   *v. Biden*, we held that "[t]he published motions panel order may be binding as

4   precedent for other panels deciding the same issue" at the motions stage, but it is not

5   binding on the merits panel in the same case "because the issues are different" as

6   presented in a motion to stay and in the underlying appeal of a preliminary

7   injunction. 993 F.3d 640, 660 (9th Cir. 2021). A motions panel resolving a motion

8   to stay "is predicting the likelihood of success of the appeal" whereas the "merits

9   panel is deciding the likelihood of success of the actual litigation." *Id.* This is a fine,

10  but important, distinction that has implications for the parties and the court. Because

11  the procedural context informs the questions to be answered, "we do not apply the

12  law of the case doctrine as strictly." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 980

13  n.1 (9th Cir. 2024) (quoting *United States v. Houser*, 804 F.2d 565, 568 (9th Cir.

14  1986), *abrogated on other grounds by Christianson v. Cold Indus. Operating Corp.*,

15  486 U.S. 800 (1988)). Therefore, anything a motions panel says about the merits of

16  any of the issues presented in a motion for stay pending appeal is, on a very practical

17  level, wasted effort.

18        Second, as a motions panel, we are not well-suited to give full and considered

19  attention to merits issues. Take this case. The Government filed its emergency

20  motion for a stay on February 12, requesting a decision by February 20—just over a

4

1    week later. We ordered a responsive brief from the Plaintiff States by February 18,

2    and an optional reply brief from the Government by February 19—one day before

3    the Government asserts it needs relief. This is not the way reviewing courts normally

4    work. We usually take more time and for good reason: our duty is to "act

5    responsibly," not dole out "justice on the fly." *East Bay Sanctuary Covenant*, 993

6    F.3d at 661 (citation omitted). We must make decisions based on reasoned judgment,

7    not gut reaction. And this requires understanding the facts, the arguments, and the

8    law, and how they fit together. *See TikTok Inc. v. Garland*, 604 U.S. ---, 145 S. Ct.

9    57, 63 (2025) (observing that courts should be particularly cautious in cases heard

10   on an expedited basis); *id.* at 75 (Gorsuch, J., concurring) ("Given just a handful of

11   days after oral argument to issue an opinion, I cannot profess the kind of certainty I

12   would like to have about the arguments and record before us."). Deciding important

13   substantive issues on one week's notice turns our usual decision-making process on

14   its head. We should not undertake this task unless the circumstances dictate that we

15   must. They do not here.

16          Third, and relatedly, quick decision-making risks eroding public confidence.

17   Judges are charged to reach their decisions apart from ideology or political

18   preference. When we decide issues of significant public importance and political

19   controversy hours after we finish reading the final brief, we should not be surprised

20   if the public questions whether we are politicians in disguise. In recent times, nearly

5

1    all judges and lawyers have attended seminar after seminar discussing ways to

2    increase public trust in the legal system. Moving beyond wringing our hands and

3    wishing things were different, one concrete thing we can do is decline to decide (or

4    pre-decide) cases on an emergency basis when there is no emergency warranting a

5    deviation from our normal deliberate practice.

6                                    * * * * *

7         I do not mean to suggest that emergency relief is never warranted. There are

8    cases where quick action is necessary. But they are rare. There must be a showing

9    that emergency relief is truly necessary to prevent immediate irreparable harm. The

10   Government did not make that showing here, and, therefore, there is no reason for

11   us to say anything about whether the factors governing the grant of a stay pending

12   appeal are satisfied. The Government may seek the relief it wants from the merits

13   panel who will be assigned to preside over this case to final disposition.

14        For these reasons, I concur in denying the Government's emergency motion

15   for reasons different than relied on by the majority.

6

25-807