UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J. ALEX HALDERMAN,

       Plaintiff,

v.

HERRING NETWORKS, INC., *et al.*,

       Defendants.

No. 2:24-mc-51057

Hon. David M. Lawson
Mag. David R. Grand

**REPLY BRIEF IN SUPPORT OF
<u>RULE 62.1 MOTION FOR INDICATIVE RULING BY DEFENDANTS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   Introduction .................................................................................... 1

II.  The Court should reject Halderman's form-over-substance contentions ........ 1

III. The newly discovered evidence is material and highlights the
     distinction between Halderman's unique and personal knowledge of
     facts versus his expert opinions ....................................................... 4

    A.   The timing and context of the changes indicate Halderman's
          factual testimony may negate the falsity element of Dominion's
          claims and may support Defendants' substantial-truth defense ........... 4

    B.   Substantive changes to the draft report are material and
          underscore Halderman's unique status as a percipient fact
          witness ................................................................................... 4

    C.   Halderman's testimony, based on his unique personal
          observations and knowledge of facts relevant to the case, cannot
          be replaced ............................................................................. 8

IV.  Conclusion .................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bailey v. Antrim County*,
  Case No. 2020-9238-CZ (Mich. Cir. Ct.— Antrim Cty.) ...............................8, 9

*CFE Racing Prods., Inc. v. BMF Wheels, Inc.*,
  No. 2:11-cv-13744 (E.D. Mich.) ..........................................................3

*Doering v. Koppelberger*,
  No. 343196, 2019 WL 4732725 (Mich. Ct. App. Sept. 26, 2019) ......................9

*Dominguez v. Gulf Coast Mar. & Assocs.*,
  607 F.3d 1005 (5th Cir. 2010) .............................................................2

*United States ex rel. Oakes v. Cinnaire*,
  No. 1:18-cv-13540 (E.D. Mich.) ..........................................................3

*Pompy v. Moore*,
  No. 2:19-cv-10334 (E.D. Mich) ........................................................1, 3

*United States v. Ocampo*,
  No. 1:06-cr-20172 (E.D. Mich.) ..........................................................2

**Other Authorities**

E.D. Mich. L.R. 62.1 ........................................................................1, 2

Fed. R. Civ. P. 59(e)......................................................................1, 2, 3

Fed. R. Civ. P. 62.1 .........................................................................2, 3

Rule 60(b)......................................................................................3

## I.     Introduction

The OAN Defendants submit this reply brief in support of their motion for an indicative ruling under Local Rule 62.1. Motion, R.28, PageID.1881–1887. The Defendants respectfully request that the Court indicate whether it would alter its order quashing the nonparty subpoena directed to J. Alex Halderman in light of newly discovered evidence produced by the Michigan Department of State (MDOS).

This new evidence is critical to OAN's defense of Dominion's lawsuit. Rather than address the substance, Halderman's response brief (R.37, PageID.2130–2157) deflects by (1) suggesting that the motion's form forecloses Defendants' requested relief; and (2) re-casting the material substantive changes in Halderman's report as mere "clarifications." For the reasons explained below, the Court should grant the motion and rule that it would alter its opinion and order quashing the nonparty subpoena directed to Halderman.

## II.     The Court should reject Halderman's form-over-substance contentions.

Halderman argues that the Defendants' motion is untimely and should be dismissed on procedural grounds. This argument stands at odds with this Court's past treatment of a similar motion. *See Pompy v. Moore*, No. 2:19-cv-10334 (E.D. Mich.), R.196, PageID.3252–3261.  The Defendants' motion is timely under Rule 59(e) as it was filed on February 12, 2025, well within the 28-day period following the Court's January 24, 2025, order.  Order of Quashal, R.28, PageID.1875; Motion, R.28, PageID.1881–1887. Halderman's concentration on procedural technicalities should not overshadow the substantive merits of Defendants' motion.

Halderman contends that the Court lacks jurisdiction to consider Defendants' motion due to the pending appeal. However, Rule 62.1 explicitly allows the Court to issue an indicative ruling when it lacks authority to grant relief due to a pending appeal. Fed. R. Civ. P. 62.1(a)(3). Defendants have properly invoked Rule 62.1, and the Court retains the authority to state whether it would grant the motion if the case were remanded.  Defendants did not "expressly disclaim" that their motion seeks relief under Rule 59(e), as Halderman claims.  R.37, PageID.2140.  To the contrary, Defendants' motion (*i*) seeks Rule 59(e) relief, while (*ii*) acknowledging that the relief cannot be granted because the court lacks jurisdiction, and therefore (*iii*) requests an indicative ruling under Rule 62.1 motion.  *See* R.32, PageID.1881.  *See also* R.32, PageID.1894–1895.

Halderman contends that Defendants were required to file two separate motions (under Rule 59(e) and Rule 62.1 asking for an indicative ruling on the Rule 59(e) motion).  He cites a single out-of-circuit decision that is, of course, not binding authority on this Court.  R.37, PageID.2139 (citing *Dominguez v. Gulf Coast Mar. & Assocs.*, 607 F.3d 1005 (5th Cir. 2010)).  He cites no Sixth Circuit authority for this proposition, and Defendants have found none.

The in-district decisions he cites do not support his position, either.  In *United States v. Ocampo*, No. 1:06-cr-20172 (E.D. Mich.), R.466, PageID.3809, the defendant filed a Rule 62.1 motion that did not include a substantive request for relief. The Northern Division ruled that, without a substantive request accompanying the request for an indicative ruling, the court had nothing to act on and denied the motion.  The case at bar is patently different because Defendants'

motion includes a substantive request for relief under Rule 59(e).

In *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, No. 2:11-cv-13744 (E.D. Mich.), R.168, PageID.3823–3827, the defendants filed a Rule 59(e) motion after claiming an appeal, and subsequently a Rule 60(b) motion seeking the same relief, which was denied for lack of jurisdiction. The defendants never filed a separate Rule 62.1 motion, but this Court nonetheless supplied an indicative ruling.

In *United States ex rel. Oakes v. Cinnaire*, No. 1:18-cv-13540 (E.D. Mich.), the plaintiff filed separate motions (R.83, PageID.2478) but this Court declined to give an indicative ruling because the concurrently filed motions were meritless. R.87, PageID.2513–2514. It did not comment or rule on the manner in which the plaintiff sought an indicative ruling.

In *Pompy v. Moore*, No. 2:19-cv-10334 (E.D. Mich.), R.196, PageID.3252–3261, Blue Cross Blue Shield of Michigan filed a Rule 62.1 motion seeking Rule 60(b) relief without filing two separate motions under Rule 60(b). This Court treated that motion as a Rule 60(b) motion, and after hearing oral argument, indicated that it would not grant the requested relief on remand. The Defendants have proceeded in exactly the fashion as Blue Cross in the *Pompy* matter, a case in which one of the undersigned attorneys was counsel. Compare the instant motion with *Pompy v. Moore*, No. 2:19-cv-10334 (E.D. Mich.), R.188, PageID.3152–3182 (Rule 62.1 motion). The Court should proceed in the same manner here.

3

III.    **The newly discovered evidence is material and highlights the distinction between Halderman's unique and personal knowledge of facts versus his expert opinions.**

Halderman asserts that the changes Defendants have newly discovered are neither material nor contradictory. But the evidence—made available to the Defendants for the first time only after the Court's quashal order—is pivotal.

A.     **The timing and context of the changes indicate Halderman's factual testimony may negate the falsity element of Dominion's claims and may support Defendants' substantial-truth defense.**

The timing of the changes between the draft and final reports, and the calls related to them, is informative. The March 23, 2021 draft report precedes the final report by three days. During this brief interim period, Halderman had two conference calls with agents of MDOS and the Michigan Department of Attorney General (MI AG). The dates of these calls temporally suggest that discussions may have influenced the substantive and fact-based changes Halderman made to the final report.  Defendants should have the right to explore whether Halderman was pressured or influenced to alter his observations regarding the role the software design played in the Antrim County vote miscount. Dominion is suing Defendants over their reporting that Antrim County involved a software glitch.

B.     **Substantive changes to the draft report are material and underscore Halderman's unique status as a percipient fact witness.**

The March 23, 2021 draft report explicitly states that the design of Dominion's software was a "contributing factor" to the Antrim County vote miscount. This language was removed from the final report. Despite Halderman's

4

insistence otherwise, it is not clear whether this change—one of *many* substantive changes—represents a mere "clarifi[cation]" of Halderman's findings (as Halderman now claims) or something more—perhaps the product of influence by MDOS, MI AG, or even Dominion. This Court's question, at oral argument, recognized that the latter circumstance would be relevant to the Defendants' substantial-truth defense in the $1.75-billion defamation action against them. Tr. of Nov. 13, 2024 Hrg. on MTQ, R.24, PageID.1803–1804. Defendants' new evidence shows it is not merely speculative. Halderman is uniquely positioned to testify as to the facts related to the eleventh-hour substantive changes made, including whether his conversations with MDOS, MI AG, or Dominion played a role.

Unsworn statements proffered in a pleading are no substitute for Halderman's own sworn testimony of his observations and facts leading to the changes. Further, a reasonable reading of the changes does not support the "clarification" theory now urged by Halderman. Rather, the changes appear to be substantive alterations that impact the factual description and significance of the role of Dominion's software. In addition to the final report's removal of the "contributing factor" language (Redline, R.32-4, PageID.2088) it also deleted any references to "defensive software engineering." (*id.* at PageID.1971–1972).   To be clear, Defendants provided the Court a sampling of changes—*not* an exhaustive list.

Another example includes the following (Redline, R.32-4, PageID.1970):

11.   ~~12.~~Dominion should ~~modify~~enhance D-Suite to verify that the election definition on ~~any~~a memory card being loaded ~~matches the election definition~~is compatible with the one used by the EMS.

5

A system that requires identical matching of election definition files is factually different than one requiring only compatibility. This critical distinction is central to the defamation case facts—i.e., what led to the Antrim County vote miscounts and whether (like OAN reported and the basis upon which Dominion sues) the software design played a role. Why Halderman observed on March 23, 2021, that it did (observing Dominion system should have, but did not, require *matching* election definition files) but then just three days later (after calls with MDOS and MI AG representatives) removed that matching observation is a mystery. Despite these and numerous other examples, the response brief claims, incredibly, that Halderman "did not alter his opinion at all." Resp., R.37, PageID.2135.

Notably, Halderman's altered observation (i.e., compatibility replaces matching) in his final report aligns with what Dominion CEO John Poulos explained to him privately in December 2020 regarding "required functionality" of Dominion's system. Exhibit 1-H to OAN's Resp. to MTQ, R.21-10, PageID.1698.  After the March 2021 calls with MDOS and MI AG, Halderman changed his report observations.  Whether MDOS, MI AG—or perhaps Dominion acting through MDOS/MI AG (a question this Court asked specifically at argument)—influenced the change is a fair matter of inquiry and highly relevant to OAN's defense regarding the complained-of reporting that Antrim County involved a software glitch.

It is misleading for Halderman to assert that the revisions were merely clarifications. Duke Okes' root cause analysis methodology[1] was not referenced by

---

[1]   There are many problems with the response brief's citation of Okes: (1) the hyperlink is not to the actual text of the Okes book, but a website to purchase it;

Halderman until this unsworn assertion in his response. This after-the-fact explanation also belies common sense. Halderman now asserts that his removal of the plain English words "was a contributing factor" was really designed to obviate any risk of "being misinterpreted" (Resp., R.37 at PageID.2143) as saying that Dominion software was a cause of Antrim County vote miscount. This is unsworn speculation and even uses an incomplete definition of "root cause" and a "contributing factor" per Okes. Under Okes's methodology, Dominion's software would actually qualify as a "root cause" of the Antrim County miscount.[2] The changes, fairly read, fundamentally alter Halderman's observations about Antrim County and directly impact Defendants' ability to argue the substantial truth of their statements that Dominion's software played a role in the vote miscount.

---

(2) The Okes book does not appear anywhere in this Court's record and thus ought not to be considered, E.D. Mich. Electr. Filing Policies & Procs. R5(d) ("A hyperlink is not a part of the Court's record."); *see also id.* R5(e) (establishing procedure for attaching 'Web-based resource' that references information not already part of the record"); and (3) Halderman does not even provide a complete rendition of what constitutes a root cause or how to determine if something is a root cause. Therefore, Defendants contemporaneously seek leave to submit an audio file of Okes providing the complete definition of a root cause per the methodology Halderman now cites.

[2] Per Okes, "[t]he real answer for how you know it's a 'root' cause is: 'Is the organization going to be doing something differently in the future?' That is, is the action we are going to take as a result of this investigation, something that means we will be doing something that we have not done previously? Is it going to be either a new process or a change to a process rather than just fixing the problem?" **Ex. 9**, Certified Transcript of Audio Excerpt. The Defendants have filed a contemporaneous motion for leave to file the audio excerpt as a media file under the local ECF rules.

**C.    Halderman's testimony, based on his unique personal observations and knowledge of facts relevant to the case, cannot be replaced.**

Halderman asserts his deposition is unnecessary and that Defendants can obtain the same information from other sources. This assertion is flawed. Halderman is the only individual who has knowledge of all of these factual topics: (1) direct access to and observation of the Antrim County Election Management System (EMS), election databases, tabulators, memory cards, and logs; (2) personal communications with Dominion in November–December 2020 (and after); and (3) personal communications with the MDOS and MI AG during March 23-26, 2021. His unique and firsthand knowledge make his testimony irreplaceable. Defendants cannot obtain the same information elsewhere.

Halderman's suggestion that his access and knowledge overlap with that of the *Bailey* plaintiff's experts is misleading and flawed. First, it is unclear what exactly Bailey and his experts had access to as compared to Halderman's access. In fact, Halderman documents in his report that he accessed Dominion's EMS "without Antrim County providing any passwords."[3]  Based on the *Bailey* public record, the plaintiffs seemingly were granted access only to take "forensic images."[4]  Also, Halderman, unlike Bailey's expert, had conversations with both Dominion and

---

[3]    R.21-7, PageID.1624 (March 26, 2021 Final Report).  Halderman describes the EMS access as "one of the most important" data he looked at. *Id.* at PageID.1623.

[4]    *See* Decision and Order Regarding Plaintiff's Motion for an Ex Parte Temporary Restraining Order, Show Cause Order and Preliminary Injunctions, *William Bailey v. Antrim County*, Case No. 2020-9238-CZ (Mich. Cir. Ct.— Antrim Cty. Dec. 4, 2020).

MDOS about Antrim County. Simply because Halderman was retained as an expert does not shield from discovery his personal observations and facts that he learned. *See, e.g., Doering v. Koppelberger*, No. 343196, 2019 WL 4732725, at *3 (Mich. Ct. App. Sept. 26, 2019).

Finally, Halderman's suggestion that "one of those experts" in *Bailey* has already given OAN access to the Antrim County data and Dominion software is meritless. The *only* support given by Halderman is a hyperlink to a video (on a webpage hosted purportedly by the DePerno Law Office) in which an individual — Jeffrey Lenberg—is supposedly "demonstrating his findings to an OAN reporter." Resp., R.37, PageID.2151.[5]  It is unclear whether Lenberg had access to the "forensic images" (whatever those are) from *Bailey*, let alone Antrim County's EMS.

Even assuming for argument's sake that Lenberg did, Halderman and the MDOS have spent considerable efforts to attack and undermine the credibility of Bailey's team, even accusing them of misunderstanding basic facts about the Antrim County machines. It is perplexing that Halderman now claims they are an equal substitute for his own personal knowledge and observations. In addition, Defendants are unaware of any evidence that Lenberg (or Bailey's team) had conversations with top executives at Dominion (as Halderman did), or with MDOS and MI AG (as Halderman did).  Halderman's suggestion that the information Defendants seek is easily acquired elsewhere is unsupported by the record.  Equally without merit is Halderman's assertion that Defendants can obtain from MDOS or MI AG the

---

[5]  *See supra* note 1. The video also lacks authenticity, is hearsay, and is inadmissible

discovery Defendants seek. As this Court observed, "two people can have different views of the same conversation." Tr. of Nov. 13, 2024 Hrg. on MTQ, R.24, PageID.1804. Only Halderman knows the import he ascribed to what MDOS, MI AG or Dominion told him and why he altered observations and facts in his report.

## IV.   Conclusion

For the reasons stated above, the Court should grant the motion and issue an indicative ruling that it would alter its opinion and order quashing the nonparty subpoena directed to Halderman and enforce the subpoena, in light of new evidence.

Respectfully submitted,

BUTZEL LONG, P.C.

Dated:  March 5, 2025

/s/ *Joseph E. Richotte*

Joseph E. Richotte (P70902)
Jennifer A. Dukarski (P74257)
101 N. Main St. #200
Ann Arbor, MI  48104
(734) 995-3110
richotte@butzel.com
dukarski@butzel.com
*Counsel for the Herring Defendants*

200185073.1

JACKSON WALKER, LLP

Dated:  March 5, 2025

/s/ *Charles L. Babcock*

Charles L. Babcock
Texas Bar No. 01479500
Christina M. Vitale
Texas Bar No. 24077610
1401 McKinney St. #1900
(713) 752-4200
cbabcock@jw.com
cvitale@jw.com
*Counsel for the Herring Defendants*